IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, <br><br> *Defendant*. | CIVIL ACTION <br><br> FILE NO. 1:21-CV-05337-SCJ |
| COAKLEY PENDERGRASS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> FILE NO. 1:21-CV-05339-SCJ |
| GEORGIA STATE CONF. OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> STATE OF GEORGIA, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> FILE NO. 1:21-CV-05338-SCJ |

| | |
|---|---|
| COMMON CAUSE, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:22-CV-0090-SCJ |

# **DEFENDANTS' STATUS REPORT**

Defendants Brian Kemp, in his official capacity as Governor of Georgia; Brad Raffensperger, in his official capacity as Secretary of State of Georgia; Sara Tindall Ghazal, Anh Le, Edward Lindsey,[1] and Matthew Mashburn, in their official capacities as members of the State Election Board; and the State of Georgia[2] (collectively "Defendants") provide this status report in response to the Court's January 8, 2022 Orders [*Alpha Phi Alpha* Doc. 6; *Pendergrass* Doc. 15; *Ga. NAACP* Doc. 9], as modified by its January 10, 2022 orders on the three issues outlined.

---

[1] On January 7, 2022, Mr. Lindsey was appointed to the State Election Board to replace Rebecca Sullivan. Because Ms. Sullivan was sued in her official capacity as a member of the State Election Board, Mr. Lindsey is automatically substituted in her place. *See* Fed. R. Civ. P. 25(d).

[2] The undersigned does not yet represent Chairs John Kennedy and Bonnie Rich, who are named as Defendants in the *Common Cause* case (1:22-cv-0090-SCJ), but the Attorney General typically represents legislative-branch defendants if requested to do so by Legislative Counsel.

## DEFENDANTS' POSITION ON
## THE ISSUES REQUESTED BY THE COURT

On Sunday, January 9, 2022, the parties in the first three cases conferred as required by the Court's order. On the morning of Tuesday, January 11, 2022, still basking in the victory of the University of Georgia in the College Football Playoff National Championship, Defendants conferred with plaintiffs in the *Common Cause* case. On those calls, the parties discussed the issues, but did not reach agreement. Defendants outline their positions on the issues requested by the Court:

**1. Whether Alpha Phi Alpha and/or Pendergrass may and should be consolidated with Georgia State Conference of the NAACP under Federal Rule of Civil Procedure 42(a) for the purpose of conducting all proceedings, including discovery and hearings in connection with any request(s) in those cases for preliminary injunctive relief. When the parties evaluate their positions as to this issue, they should assume that each set of plaintiffs would be afforded the opportunity to file its own briefs and present its own case (including its own evidentiary submissions), during consolidated proceedings, if such proceedings occur.**

Defendants support consolidation of all four of the actions because they all challenge redistricting plans that are to be used in the 2022 elections in Georgia and present common issues of law and fact. All four complaints contain allegations of violations of Section 2 of the Voting Rights Act, and the constitutional claims in *Georgia NAACP* and *Common Cause* will involve largely the same evidence required in the Section 2-only cases, which will focus primarily on expert testimony and statistical analysis. There is no prejudice to plaintiffs if they are able to file their own briefs and present their own cases, but there is a significant benefit to the proceedings and to Defendants if discovery happens once, rather than on four separate tracks, in order to avoid duplication of effort, unnecessary cost, and delay. Further, as explained below, all four cases require a three-judge panel, so consolidation is appropriate to promote efficiency and conserve judicial resources.

**2. What schedule would be suitable for the proceedings, including any preliminary injunction proceedings that may occur. This part of each party's filings should take the form of a proposed scheduling order that is specific to each case, and not a consolidated action. Each proposed scheduling order should propose deadlines for filing expert reports, completion of discovery, filing of all motions (including summary judgment), and filing pretrial stipulations. Each**

**proposed scheduling order must further state a date by which the parties will be ready for a final hearing on the merits, if such a hearing is necessary. Because the three cases are similar, the schedule should take into consideration projected timelines for the proceedings in Georgia State Conference of the NAACP and Pendergrass.**

> A.   *General issues related to timeline.*

Administration of the 2022 election cycle in Georgia is already underway. A calendar of relevant dates for the 2022 election cycle from the Secretary of State is attached as Ex. A to this status report. The timeline for redistricting was already compressed due to the delay in the final 2020 Census data from the U.S. Census Bureau caused by the COVID-19 pandemic.

The 2022 election cycle effectively begins on January 13, 2022, when candidates and their supporters can begin circulating nomination petitions. O.C.G.A. § 21-2-170(e). Changing district boundaries after that date could mean that individuals who signed a nominating petition may have been "entitled to vote in the next election for the filling of the office sought by the candidate," O.C.G.A. § 21-2-170(c), when they signed, but may no longer be eligible if district boundaries are later changed.

County elections officials are also already in the process of redistricting based on the maps passed by the General Assembly, which is a time-consuming

process that can take weeks. Within one county, there can be a number of different combinations of Congressional, state Senate, state House, and local election districts. Each of these combinations must be built into the election management database before qualifying so candidate names can be added and ballots can be generated for voters.[3] The Secretary of State's office has instructed counties to complete the reallocation process for voters no later than February 18, 2022. *See* Letter from B. Evans, attached as Ex. B. The February 18, 2022 deadline is necessary to allow the Secretary of State's office sufficient time to build the ballots in the election management system so absentee ballots can be prepared, reviewed, and printed for distribution to voters on April 5, 2022. O.C.G.A. § 21-2-384(a)(2).

Further, candidate qualifying begins on March 7, 2022, O.C.G.A. § 21-2-153(c)(1)(A), and candidates must have final districts in which to qualify for the 2022 elections. And as the Secretary of State's letter to counties indicates, failure to complete all changes in the voter-registration system by February

---

[3] Defendants provide this information for the Court's reference for purposes of this status report. Declarations and/or testimony attesting to these points will be offered at an appropriate time.

18, 2022 "will cause difficulty with qualifying and other election preparation for the May 24, 2022 Primary."[4] *Id*.

Accordingly, if this Court were to enjoin the use of any or all of the challenged redistricting plans, new districts should be in place by January 13. Further, because of the primacy of legislatures in creating districting plans, the Supreme Court requires that, where practicable, federal courts should give a "reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan." *Wise v. Lipscomb*, 437 U.S. 535, 540, 98 S. Ct. 2493, 2497 (1978). Even using an extremely accelerated timeline, it is impossible to finish briefing a complex case, hold a hearing, rule, allow the legislature to create a remedial plan, and either consider the legislature's remedial plan or create a court-drawn plan in time for the applicable deadlines in 2022.

All of this emphasizes that "elections are complex to administer, and the public interest [is] not . . . served by a chaotic, last-minute reordering of . . . districts. It is best for candidates and voters to know significantly in advance

---

[4] Georgia's primary was moved to May (with qualifying in March) after the 2012 elections because of the requirements of federal law. *United States v. Georgia*, 952 F. Supp. 2d 1318, 1333 (N.D. Ga. 2013)

of the petition period who may run where." *Favors v. Cuomo*, 881 F. Supp. 2d 356, 371 (E.D.N.Y. 2012) (three-judge court) (citing *Diaz v. Silver*, 932 F. Supp. 462, 466-68 (E.D.N.Y. 1996) (three-judge court)). That is why "[t]he Supreme Court has held that an injunction may be inappropriate even when a redistricting plan has actually been found unconstitutional because of the great difficulty of unwinding and reworking a state's entire electoral process." *Id.* (citing *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *Roman v. Sincock*, 377 U.S. 695, 709-10 (1964)).

    B.    *Other courts considering redistricting plans.*

At least one other court considering redistricting plans during this cycle established an almost six-week process to reach a preliminary injunction hearing. In Alabama, where the relevant complaint challenging districts was filed on November 4, 2021, the district court gave parties two weeks to create stipulated facts, a week to file a preliminary-injunction motion, a week for a response, and five days for a reply. *Caster v. Merrill*, Case No. 2:21-cv-01536-AMM (N.D. Ala.). Even with such an aggressive timeline, the total time from the scheduling order to preliminary-injunction hearing was six weeks. *Id.* Even if the Court used that accelerated timeline here, six weeks from the Court's status conference in this case ends five days after the Secretary's February 18

deadline for updating the voter-registration database and only 12 days before qualifying begins.

Further, in a straightforward Voting Rights Act case in this district that involved no question of potential remedy, discovery and briefing on motions for summary judgment (without substantive extensions) still took six months. *Rose v. Raffensperger*, Case No. 1:20-cv-2921-SDG (N.D. Ga.) (answer filed on January 26, 2021; completed summary-judgment briefing on July 30, 2021).

    C.    *Proposed scheduling order for all cases.*

As Plaintiffs noted in their civil cover pages, these cases are complex. If any motions for preliminary injunction are denied as too late because the elections are too close, discovery can proceed on a normal track after jurisdictional questions are resolved (as discussed below). Defendants recognize the Court's request for separate scheduling orders but believe that all cases can follow the same schedule and thus submit one proposed schedule for all cases instead of submitting the same schedule four times.

**PROPOSED SCHEDULE**

| | |
|---|---|
| Deadline for filing Motions for Preliminary Injunction | January 14, 2022 |
| Responses to Preliminary Injunction | January 24, 2022 |
| Reply to Preliminary Injunction | January 25, 2022 |
| Hearing on Preliminary Injunction | Week of January 24, 2022 |
| Motions to Dismiss (filed) | January 25, 2022 |

| | |
|---|---|
| Responses to Motions to Dismiss | February 8, 2022 |
| Replies to Motions to Dismiss | February 22, 2022 |
| Ruling on Motions to Dismiss (for purposes of remaining dates) | March 22, 2022 |
| Discovery Begins | April 22, 2022 |
| Plaintiffs' Expert Disclosures (reports) | June 6, 2022 |
| Defendant's Expert Disclosures (reports) | July 6, 2022 |
| Plaintiffs' Rebuttal Expert Disclosures (reports) | July 20, 2022 |
| Close of Discovery | September 1, 2022 |
| Dispositive Motions (filed) | September 12, 2022 |
| Dispositive Motions (response) | October 10, 2022 |
| Dispositive Motions (reply) | October 24, 2022 |
| Last Day for Daubert Motions | On last day to submit Pretrial Order |
| Last Day to Submit a Pretrial Order | 30 days after entry of the Court's ruling on summary judgment |
| Trial readiness | Early 2023 |

3. **If any parties are seeking or intend to seek preliminary injunctive relief, how many days the parties expect would be necessary for the conduct of a fair and expeditious preliminary injunction hearing. This part of the parties' filings should also be specific to each case, and not a consolidated proceeding. As stated above, because the three are similar, the timeline for a hearing should take into consideration preliminary injunctive relief that may be requested in either Georgia State Conference of the NAACP or Pendergrass.**

Given the scope of the filings in *Alpha Phi Alpha* (so far), Defendants anticipate that a preliminary-injunction hearing would have to be at least three to five days in length. During the call with counsel for the first three cases on January 9, 2022, Plaintiffs largely agreed with the estimated length.

Because Defendants are not aware how much evidence would be filed with a preliminary-injunction motion in *Pendergrass*, *Georgia NAACP*, or *Common Cause*, estimating a hearing length is more difficult, but Defendants anticipate that the timeline would be similar for each case, taking into account the additional witnesses and evidence in each of those cases.

## ADDITIONAL JURISDICTIONAL ISSUE

As the Court considers the timeline and issues in this case, Defendants also notify the Court that they plan to file motions to dismiss the *Pendergrass* and *Alpha Phi Alpha* cases because of the plaintiffs' failure to seek a three-judge panel as required by statute and the local rules. These jurisdictional claims will also be part of the opposition to the *Alpha Phi Alpha* motion for preliminary injunction.

The statutory language of the Three-Judge Court Act, 28 U.S.C. § 2284(a) (the "Act"), is clear that a three-judge panel is required for these cases. It provides, in pertinent part, that a three-judge panel is to be convened "when an action is filed challenging the constitutionality of the apportionment of

congressional districts ***or the apportionment of any statewide legislative body***." (Emphasis added). And while it is true that neither *Pendergrass* nor *Alpha Phi Alpha* challenge Georgia's redistricting plans on a constitutional basis, a three-judge panel is still required. There are at least three reasons why this Court should require the appointment of a three-judge panel in both cases, which will be further outlined in the forthcoming motions to dismiss.

First, from a strictly textual perspective, as to *Alpha Phi Alpha*, the Act requires a three-judge panel whenever a federal "action is filed challenging . . . the apportionment of any statewide legislative body." This is because, as written, the prepositive modifier requiring a challenge be "constitutional" in nature in order to trigger the three-judge panel is interrupted by a determiner, which cabins this requirement only to challenges to congressional districts. In this case, the determiner is the "the" following the word "or" in Section 2284(a). *See*, e.g., ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 148 (2012) ("The typical way in which syntax would suggest no carryover modification is that a determiner (*a, the, some,* etc.) will be repeated before the second element"). Accordingly, the constitutional element needed in congressional districting challenges is *not* required in the context of actions filed challenging statewide legislative apportionment.

This makes sense when considered in the context of Congressional reports filed in conjunction with the most recent amendment to the Act. "[T]he legislative history of the 1976 revisions to 28 U.S.C. § 2284 clearly demonstrates that Congress was concerned less with the source of the law on which an apportionment challenge was based than on the unique importance of apportionment cases generally." *Page v. Bartels,* 248 F.3d 175, 190 (3rd Cir. 2001).

Second, as to all cases, federalism concerns also counsel in favor of this reading. "[C]hallenges to apportionment are the kinds of claims requiring what has been described as the 'special and extraordinary procedure represented by the convening of a three-judge court.'" *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963).

Finally, even if the Court were to find a requirement of a constitutional challenge with respect to congressional districts and/or purely statewide apportionment actions, the unique language and nature of the Voting Rights Act makes it a suitable vehicle for a three-judge panel under the Act. The Voting Rights Act is unique—and as noted in *City of Mobile*, the original underlying language of Section 2 of Voting Rights Act and the Fifteenth Amendment are essentially identical. *See City of Mobile v. Bolden,* 446 U.S. 55, 61 (1980). As the Supreme Court there pointed out, "it is apparent that the

language of § 2 no more than elaborates upon that of the Fifteenth Amendment." *Id.* And though § 2 of the VRA has since been amended, the thrust of the argument that the VRA remains a direct exercise of the enforcement power of Congress under the Fourteenth and Fifteenth Amendments remains unchanged. *See City of Boerne v. Flores*, 521 U.S. 507, 518 (1997) ("We have also concluded that . . . measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States."); *Lewis v. Governor of Ala.*, 896 F.3d 1282, 1293 (11th Cir. 2018), *vacated and rehearing en banc granted by* 914 F.3d 1291 (11th Cir. Jan. 30, 2019) ("The Voting Rights Act . . . 'is designed to implement the Fifteenth Amendment and, in some respects, the Fourteenth Amendment.'") (Wilson, J.). Thus, a challenge under the Voting Rights Act is a challenge that is seeking to enforce constitutional provisions.

For these reasons, a single-judge court has no jurisdiction to hear any of the Section 2-only cases now before it.

## CONCLUSION

As outlined above, there is no time for the challenged redistricting plans to be enjoined prior to the 2022 elections and this Court should set the schedule accordingly. This case should proceed on a non-emergency basis.

14

This 11th day of January, 2022.

        Respectfully submitted,

        Christopher M. Carr
        Attorney General
        Georgia Bar No. 112505
        Bryan K. Webb
        Deputy Attorney General
        Georgia Bar No. 743580
        Russell D. Willard
        Senior Assistant Attorney General
        Georgia Bar No. 760280
        Charlene McGowan
        Assistant Attorney General
        Georgia Bar No. 697316
        **State Law Department**
        40 Capitol Square, S.W.
        Atlanta, Georgia 30334

        */s/ Bryan P. Tyson*
        Bryan P. Tyson
        Special Assistant Attorney General
        Georgia Bar No. 515411
        btyson@taylorenglish.com
        Frank B. Strickland
        Georgia Bar No. 678600
        fstrickland@taylorenglish.com
        Bryan F. Jacoutot
        Georgia Bar No. 668272
        bjacoutot@taylorenglish.com
        Loree Anne Paradise
        Georgia Bar No. 382202
        lparadise@taylorenglish.com
        **Taylor English Duma LLP**
        1600 Parkwood Circle

Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Status Report has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Bryan P. Tyson
Bryan P. Tyson