# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| COAKLEY PENDERGRASS; TRIANA ARNOLD JAMES; ELLIOTT HENNINGTON; ROBERT RICHARDS; JENS RUECKERT; and OJUAN GLAZE,<br><br>       Plaintiffs,<br><br>  v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State; SARA TINDALL GHAZAL, in her official capacity as a member of the State Election Board; ANH LE, in her official capacity as a member of the State Election Board; EDWARD LINDSEY, in his official capacity as a member of the State Election Board; and MATTHEW MASHBURN, in his official capacity as a member of the State Election Board,<br><br>       Defendants.[*] | CIVIL ACTION FILE NO. 1:21-CV-05339-SCJ |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

[*] Pursuant to Federal Rule of Civil Procedure 25(d), Plaintiffs have automatically substituted Edward Lindsey, in his official capacity, for Rebecca N. Sullivan, in her official capacity, based on Defendants' representation in their recently filed status report. *See* Defs.' Status Report 2 n.1, ECF No. 31.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

LEGAL STANDARD...........................................................................2

ARGUMENT .........................................................................................3

    I.    Section 2284(a)'s three-judge requirement does not apply to Plaintiffs' purely statutory claim...........................................................................3

    II.    Section 2 confers a private right of action. ........................................10

    III.    Immediate appeal of the Court's ruling is not appropriate. ................14

CONCLUSION .....................................................................................17

## INTRODUCTION

Defendants' motion to dismiss consists of two theories that have never been adopted by a court in more than five decades of Voting Rights Act litigation. Their request for certification of an interlocutory appeal is similarly baseless and would only serve to run out the clock, foreclosing preliminary injunctive relief ahead of the 2022 elections. Defendants' gambit should be rejected out of hand—and their motion denied in its entirety.

This case should not and cannot be heard by a three-judge court. Section 2284(a) calls for a three-judge court only "when an action is filed challenging *the constitutionality of* the apportionment of congressional districts." 28 U.S.C. § 2284(a) (emphasis added). Here, Plaintiffs have not challenged the constitutionality of Georgia's new congressional map; they bring a single statutory claim under Section 2 of the Voting Rights Act of 1965. Defendants ask the Court to ignore the plain text of Section 2284(a) and require a three-judge court in this case for no other reason than their apparent belief that a three-judge court *should* be convened. But the proper parameters of federal jurisdiction are for Congress to decide, not Defendants. And their sole argument in favor of a three-judge court— that a Section 2 claim in some *other* hypothetical case could resemble a

constitutional claim—has no basis in the context of *this* case. Plaintiffs' sole cause of action is purely statutory and can only be heard by this single-judge Court.

Defendants similarly fail to offer any convincing reason why this Court should depart from more than a half-century of Voting Rights Act jurisprudence and be the first to conclude that Section 2 lacks a private right of action. Absent from their motion is acknowledgement that the U.S. Supreme Court has concluded exactly the opposite. The Supreme Court's recognition of a private right of action under Section 2 was far from surprising, as the Voting Rights Act's text compels that conclusion. But even if one ignores its text, it could not be clearer that Congress has always intended for private litigants to bring suit under Section 2.

The arguments raised by Defendants are neither serious nor complex. Their motion to dismiss and request to delay these proceedings through an extraordinary interlocutory appeal should be expeditiously denied.

## LEGAL STANDARD

"A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute." *Callen v. Daimler AG*, No. 1:19-CV-1411-TWT, 2021 WL 4523436, at *2 (N.D. Ga. Oct. 4, 2021); *see also Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004).

"[A] defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. A complaint has failed to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face." *Miller v. Thomas, Kennedy, Sampson & Tompkins, LLP*, No. 1:20-CV-04717-SCJ, 2021 WL 4815201, at *3 (N.D. Ga. June 17, 2021) (citation omitted). "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010).

## ARGUMENT

### I.     Section 2284(a)'s three-judge requirement does not apply to Plaintiffs' purely statutory claim.

Defendants' request for a three-judge court ignores Section 2284(a)'s plain text. Their disregard for the statute's explicit limitations is apparent even in the introduction to their motion: they fault Plaintiffs for "fail[ing] to request a three-judge court for an action involving 'the apportionment of congressional districts or the apportionment of any statewide legislative body.'" Br. in Supp. of Defs.' Mot. to Dismiss ("Mot.") 2, ECF No. 38-1 (quoting 28 U.S.C. § 2284(a)). Conspicuously omitted from this description of Section 2284(a) is its qualifier "*the constitutionality of*," which limits the reach of the statute to constitutional challenges—and which Defendants admit Plaintiffs do not assert in this case.

3

In full, Section 2284(a) reads: "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging *the constitutionality of* the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). Accordingly, "[a] claim solely alleging a Section 2 violation falls outside a plain reading of Section 2284. Such a claim is neither a constitutional challenge nor 'when otherwise required by Act of Congress.'" *Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) (quoting 28 U.S.C. § 2284(a)); *accord Johnson v. Ardoin*, No. 18-625-SDD-EWD, 2019 WL 2329319, at *3 (M.D. La. May 31, 2019) ("[T]he three-judge statute applies only when the constitutionality of apportionment is being challenged.").

Here, Plaintiffs do not challenge the constitutionality of Georgia's congressional districts. They assert a single statutory challenge to Georgia's congressional districting plan under Section 2. *See* Compl. ¶¶ 75–82, ECF No. 1. Because there can be no serious suggestion that this case involves a contest over the constitutionality of a congressional apportionment plan, a three-judge court cannot be convened in this case. *See Rural W. Tenn. African Am. Affairs Council, Inc. v. Sundquist*, 209 F.3d 835, 838 (6th Cir. 2000) (three-judge court that was convened when plaintiffs asserted Section 2 claim *and* constitutional claim disbanded when

4

plaintiffs withdrew their constitutional claim); *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 980 (D.S.D. 2004) (similar); *Old Person v. Brown*, 182 F. Supp. 2d 1002, 1003 (D. Mont.) (single-judge court hearing Section 2 challenge), *aff'd*, 312 F.3d 1036 (9th Cir. 2002).

Because Plaintiffs' statutory claim does not fall within the universe of cases for which Section 2284(a) requires a three-judge court, a single-judge district court is the only option for this case. The three-judge requirement is "a serious drain upon the federal judicial system" and must "be narrowly construed." *Sands v. Wainwright*, 491 F.2d 417, 421 (5th Cir. 1973) (en banc) (quoting *Phillips v. United States*, 312 U.S. 246, 250 (1941));[1] *cf. Finch v. Weinberger*, 407 F. Supp. 34, 40 (N.D. Ga. 1975) (three-judge court) ("As a general rule, the policy of avoiding unnecessary constitutional adjudication would seem to compel adjudication of [] statutory claims first, and adjudication of those claims by a single judge."). Accordingly, three-judge courts may be "convened only where compelled by the express terms of the statute," *United States v. Texas*, 523 F. Supp. 703, 725 (E.D. Tex. 1981), and are to be used "only and strictly as Congress has prescribed." *Nixon v. Richey*, 513 F.2d 430, 446 (D.C. Cir. 1975) (per curiam).

---

[1] *Sands* is binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Even the case on which Defendants primarily rely rejects their position. While the en banc Fifth Circuit in *Thomas v. Reeves* splintered over the question of Section 2284(a)'s application to statutory challenges to *state legislative* districting plans, all 11 judges to address the issue agreed that it does not apply to statutory challenges to *congressional* plans. *Compare* 961 F.3d 800, 802 (5th Cir. 2020) (en banc) (per curiam) (Costa, J., concurring) (arguing on behalf of six judges that Section 2284(a) "require[s] a three-judge court only for constitutional challenges" to state and federal maps), *with id.* at 811 (Willett, J., concurring) (noting on behalf of five judges that "only *constitutional* challenges to *federal* maps require three judges").[2]

Less than four years ago, the Georgia Secretary of State (the "Secretary")— represented by the same Attorney General who represents Defendants here—argued in a joint filing to this Court precisely the *opposite* of what his successor now argues here. There, the Secretary agreed that when a plaintiff challenges a congressional plan under Section 2 alone, "there is *no question*" that a three-judge court cannot be convened for precisely the reasons just explained. Joint Statement Regarding

---

[2] Plaintiffs, for their part, agree with the plurality concurrence in *Thomas* on the question of statutory challenges to state legislative plans: "a plain reading of the three-judge statute as well as its ancestry reject the unprecedented notion that statutory challenges to state legislative districts require a special district court." 961 F.3d at 802 (Costa, J., concurring).

Assignment of Three-Judge Panel ("Joint Statement") at 2, *Dwight v. Kemp*, No. 1:18-cv-2869-RWS (N.D. Ga. Sept. 12, 2018), ECF No. 25 (emphasis added); *see also id.* at 5 ("Under the plain language of 25 U.S.C. § 2284, three-judge courts are reserved only for cases where plaintiffs assert constitutional challenges, not the statutory [Section 2] claim set forth in Plaintiffs' Amended Complaint."); *id.* at 2 (arguing that "a *constitutional* challenge to the apportionment of congressional districts" is "a prerequisite to establish jurisdiction for a three-judge court under 28 U.S.C. § 2284(a)").[3] Indeed, the Secretary argued not only that convening a three-judge court would be "unwarranted here," but also that "the panel would *lack jurisdiction* to resolve Plaintiffs' statutory [Section 2] claim." *Id.* at 3 (emphasis added); *accord Wilson v. Gooding*, 431 F.2d 855, 858 (5th Cir. 1970) (where case falls outside of statute's parameters, "there is no [] jurisdiction" for three-judge court to hear it); *Castañon v. United States*, 444 F. Supp. 3d 118, 128 (D.D.C. 2020) (three-judge court) (referring to Section 2284 as three-judge court's "statutory jurisdictional grant").[4]

---

[3] For the Court's convenience, this filing is attached as Exhibit 1.

[4] Although "a properly convened three-judge district court has some ability to exercise a brand of supplemental jurisdiction" over additional claims brought in the *same action* as constitutional claims to a statewide redistricting plan, *Castañon*, 444 F. Supp. 3d at 129, that ability does not—and cannot—supplant Section 2284's express jurisdictional limitations.

But the Secretary did not stop there. After asserting that three-judge courts lack jurisdiction to hear purely statutory claims, he further argued that a three-judge court in such a case would also make little sense. He explained that "constitutional claims that trigger a three-judge panel under 28 U.S.C. § 2284(a) are analytically and practically distinct from § 2 claims in several respects" and "are adjudicated under a different legal standard to address a different legal harm." Joint Statement, *supra*, at 3–4. Whereas a Section 2 claim focuses on the *effect* of the challenged plan and "does not require proof of intentional discrimination (or any intent at all)," constitutional challenges to districting plans, such as racial gerrymandering claims, involve the harm of "being personally subjected to a racial classification" and require plaintiffs to "prove that 'race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district.'" *Id.* at 3–5 (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 794 (2017)). Needless to say, Plaintiffs are in full accord on all of these points.

Defendants now execute a complete reversal on this issue and, in the process, utterly fail to reckon with these previous arguments. They do not even appear to dispute that Section 2284(a)'s plain language excludes this case from its purview. *See* Mot. 10 (conceding that "the modifier 'constitutionality'" in Section 2284(a) "would prevent the application for most statutory challenges to district maps").

8

Defendants' request that the Court ignore that language and call for a three-judge court anyway cannot be squared with their own assertion that "[a] court's reading of a statute 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *Id.* at 5 (quoting *Packard v. Comm'r*, 746 F.3d 1219, 1222 (11th Cir. 2014) (per curiam)).

Defendants' sole basis for their atextual position—the fact that Congress enacted the Voting Rights Act pursuant to its enforcement powers under the Fourteenth and Fifteenth Amendments, *see* Mot. 10–11—makes no sense in the context of this case. Plaintiffs' effects-based Section 2 challenge to Georgia's congressional plan is fundamentally distinct from a constitutional challenge. Even if one could argue that an intent-based Section 2 claim might resemble a constitutional claim (an argument with which Plaintiffs do not agree), that makes no difference in *this* case, where Plaintiffs assert only an effects-based claim. There can be no question that, under the current state of Fourteenth and Fifteenth Amendment doctrine, Plaintiffs would have no basis for challenging the constitutionality of Georgia's congressional plan based on its effect alone, as they do here. Thus, even if one assumed that Section 2284(a)'s specification of "constitutional" challenges was intended to be viewed functionally—an assumption that enjoys no support

whatsoever in the statute's text, let alone any relevant authority—this case *still* would not fall within its ambit.

As Defendants appear to concede, the plain text of Section 2284(a) does not permit convening a three-judge district court in this case. Because the Court has no basis to depart from the statute's text, and Defendants do not offer any compelling reason why it should, neither dismissal nor consolidation is appropriate.

## II.    Section 2 confers a private right of action.

Controlling precedent forecloses Defendants' argument that Section 2 does not confer a private right of action. In *Morse v. Republican Party of Virginia*, a majority of the U.S. Supreme Court agreed that "the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965." 517 U.S. 186, 232 (1996) (Stevens, J.) (plurality opinion on behalf of two justices) (quoting S. Rep. No. 97-417, pt. 1, at 30 (1982)); *accord id.* at 240 (Breyer, J., concurring) (expressly agreeing with Justice Stevens on this point on behalf of three justices); *see also Ga. State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge court) (citing *Morse* and concluding that "Section 2 contains an implied private right of action").[5]

---

[5] The *Morse* Court reached this conclusion as an essential part of its rationale for holding that another provision of the Voting Rights Act, Section 10, confers a private

Defendants do not acknowledge *Morse*, let alone engage with it. Instead, they rely on a method for assessing the existence of implied rights of action that the Supreme Court later adopted in *Alexander v. Sandoval*, 532 U.S. 275 (2001). *See* Mot. 13–14. But where "a precedent of [the Supreme] Court has direct application in a case," courts "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions"—even if it "appears to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). *Morse* has not been overruled. Indeed, the Supreme Court has given no indication that a majority of justices intends to revisit *Morse*'s conclusion; the Court has repeatedly heard private cases brought under Section 2 in the two decades since *Sandoval* without questioning this predicate foundation. *See, e.g.*, *Abbott v. Perez*, 138 S. Ct. 2305, 2331–32 (2018); *LULAC v. Perry*, 548 U.S. 399, 409 (2006) (plurality op.); *see also Shelby County v. Holder*, 570 U.S. 529, 537 (2013) ("Both the Federal Government *and*

_____

right of action. The controlling opinion explained that "[i]t would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language." *Morse*, 517 U.S. at 232 (Stevens, J.); *see also id.* at 240 (Breyer, J., concurring) (agreeing that rationale behind "private right of action to enforce § 5 . . . applies with similar force not only to § 2 but also to § 10"). "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which [courts] are bound." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996).

*individuals* have sued to enforce § 2." (emphasis added)). And only Justice Thomas joined Justice Gorsuch's recent suggestion that whether or not Section 2 furnishes a private right of action is "an open question," *Brnovich v. DNC*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring)—a concurrence that did not cite *Morse* or any post-*Morse* Section 2 cases.

Ultimately, Defendants cite no caselaw rejecting a private right of action under Section 2. When the issue has been addressed, courts—including this Court—have unanimously confirmed that a private right of action exists. *See, e.g.*, *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2 of the Voting Rights Act . . . ."); *Ga. State Conf. of NAACP*, 269 F. Supp. 3d at 1275. As a three-judge court recently explained when confronted with this argument, "[a]bsent contrary direction from a higher court, we decline to break new ground on this particular issue." *LULAC v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) (three-judge court). This Court should similarly decline to break new ground.[6]

---

[6] While the judgment was ultimately vacated on mootness grounds, the Eleventh Circuit also recently rejected the argument that Section 2 lacks a private right of action. *See Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 651–54 (11th Cir. 2020) ("The [Voting Rights Act], as amended, clearly expresses an intent to allow private parties to sue the States."), *vacated*, 141 S. Ct. 2618 (2021).

Even setting aside *Morse* and subsequent Section 2 cases, there can be no doubt that the statute does indeed convey a private right of action. The text of the Voting Rights Act confirms this conclusion. Section 3 authorizes certain remedies "[w]henever the Attorney General *or an aggrieved person* institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a) (emphasis added); *see also id.* § 10302(b) (similar). Since "[S]ection 2 is a constitutional exercise of congressional enforcement power under the Fourteenth and Fifteenth Amendments," *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1550 (11th Cir. 1984), it follows that "Congress must have intended it to provide private remedies." *Morse*, 517 U.S. at 234 (Stevens, J.). Similarly, Section 14 authorizes attorneys' fees for "the prevailing party, *other than the United States*," in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment," 52 U.S.C. § 10310(e) (emphasis added)—an authorization that assumes private parties may sue under statutes enforcing such guarantees, including Section 2.

If there were any doubt left as to whether Congress intended to allow private suits under Section 2, then the legislative history resolves it. The authoritative Senate report that accompanied the Voting Rights Act's 1982 amendments "reiterate[d] the existence of the private right of action under section 2, as ha[d] been clearly intended

13

by Congress since 1965." S. Rep. No. 97-417, pt. 1, at 30; *accord* H.R. Rep. No. 97-227, pt. 1, at 32 (1981) ("It is intended that citizens have a private cause of action to enforce their rights under Section 2."). Defendants' argument that Section 2 confers no private right of action flies in the face of not only this unambiguous legislative history, but also more than 50 years of privately enforced Section 2 litigation. *See, e.g.*, *Hous. Lawyers' Ass'n v. Att'y Gen.*, 501 U.S. 419, 421–22 (1991); *Thornburg v. Gingles*, 478 U.S. 30, 34–35 (1986); *see also* Statement of Interest of the United States at 1, *LULAC v. Abbott*, No. 3:21-cv-259 (DCG-JES-JVB) (W.D. Tex. Nov. 30, 2021), ECF No. 46 ("Longstanding case law, the structure of the Voting Rights Act, the Act's broad enforcement provisions, and authoritative sources of Congressional intent confirm that there is a private cause of action under Section 2."). The Court should reject Defendants' baseless argument—just like every other court that has addressed this issue.

## III.   Immediate appeal of the Court's ruling is not appropriate.

Finally, Defendants urge the Court to immediately certify for appeal an unfavorable ruling on their motion. *See* Mot. 15–16. The Court should decline the invitation.

28 U.S.C. § 1292(b) allows a district court to certify an issue for immediate appeal "[w]hen [the] district judge . . . shall be of the opinion that such order involves

a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." But here, no substantial ground for difference of opinion exists as to whether this Court has jurisdiction to proceed as a single-judge court or whether a private right of action exists under Section 2. On the contrary, Defendants cannot point to a *single* case that has adopted their position on either issue. This is a case where resolution of the controlling questions are "so clear that the 'substantial ground for difference of opinion' requirement could not be met." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004).

As discussed above, *see supra* Section I, the plain text of Section 2284(a)—as well as the State's arguments four years ago—demonstrate that far from *requiring* three-judge courts to hear purely statutory challenges to congressional maps, the statute actually *forbids* it. *Cf. Johnson v. Ardoin*, No. 18-625-SDD-EWD, 2019 WL 4318487, at *2–3 (M.D. La. Sept. 12, 2019) (declining to certify for interlocutory appeal whether statutory challenge to congressional plan requires three-judge court because "[a]s to non-constitutional challenges of congressional apportionment, the accord among this Court, the Southern District of Mississippi, the Northern District of Alabama, a Fifth Circuit motions panel majority, and now a Fifth Circuit merits

15

panel demonstrates that a 'substantial ground for difference of opinion' does not exist" (footnotes omitted)).

Nor does a substantial ground for difference of opinion exist as to Defendants' Section 2 argument. As discussed above, *see supra* Section II, no court has adopted Defendants' position in more than five decades of Voting Rights Act litigation. This result is unsurprising given that a majority of the U.S. Supreme Court agreed that "the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965." *Morse*, 517 U.S. at 232 (Stevens, J.) (quoting S. Rep. No. 97-417, pt. 1, at 30); *see also McFarlin*, 381 F.3d at 1258 (noting that "a question of law as to which [reviewing court is] in 'complete and unequivocal' agreement with the district court is not a proper one for § 1292(b) review" (quoting *Burrell v. Bd. of Trs.*, 970 F.2d 785, 789 (11th Cir. 1992))). Although Defendants characterize these issues as "novel[]," Mot. 16, this could not be further from the truth: courts have addressed both issues, and rejected Defendants' positions, for decades.

Ultimately, Defendants' groundless request for an interlocutory appeal is simply another delaying tactic to evade judicial review of Georgia's new, unlawful congressional map in advance of the 2022 midterm elections. Rather than shorten this litigation, certifying an appeal would unnecessarily delay its resolution—and

consequently prejudice not only Plaintiffs, but all Georgia voters who are entitled to elect their representatives to Congress from districts that comply with federal law. The Court should not allow Defendants to evade their obligations under Section 2 based on two baseless, consistently rejected legal arguments. Their request for an interlocutory appeal should therefore be denied along with their motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' motion to dismiss.

Dated: January 18, 2022

By: **Adam M. Sparks**
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
**KREVOLIN & HORST, LLC**
One Atlantic Center
1201 West Peachtree Street, NW,
Suite 3250
Atlanta, Georgia 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
Email: JLewis@khlawfirm.com
Email: Sparks@khlawfirm.com

Kevin J. Hamilton*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: (206) 359-8000
Facsimile: (206) 359-9000
Email: KHamilton@perkinscoie.com

Respectfully submitted,

Abha Khanna*
Jonathan P. Hawley*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Phone: (206) 656-0177
Facsimile: (206) 656-0180
Email: AKhanna@elias.law
Email: JHawley@elias.law

Daniel C. Osher*
Christina A. Ford*
Graham W. White*
Michael B. Jones
Georgia Bar No. 721264
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Phone: (202) 968-4490
Facsimile: (202) 968-4498
Email: DOsher@elias.law
Email: CFord@elias.law
Email: GWhite@elias.law
Email: MJones@elias.law

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

18

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS has been prepared in accordance with the font type and margin requirements of LR 5.1, NDGa, using font type of Times New Roman and a point size of 14.

Dated: January 18, 2022      **<u>Adam M. Sparks</u>**
                              *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date caused to be electronically filed a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

Dated: January 18, 2022      **<u>Adam M. Sparks</u>**
                              *Counsel for Plaintiffs*