## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| COAKLEY PENDERGRASS, *et al.*, | |
| *Plaintiffs,* | |
| v. | CIVIL ACTION |
| BRAD RAFFENSPERGER, *et al.*, | FILE NO. 1:21-CV-05339-SCJ |
| *Defendants.* | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

## INTRODUCTION

Defendants have stated from their first filing in this case that, apart from any jurisdictional questions, it is too late to afford Plaintiffs any relief for the 2022 elections. [Doc. 31]. In their motion to dismiss, Defendants raise significant questions about this Court's jurisdiction that are not nearly as clear as Plaintiffs want them to be—not as a "gambit" on timing but to avoid the significant drain on judicial resources when this Court lacks jurisdiction.

Further, Plaintiffs' response illustrates why the jurisdictional questions raised by Defendants are so significant. Plaintiffs rely on the unique nature of the Voting Rights Act (VRA) and a broad provision about actions enforcing "the voting guarantees of the fourteenth and fifteenth amendments" to the Constitution, 52 U.S.C. § 10302(a), as a sword to argue there is a private right of action under Section 2 of the VRA. But at the same time, Plaintiffs argue that their claims are not constitutional challenges as a shield to limit the three-judge panel statute to non-VRA challenges to congressional districts. *Compare* [Doc. 39, pp. 6-7] *with* [Doc. 39, p. 15]. Both cannot be true.

While Plaintiffs point to decisions from other Circuits and nonbinding *dicta* in support of their position, none of their arguments demonstrate that the positions they take are settled law. Further, because it is already too late to order any relief for the 2022 elections, *see* [Doc. 38], there is more than

1

enough time to obtain binding direction from the Eleventh Circuit before proceeding with this case.

## ARGUMENT AND CITATION OF AUTHORITY

**I.  Plaintiffs' arguments that § 2284(a) is limited to constitutional challenges is unavailing.**

**A.  A prior Secretary's filing in a case involving a single congressional district does not bind the current Secretary's arguments here.**

Plaintiffs argue that the position the prior Secretary took almost four years ago in another Voting Rights Act case should be binding on the current Secretary. [Doc. 39, pp. 8-11]. But, as counsel for Defendants indicated in the status conference, the Secretary and Attorney General have watched the development of this area of the law since that statement was signed in 2018.

Further, the questions raised about the three-judge court go to the jurisdiction of this Court to act. *Shapiro v. McManus*, 577 U.S. 39, 44 (2015). And a "lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation." *Fitzgerald v. Seaboard S. R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (quoting *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)).

> **B. The status of claims brought against districts only under the VRA is a new phenomenon.**

The concept of whether a three-judge panel is required for claims brought solely under the VRA is relatively new because, until recently, "[n]o defendant has ever pressed" the issue. *Thomas,* 961 F. 3d at 823 (Willett, J., concurring). While Plaintiffs are correct that cases which paid cursory or no attention at all to the question before this Court have agreed with their position, that does not address the key issue. *See Rural W. Tenn. African-Am. Affs. Council v. Sundquist,* for example, simply *noted* that the three-judge court disbanded when the constitutional claims were mooted. 209 F. 3d 835, 838 (6th Cir. 2020).[1] It had nothing to say about the propriety of the disbanding, and no party to that action apparently raised the issue. The same is true for *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 980 (D. S.D. 2004), which notes a three-judge court disbanded, and *Old Person v. Brown*, 182 F. Supp. 2d 1002, 1003 (D. Mont. 2002), which is silent on the issue. And while *Chestnut v. Merrill*, 356 F. Supp. 3d 1351 (N.D. Ala. 2019), may be persuasive authority, it is not binding on this Court.

---

[1] That case also apparently involved only one legislative district and not statewide apportionment of the legislative districts. *Sundquist*, 209 F. 3d at 839 (noting difference was one district that was majority-Black).

3

"One reason for the dearth of precedent [on point is that] section 2 'results cases' are rarely pursued, at least until recently, without accompanying constitutional claims..." *Thomas,* 961 F. 3d. at 823, n. 85 (Willett, J. concurring). And "[a]ny newness to the State's § 2284(a) argument reflects the newness of post-*Shelby County* litigation strategy." *Id.* at 826.

    **C.    This Court should treat this VRA challenge as a challenge to the constitutionality of Georgia's congressional districts.**

The VRA is unique because it is "designed to implement the Fifteenth Amendment, and in some respects, the Fourteenth Amendment." *United States v. Bd. of Comm'rs,* 435 U.S. 110, 126-27 (1978). Plaintiffs apparently agree, because they argue later in their brief that Section 2 cases are an action "to enforce the voting guarantees of the fourteenth or fifteenth amendment" for purposes of Section 3 of the VRA. [Doc. 39, p. 15]. If actions to enforce Section 2 proceed under Section 3, as Plaintiffs argue, then Section 2 claims are enforcing Constitutional provisions which should be considered by a three-judge court.

Further, congressional apportionment challenges have generally proceeded as constitutional challenges in the past. When Congress amended § 2284 in 1976, it noted that "[t]he bill preserves three-judge courts *for cases involving congressional reapportionment* . . . because it is the judgment of the

committee that these issues are of such importance that they ought to be heard by a three-judge court." S. Rep. No. 94-204, at 9 (1976) (emphasis added). Litigators were not yet bringing challenges to congressional district plans under Section 2 of the VRA in 1976 and could only bring constitutional claims. *Page v. Bartels*, 248 F. 3d 175, 189 (3d Cir. 2001). Thus, every challenge to congressional districts when § 2284 was last amended were constitutional, and thus clearly before a three-judge court.

Given the unique nature of the claims involved here, along with the federalism concerns of interference with legislative functions of drawing districts, this Court should treat this VRA case as a constitutional challenge and dismiss this case for failure to seek a three-judge court, or at the very least, refer it to the Chief Judge of the Eleventh Circuit for such appointment.

## II. Plaintiffs' attempt to create a private right of action in Section 2 falls short.

Plaintiffs begin with a stunning statement that "[c]ontrolling precedent" applies to the question of a private right of action, citing a case from more than 25 years ago, apparently concluding that they know more about binding precedent than two Supreme Court Justices who conclude the question remains "open." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350

5

(2021) (Gorsuch, J., concurring). But Plaintiffs' attempt to show this is a closed question does not withstand scrutiny.

First, Plaintiffs dramatically overread *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) in arguing that it is binding here.[2] That case involved two questions: "whether [Section] 5 of the [Voting Rights] Act required preclearance of the [Virginia Republican] Party's decision to exact the fee and whether appellants were permitted to challenge it as a poll tax prohibited by [Section] 10." *Id.* at 190. Justice Stevens, writing for himself and Justice Ginsburg, explained that the Virginia Republican Party was acting under state law, and thus any changes to the nomination process had to be precleared under Section 5. *Id.* at 210, 219. Justice Stevens' opinion, joined in a concurrence by Justices Breyer, O'Connor, and Souter on the second question, also concluded that Section 10 of the VRA included a private right of action. *Id.* at 231-232. But the language is not as clear as Plaintiffs would like—the necessary part of the holding was its reliance on *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), which was also an enforcement action under *Section 5*,

---

[2] Indeed, contra Plaintiffs' position, the United States apparently did not rely on *Morse* when opposing an effort to dismiss a Section 2 case in Texas on similar grounds, instead relying on the history of private litigants bringing such cases. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2021 U.S. Dist. LEXIS 231524, at *5 (W.D. Tex. Dec. 3, 2021) (noting position of United States and not citing *Morse*).

and not a case finding a private right of action under *Section 2*. While Justice Stevens used some language about Section 2, it is a stretch to say that language was *necessary* to the holding about Section 10—in context, the most one can say is that Justice Stevens simply "assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under [Section] 2." *Brnovich*, 141 S. Ct. at 2350 (Gorsuch, J., concurring).

Second, *Morse* based its holding about private rights of action on the proposition that "[s]ince § 10 is, by its terms, a statute designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments, *see* 42 U.S.C. § 1973h(b) (1988 ed.), Congress must have intended it to provide private remedies." 517 U.S. at 233-234. Applying that logic to Plaintiffs' views on the three-judge court issue would mean that, if Section 2 provides a private right of action, then it must be an action to enforce "the guarantees of the Fourteenth and Fifteenth Amendments." *Id*. This position reinforces Defendants' argument that challenges under the VRA are challenges to the "constitutionality" of district maps—either the VRA is enforcing the Constitution, or it is not. *U.S. v. Marengo Cty. Comm'n*, 731 F. 2d 1546, 1550 (11th Cir. 1984). Plaintiffs cannot have it both ways.

Third, as Justice Thomas noted, joined by three colleagues in a dissent as to whether a private right of action exists under Section 10 of the VRA,

"Section 3 does not, however, identify any of the provisions under which private plaintiffs may sue. The most logical deduction from the inclusion of 'aggrieved person' in § 1973a is that Congress meant to address those cases brought pursuant to the private right of action that this Court had recognized as of 1975, *i.e.*, suits under § 5, as well as any rights of action that we might recognize in the future." *Id.* at 289. No one disputes that the Supreme Court has never decided that question in a case involving Section 2 itself.

Fourth, Plaintiffs also cite the vacated opinion in *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647 (11th Cir. 2020) but completely ignore Judge Branch's dissent laying out her view that "Section 2 contains no express authorization enabling individuals to maintain such an action in federal court against a State. Section 2 does not 'refer to the "State" in a context that makes it clear that the State is the defendant to the suit brought by' private plaintiffs in federal court." *Id.* at 658. While Judge Branch was focused on the abrogation of sovereign immunity, the same logic applies to the lack of an any basis in the "statute's language" for a right of action. *In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc). And *Ga. State Conference of the NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) was focused on the question of sovereign immunity and *assumed* a private right of action as part of that analysis.

8

Fifth, if Plaintiffs are correct that a private right of action exists as to every section of the Voting Rights Act, [Doc. 39, p. 15], it seems strange that the Supreme Court would devote as much time and effort to determining if such a right exists for the various sections of the Act. It also would render other sections of the Voting Rights Act that confer such power only on the Attorney General to be superfluous, because Plaintiffs propose reading the "any aggrieved person" language into every part of the VRA. *See, e.g.*, 52 U.S.C. § 10101(c) (authorizing only the Attorney General to bring an action under paragraphs (a) and (b)). The Eleventh Circuit, when deciding a case brought under the Help America Vote Act did not consider or rely on Section 3 of the VRA to find the action one that enforces "the voting guarantees of the fourteenth and fifteenth amendment" when it found HAVA created no private right of action. *Bellitto v. Snipes*, 935 F. 3d 1192, 1202-03 (11th Cir. 2019).

Finally, Plaintiffs do not—and cannot—point to any "'rights-creating' language" in Section 2. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001). Their attempt to read Section 3 into an authorization for a private right of action to enforce every part of the VRA strains the text of that section and reinforces Defendants' argument that the VRA enforces constitutional provisions—thus making any challenge under the VRA also a challenge to "constitutionality" for purposes of § 2284. Relying on Congress's intent does not save the clear

9

language of a statute, despite Plaintiffs' efforts to circumvent the lack of any clear and affirmatively manifested "intent—as reflected in the Act's text and structure—to create a private right of action." *In re Wild*, 994 F. 3d at 1256.

### III. The lack of binding precedent counsels in favor of resolution by the Eleventh Circuit.

As discussed above, the questions on this Court's jurisdiction are controlling questions of law. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). If the claims must be heard by a three-judge court, then this Court lacks jurisdiction as a single-judge court. *Shapiro v. McManus*, 577 U.S. 39, 44 (2015). Referring these questions now will avoid a waste of judicial resources if a three-judge court is required. *McFarlin*, 381 F.3d at 1259.

### CONCLUSION

Plaintiffs have not shown that there is any binding precedent on either side of the questions before the Court. This Court should grant the motion to dismiss or refer the issue to a three-judge court.

This 20th day of January, 2022.

    Respectfully submitted,

    Christopher M. Carr
    Attorney General
    Georgia Bar No. 112505
    Bryan K. Webb
    Deputy Attorney General

Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Frank B. Strickland
Georgia Bar No. 678600
fstrickland@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Response Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson