IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COAKLEY PENDERGRASS et al.,

    Plaintiffs,

v.

BRAD RAFFENSPERGER et al.,

    Defendants.

CIVIL ACTION FILE

No. 1:21-CV-05339-SCJ

## ORDER

This matter is before the Court on a Motion to Dismiss filed by Defendants Brad Raffensperger, in his official capacity as Secretary of State of Georgia; and Sara Tindall Ghazal, Anh Le, Edward Lindsey, and Matthew Mashburn, in their official capacities as members of the State Election Board (hereinafter, "Defendants"). Doc. No. [38].[1]

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

I.      BACKGROUND

Coakley Pendergrass, Triana Arnold James, Elliott Hennington, Robert Richards, Jens Rueckert, and Ojuan Glaze (collectively, "Plaintiffs") filed their Complaint for Declaratory and Injunctive Relief against Defendants on December 30, 2021. Doc. No. [1]. In their Complaint, Plaintiffs challenge the Georgia Congressional Redistricting Act of 2021 (hereinafter, "S.B. 2EX"), which, *inter alia*, divides Georgia into fourteen congressional districts for the purpose of electing representatives to the Congress of the United States. See S.B. 2EX. Plaintiffs assert the congressional districts violate Section 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. 10301. Doc. No. [1], 27–28.

On January 14, 2022, Defendants filed a Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), in which they seek the dismissal of all Plaintiffs' claims against them. Doc. No. [38]. They specifically argue that Plaintiffs failed to request a three-judge court for an action involving "the apportionment of congressional districts or the apportionment of any statewide legislative body," see 28 U.S.C. § 2284(a), and that this Court, therefore, lacks subject matter jurisdiction over Plaintiffs' claim. Id. Furthermore, Defendants assert that even if this case is properly before a single-judge court,

2

Plaintiffs' Complaint fails to state a claim against Defendants for declaratory relief because Congress has not expressed an intent to provide a right of action under Section 2. Id. at 13. Lastly, Defendants request certification of any denial of their motion for immediate review by the Eleventh Circuit Court of Appeals. Id. at 15–17. Plaintiffs subsequently filed a response to the motion, to which Defendants filed a reply. Doc. Nos. [39]; [40]. Plaintiffs have also filed a Notice of Supplemental Authority in Support of Their Opposition to the Motion to Dismiss. Doc. No. [47]. This matter is now ripe for review, and the Court rules as follows.

II.     **LEGAL STANDARD**

   A.     **Motion to Dismiss**

Defendants move to dismiss this action for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

"Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or status of things." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (internal quotations and citations omitted). A party may therefore

challenge the Court's subject matter jurisdiction by filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). See Fed. R. Civ. P. 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction may be either a "facial" or "factual" attack. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." Id. "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." Id. When resolving a factual challenge to subject matter jurisdiction, the Court may consider extrinsic evidence such as testimony and affidavits. Id. In this case, the challenge is based on the allegations of the Complaint, and the Court deems Defendants to have brought a facial attack on subject matter jurisdiction.

"The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim," here Plaintiffs. Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).

A defendant may also move to dismiss a complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

4

A complaint has failed to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 555 U.S. 662, 687 (2009); Twombly, 550 U.S. at 561–62, 570. Labels, conclusions, and formulaic recitations of the elements of the cause of action "will not do." Twombly, 550 U.S. at 555. To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**B.**   **Interlocutory Appeal**

28 U.S.C. § 1292(b) provides that a district court may certify an order for an interlocutory appeal if the following three elements are met: (1) the subject order "involves a controlling question of law"; (2) there must be a "substantial ground for difference of opinion" regarding the controlling question of law; and (3) an immediate appeal from the subject order "may materially advance the ultimate termination of the litigation." However, "[t]he proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it." McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004). Therefore, an interlocutory appeal

under 28 U.S.C. § 1292(b) is reserved for "exceptional" cases. <u>Caterpillar, Inc. v. Lewis</u>, 519 U.S. 61, 74 (1996).

## III.   ANALYSIS

The Court first addresses Defendants' Motion to Dismiss and then turns to their request for an interlocutory appeal.

### A.   <u>Defendants' Motion to Dismiss Is Due to Be Denied</u>

The Court finds that Defendants' Motion to Dismiss is due to be denied. First, Section 2284 does not require a plaintiff to request a three-judge court to hear purely statutory challenges to the apportionment of congressional districts. Second, Plaintiffs can assert these claims because, for the past forty-five years, the Supreme Court and lower courts have allowed private individuals to assert challenges under Section 2 of the VRA. <u>See</u> <u>Thornburg v. Gingles</u>, 478 U.S. 30 (1986).

#### 1.   *Three-Judge Court*

Plaintiffs' claims are not subject to 28 U.S.C. § 2284 because they do not bring a constitutional challenge to the apportionment of congressional districts. As always, when interpreting a statute, the Court looks first to the statutory text. <u>CSX Corp. v. United States</u>, 18 F. 4th 672, 679 (11th Cir. 2021).

28 U.S.C. § 2284(a) reads: "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts of the apportionment of any statewide legislative body."

First, the statute uses the word "shall," which requires the Court to refer a matter to a three-judge court when Section 2284(a) is triggered. Id. Section 2284(a) is triggered when "an action is filed challenging the constitutionality of the apportionment of congressional districts." Id.   Here, Plaintiffs challenge the apportionment of congressional districts on statutory, not constitutional grounds. Accordingly, the Plaintiffs' statutory claim does not trigger Section 2284(a).

Defendants, however, argue that Section 2 of the VRA is nearly identical to the Fifteenth Amendment, and a three-judge court is required to hear these challenges because they are "'constitutional' in nature." Doc. No. [38-1], 10–11. The Court does not agree with this reading. If Section 2284 requires a three-judge court to hear statutory challenges to the apportionment of congressional districts, then the word "constitutionality" is mere surplusage. A "cardinal principle of interpretation [is] that courts must give effect, if possible, to every clause and every word of a statute." Liu v. SEC, --- U.S. ----, 140 S. Ct. 1936, 1948 (2020). "The

Court . . . hesitates to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." <u>Maine Comm. Health Options v. United States</u>, --- U.S. ----, 140 S. Ct. 1308, 1323 (2020) (citations omitted) (internal punctuation omitted). However, "[w]here there are two ways to read the text—either [a word] is surplusage, in which case the text is plain; or [a word] is not surplusage . . . in which case the text is ambiguous—applying the rule against surplusage is, absent other indications, inappropriate." <u>Laime v. U.S. Trustee</u>, 540 U.S. 526, 536 (2004). Here, Section 2284 as written, is not ambiguous. Reading Section 2284 without the word "constitutionality" does not clarify the statute; rather, its only effect is to increase the statute's scope. Accordingly, Defendants' reading of the statute would cause the word "constitutionality" to be surplusage and is not consistent with the plain language of the statute.

Defendants essentially concede this point. When explaining why "constitutionality" applies to challenges to the apportionment of the congressional districts, but not statewide legislative districts, Defendants argue "in such redistricting challenges, the potential for federal disruption of a state's internal political structure is great . . . . For this reason, it makes sense that Congress chose a broader standard for state legislative districting challenges."

8

Doc. No. [38-1], 7 (quotations and citations omitted). Defendants also point out that Congress expressly drafted Section 2284 so that the "'constitutionality' requirement only applies to challenges to congressional districts." Doc. No. [38-1], 6. Thus, the plain language of Section 2284(a) dictates that only constitutional, not statutory, challenges to federal districts require a three-judge court.

Second, all courts have read that a challenge to a congressional district requires a three-judge court only when a party brings a constitutional challenge. In Thomas v. Reeves, 961 F.3d 800 (5th Cir. 2020), all eleven judges agree that when a plaintiff challenges the apportionment of a federal map, only constitutional challenges are referred to a three-judge court.[2] See id. at 803 (Costa, J., concurring) (writing for six judges and finding "the modifier 'constitutionality of' should apply to both of the parallel terms that follow it: (1) challenges to 'the apportionment of congressional districts' and (2) challenges to 'the

---

[2]  In dicta, the Fifth Circuit issued two concurring opinions "to explain . . . [the] plain [language] of the three-judge statute as well as its ancestry." Thomas, 961 F.3d at 802. One concurrence, joined by six of the judges, stated that the plain language of the statute does not require a three-judge court to hear purely statutory challenges to the apportionment of a statewide legislative body. Id. at 801 (Costa, J., concurring). The second concurrence, joined by five judges, stated that the statute requires a three-judge court to hear statutory challenges to the apportionment of a statewide legislative body. Thomas, 961 F.3d at 827 (Willett, J., concurring) (emphasis in original).

9

apportionment of any statewide legislative body.'"); <u>id.</u> at 811 (Willett, J., concurring) (emphasis in original) (writing for the remaining five judges and finding "only constitutional challenges to *federal* maps require three judges"); <u>see also</u> <u>Harris v. Ariz. Indep. Redistricting Comm'n</u>, 578 U.S. 253, 257 (2016) (parenthetically describing Section 2284(a) as "providing for the convention of a [three-judge] court whenever an action is filed challenging the constitutionality of apportionment of legislative districts"); <u>Singleton v. Merrill</u>, Case No. 2:21-cv-1291-AMM, 2:21-cv-01530-AMM, 2021 WL 5979497, at *3 (N.D. Ala. Nov. 23, 2021) ("[P]laintiffs intentionally have not asserted a [constitutional] claim that independently supports the jurisdiction of a three-judge panel under Section 2284 . . . to include those plaintiffs in this consolidated action could exceed the limited jurisdiction of this [three-judge] court under that statute."). Adopting Defendants' reading of the statute would cause this Court to split from all courts that have interpreted Section 2284's applicability to challenges to congressional districts. This Court declines to create such a split.

Defendants argue that reading Section 2284 to apply to statutory claims is consistent with Congress's intent. Doc. No. [44], 4. Defendants state that, until recently, plaintiffs did not bring Section 2 claims without an accompanying

10

constitutional challenge or a challenge pursuant to Section 5 of the VRA. Id. Prior to 2013, following the decennial census, various states and counties (the "covered jurisdictions"), including Georgia, were required to submit their proposed legislative maps to the U.S. Attorney General before enacting the maps ("preclearance").[3] 52 U.S.C. §§ 10303(a)(1) ("Section 4 of the VRA"); 10304(a). If a party brought a challenge under Section 4 of the VRA, a three-judge court was required to hear the action. 52 U.S.C. §§ 10303(a)(5); 10304(a). However, in 2013, the Supreme Court held that the coverage formula, which determined which states had to undergo preclearance, was unconstitutional. Shelby Cnty., 570 U.S. at 556–57. Accordingly, this is the first decennial census since the passage of the VRA, where Georgia was not required to have its legislative maps pre-cleared.

Because of the recent change in the law, there is no binding authority on whether a plaintiff must request a three-judge court to hear statutory challenges

---

[3] "Section 4 of the [VRA] provides the 'coverage formula,' defining the 'covered jurisdictions' as States or political subdivisions that maintained tests or devices as prerequisites to voting, and had lower voter turnout, in the 1960s and early 1970s." Shelby Cnty. v. Holder, 570 U.S. 529, 529 (2013). The covered jurisdictions included: Alabama, Alaska, Arizona, Georgia, Louisiana, Mississippi, South Carolina, Texas, Virginia, four counties in California, five counties in Florida, two counties in Michigan, seven counties in New Hampshire, three counties in New York, thirty-nine counties in North Carolina, and two counties in South Dakota. 28 C.F.R. pt. 51, App. (2012).

11

to congressional districts. Prior to Shelby County, three-judge courts routinely disbanded once the claim invoking a three-judge panel was terminated. See Rural West Tenn. African-American Affairs Council v. Sunquist, 209 F.3d 835, 838 (6th Cir. 2000) ("Because the amended complaint contained no constitutional claim [and only the Section 2 VRA claim remained], the three-judge panel disbanded itself."); Bone Shirt v. Hazeltine, 336 F. Sup. 2d 976, 980 (D.S.D. 2004) (a single-judge court decided a challenge to a statewide legislative plan brought pursuant to Section 2 of the VRA after a three-judge court resolved the plaintiffs' Section 5 claim); Langsdon v. Darnell, 9 F. Supp. 2d 880, 882 n.3 (W.D. Tenn. 1998) (disbanded the three-judge court because the second amended complaint contained no constitutional claims). These cases suggest that three-judge courts are not invoked where a plaintiff challenges the apportionment of a congressional district solely under Section 2 of the VRA.

Additionally, reading Section 2284 to require a three-judge court to hear statutory challenges to congressional districts is contrary to the Supreme Court's narrow construction of Section 2284. The Supreme Court noted that "congressional enactments providing for the convening of three-judge courts must be strictly construed." Allen v. State Bd. of Elections, 393 U.S. 544, 561 (1969),

12

abrogated by Ziglar v. Abbassi, --- U.S. ----, 137 S. Ct. 1843 (2017)[4] (citing Phillips v. United States, 312 U.S. 246 (1941)). "Congress established the three-judge-court apparatus for one reason: to save state and federal statutes from improvident doom, on constitutional grounds, at the hands of a single federal district judge." Gonzalez v. Automatic Emp. Credit Union, 419 U.S. 90, 97 (1974). Requiring a three-judge court to hear statutory challenges to the apportionment of congressional districts is not a strict construction of the statute; rather, it expands the scope of three-judge courts.

Finally, the Defendants' reading of Section 2284 is also inconsistent with the statute's legislative history. Courts can evaluate legislative history to confirm the plain meaning of a statute and to understand Congress's intent behind the statute.

> As for the propriety of using legislative history at all, common sense suggests that inquiry benefits from reviewing additional information rather than ignoring it. As Chief Justice Marshall put it, "[w]here the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived."

---

[4] The Supreme Court noted after discussing Allen that later "the arguments for recognizing implied causes of action for damages began to lose their force." Ziglar, 137 S. Ct. at 1855–86.

Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 612 n.4 (1991) (quoting United States v. Fisher, 2 Cranch 358, 386, 2 L.Ed. 304 (1805)); see also Carr v. U.S., 560 U.S. 438, 457–58 (2010) (evaluating the correspondence between the committee to confirm the plain meaning of the statutory text); United States v. Florida, 938 F.3d 1221, 1245 (11th Cir. 2019) ("[W]e are mindful that courts need not examine legislative history if the meaning of the statute is plain, but it may do so, particularly if a party's interpretation is based on a misreading or misapplication of legislative history."); Harris v. Garner, 216 F.3d 970, 977 n.4 (11th Cir. 2000) ("[W]e see no inconsistency in pointing out that both the statutory language and legislative history lead to the same interpretive result.").

The three-judge-court statute was originally enacted in response to the Supreme Court's decision in Ex Parte Young, 209 U.S. 123 (1908), and "prohibited a single Federal district court judge from issuing interlocutory injunctions against allegedly unconstitutional State statutes and required that cases seeking such injunctive relief be heard by a district court made up of three judges." S. Rep. No.

94–204 (1976), 2, <u>reprinted in</u> 1976 U.S.C.C.A.N. 1988.[5] In response to the growing backlog of cases produced by this statute, Congress amended the law and removed constitutional challenges to State laws generally from the purview of a three-judge court. However, "[t]he bill *preserves* three-judge courts for cases involving congressional reapportionment or the reapportionment of a statewide legislative body." <u>Id.</u> at 9 (emphasis added). Because the original statute only required that three-judge courts hear challenges "upon the grounds of unconstitutionality of such statute" (28 U.S.C. § 2281 (1948), 62 Stat. 968), the amendment "preserved" the requirement that three-judge courts hear constitutional challenges to the apportionment of congressional districts.

_____

[5]   The original statute read:

> An interlocutory or permanent injunction restraining the enforcement, operation of execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judges thereof upon the grounds of unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges.

28 U.S.C. § 2281 (1948), 62 Stat. 968

Reading the statute to encompass statutory challenges to reapportionment would be an expansion, not a preservation, of the three-judge court's jurisdiction.

Additionally, the committee specifically notes that three-judge courts can hear claims that are expressly authorized by an act of Congress. "A three-judge court is mandatory without request by anyone in suits under sections 4(a), 5(a), and 10 of the Voting Rights Act of 1965." Id. When Congress amended Section 2284, it was careful to note that three-judge courts have jurisdiction over particular statutory challenges; however, absent from that list are challenges brought pursuant to Section 2 of the VRA. Because Section 2284, as amended, "preserved" the jurisdictional requirements from the original three-judge-court statute, it only applies to constitutional challenges to the apportionment of districts and certain statutory challenges that are expressly authorized by Congress (i.e., sections 4(a), 5(a) and 10 of the VRA). Because Congress did not expressly require three-judge courts to hear Section 2 claims, dismissal for failure to request a three-judge court is improper.

Accordingly, consistent with the plain language, weight of authority, and legislative history, the Court finds that Section 2284 does not require Plaintiffs to

16

request a three-judge court to hear its purely statutory challenge to apportionment of the congressional districts.[6]

### 2. *Private Right of Action*

In their Motion, Defendants assert that the Complaint should be dismissed because there is no private right of action conferred by Section 2 of the VRA. Doc. No. [38-1], 12. In support of their motion, Defendants rely upon a recent concurring opinion by Justice Neil Gorsuch in the case of <u>Brnovich v. Democratic National Committee</u>, --- U.S. ----, 141 S. Ct. 2321 (2021), in which he noted that Supreme Court jurisprudence has "assumed — without deciding — that the Voting Rights Act of 1965 furnishes an implied cause of action under" Section 2. <u>Id.</u> at 2350 (Gorsuch, J., concurring). Justice Gorsuch also indicated that "[l]ower courts have treated this as an open question." <u>Id.</u> Also, in their motion, Defendants examine the statutory language of Section 2 and states that one cannot find any "rights-creating language in Section 2," as compared to other parts of the VRA. Doc. No. [38-1], 13 (quotations omitted). Defendants further rely upon Supreme

---

[6] Because the Court finds that this action should not be heard by a three-judge court, the Court also finds that Defendants' Motion to Dismiss is due to be denied insofar as it argues that Plaintiffs failed to request a three-judge court pursuant to this District's Local Rules. <u>See</u> Doc. No. [43-1], 11–12.

Court and Eleventh Circuit precedent, which indicates that courts may not create causes of action where there is no clear and affirmative manifestation of Congress's intent to create one. Id. at 13–14; see also Alexander v. Sandoval, 532 U.S. 275, 286–87 (2001); In re Wild, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc)).

The Court begins by acknowledging that it is correct that lower courts have treated the question of whether the VRA furnishes an implied right of action under Section 2 as an open question. However, in a recent trend, the lower courts that have answered the open question have all answered the question in the affirmative. See Singleton v. Merrill, Case Nos. 2:21-cv-1291-AMM, 2:21-cv-01530-AMM at 209–10 (N.D. Ala. Jan. 24, 2022), ECF No. 107 ("Holding that Section [2] does not provide a private right of action would work a major upheaval in the law, and we are not prepared to step down that road today."); League of United Latin Am. Citizens v. Abbott, No. EP21CV00259DCGJESJVB, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) ("[I]t would be ambitious indeed for a district court—even a three-judge court—to deny a [Section 2] private right of action in the light of precedent and history."); Ga. State Conf. of NAACP v. State, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) ("Even though the statute does not explicitly provide a private right of action, it is clear from the text that if the

18

statute offers a right of action to an individual, then that right must be one that is enforceable against a 'State or political subdivision.' Given that Section 2 contains an implied private right of action . . . .") (citations omitted).

While not binding, the Court accepts these holdings as persuasive authority and draws guidance from them. The Court also derives guidance from the Supreme Court's opinion in Morse v. Republican Party of Virginia, 517 U.S. 186, 232 (1996) in which the Court stated: "Although § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'" Id. (citing S. Rep. No. 97–417, at 30). In their briefing, Defendants appear to characterize the Morse opinion as non-binding dicta because the Court was not addressing an express challenge to private Section 2 enforcement. Doc. No. [44], 2. "Even so, dicta from the Supreme Court is not something to be lightly cast aside." Peterson v. BMI Refractories, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997).

Like the court in Abbott, this Court agrees with the statement that "although the Supreme Court has not addressed an express challenge to private Section 2 enforcement, the Court's precedent permits no other holding." Abbott, 2021 WL 5762035, at *1. This is because there is no reason to ignore or refute the

19

decades of Section 2 litigation challenging redistricting plans in which courts (including the Supreme Court) have never denied a private plaintiff the ability to bring a Section 2 claim. Id.

As aptly stated by the Abbott court, "[a]bsent contrary direction from a higher court," this Court declines to "break new ground on this particular issue." Id.

### B.    Immediate Appeal of this Court's Ruling is Not Authorized

Defendants assert that this Court should authorize an immediate appeal if it rules against Defendants on the issues presented in their motion.

After review, the Court denies Defendants' request as none of the questions for which Defendants seek certification are issues involving a "controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b).[7]

---

[7] The Court recognizes that in their brief Defendants, quote appellate dissenting opinions concerning the lack of statutory provisions in Sections 2 and 10 of the VRA under which private plaintiffs may sue. See Doc. No. [44], 8–9. However, "no federal court anywhere ever has held that Section [2] does not provide a private right of action." Singleton, Case Nos. 2:21-cv-1291-AMM, 2:21-cv-01530-AMM at 230, ECF No. 107. In the absence of such a ruling, the Court does not think that the Section 2/private right of action issue is a question that is appropriate for immediate appeal.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. No. [38]). Defendants' request for certification of this ruling for immediate appeal under 28 U.S.C. § 1292(b) is **DENIED**.

**IT IS SO ORDERED** this _27th_ day of January, 2022.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

21