

|            |                                                                                                                                                                                                                                                                                                     |
|------------|------|
| **From:**  | Robert McGuire |
| **To:**    | Daniel Walter White; Bennett Davis Bryan; Laura K. Johnson; Cheryl Ringer; David Lowman; Kaye Burwell; Grant Schnell; Robert Highsmith; John Salter; Roy Barnes |
| **Cc:**    | Bruce Brown; Cary Ichter; william@nhphlaw.com; Adam Sparks; Chapple; Conaway; David D. Cross; Halsey Knapp; Jane P. Bentrott; John Carlin; Miriyala; Robert Manoso; Marilyn Marks (marilyn@aspenoffice.com) |
| **Subject:** | Curling v. Kemp -- Coalition Pls." Response to Defs." Inquiry re Why Litigation Hold Includes Optical Scanners |
| **Date:**  | Monday, May 14, 2018 4:07:30 PM |
| **Attachments:** | 20170912, 9.12 17 Curling v. Kemp - Litigation Hold clean.pdf |

Counsel,

The purpose of this email is to satisfy the Court's order (Doc. 205) requiring that, "the Coalition Plaintiffs shall respond to Defendants' inquiry as to why the litigation hold include optical scanning machines that are not DRE machines."

Coalition Plaintiffs wish to have electronic records of optical scanners preserved because all computers can be infiltrated with malware, and the AccuVote Optical Scanner ("AVOS") is no exception. The AVOS is an integrated component in Georgia's DRE voting system.  The AVOS can both receive and transmit malware to and from other components in the system, such as the GEMS server, individual DRE units and, in this case, the KSU server.

The litigation hold in this case includes optical scanning machines because the Coalition Plaintiffs intend to request production of the electronic records of the optical scanners used in relevant elections as part of our discovery, given the ability inherent in the system to spread malware. Additionally, given that the Coalition Plaintiffs have recommended that the AVOS units be used for an interim solution, examination of the security of those machines is anticipated to be part of our proof.

We take this opportunity to clarify a typo that appears on the September 12, 2017 litigation hold letter from Steptoe (attached). Specifically, the second numbered item in the letter contains a stray "2" in front of the words "Optical Scanners." The stray "2" is a typo—the intention was to note that <u>all</u> optical scanners, not just two of them, are required to be maintained.  I understand that Daniel White noted this typo last Thursday.

More generally, we reiterate here that the Coalition Plaintiffs expect the county defendants to maintain <u>all</u> electronic records listed in the September 12, 2017 letter for the <u>relevant elections</u> referenced in the complaints, something we have repeatedly indicated in previous correspondence. (Relevant correspondence includes the letter of September 22, 2017 to the Court referencing all of the machines that had been released and citing our understanding that all other election records remain on litigation hold.)

Our understanding of the present state of things is that <u>all</u> election records must be preserved, consistent with the Court's December 15, 2017 Order (Doc. 122) requiring the preservation of "all evidence relevant to the claims and defenses in this litigation." The Court's 12/15/17 Order encompasses all election data created

Case 1:17-cv-02989-AT   Document 209-1   Filed 05/17/18   Page 2 of 6

in the relevant elections that have not been specifically released by the Coalition Plaintiffs.  Based on this understanding, we continue to maintain, and hereby reiterate, our objection to the ongoing alteration of records used in the November and December 2017 elections.

We also want to be clear here that the "agreement" last Thursday that plaintiffs will await a proposed schedule to receive more information from the counties about the DRE machines' electronic records (which the Coalition Plaintiffs requested on 5/2 and 5/3) should not be taken to mean that the Coalition Plaintiffs have in any way agreed to the counties overwriting any machines that contain data from the relevant elections identified in the complaints, since all of the data from those relevant election are still subject to litigation hold under the Court's Order of 12/15/17.

Best,
Robert McGuire

Robert A. McGuire, III                                    *** NOTE NEW CONTACT DETAILS BELOW ***
Shareholder | the Robert McGuire Law Firm
1624 Market St Ste 226 #86685, Denver, CO 80202-2523 | 113 Cherry St #86685, Seattle, WA 98104-2205
E: ram@lawram.com | T/F: 720.420.1395 | T/F: 253.267.8530 | www.lawram.com

This communication is confidential, may be privileged and is meant only for the intended recipient. If you are not the intended recipient, please notify the sender by reply and delete the message from your system. Any unauthorized dissemination, distribution or copying hereof is prohibited.

Joe Robert Caldwell, Jr.
202 429 6455
jcaldwell@steptoe.com
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com



September 12, 2017

**BY ELECTRONIC AND REGULAR MAIL**

Cristina Correia
Josiah Benjamin Heidt
Elizabeth Ahern Monyak
Attorney General's Office-Atl
Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
404-656-7063

Cheryl Ringer
David R. Lowman
Kaye Woodard Burwell
Office of Fulton County Attorney
Fulton County Government Center
141 Pryor Street, S.W.
Suite 4038
Atlanta, GA 30303
404-612-0263
Email: cheryl.ringer@fultoncountyga.gov

Bennett Davis Bryan
DeKalb County District Attorney's Office
Stone Mountain Judicial Circuit
556 North McDonough Street
Suite 700
Decatur, GA 30030
404-687-3815
Email: bdbryan@dekalbcountyga.gov

Daniel Walter White
Haynie Litchfield Crane & White
222 Washington Avenue
Marietta, GA 30060
770-422-8900
Fax: 770-424-8900
Email: dwhite@hlclaw.com



Re: *Donna Curling, et al. v. Brian P. Kemp, et al.*, Civil No. 17-cv-02989-AT, United States District Court for the Northern District of Georgia

Dear Counsel:

As counsel for Plaintiffs in this action, and following up on our "meet and confer" conference calls on September 5 and 6, 2017, this letter is written to request that Defendants take reasonable steps to preserve all documents and records, including but not limited to all electronically stored information ("ESI"), that are relevant to the allegations in the pleadings in this action, or that are reasonably likely to lead to the discovery of admissible evidence.

Please ensure that Defendants preserve not merely the DRE voting machines, but all equipment, hard copy documents, and electronic data/information related to the November 2016, April and June 2017 elections including but not limited to:

1. DREs (Accuvote TS machines);[1]

2. 2 Optical Scanners;

3. TSx machines (whether used in voting or electronic transmission of voting data);

4. voter registration records;

5. poll books and all related electronic and paper data;

6. 10 voter access cards to be selected by the Plaintiffs from a list of inventory supplied by the Defendants;

7. communications related to the allegations in the Complaint (including, but not limited to, requests to recanvas, concerns about the voting system, certification of the voting system, and internal, non-privileged communications regarding the same), including the planning for the November 2016 general election;

8. internal or external investigations related to the November 2016, April 2017 and June 2017 elections (including, but not limited to, any software issues creating problems with voter registration, voter records, or voters ability to vote, or location for voting, and any forensic review or investigation);

9. card creators;

---

[1] As Defendants are aware, Plaintiffs remain amenaable to releasing voting machines needed for the November 2017 election after being supplied with an inventory of machines and other equipment needed for their consideration.

2



10. GEMS databases;

11. election night reporting records and data (including the Election Night Reporting server activity logs);

12. memory cards for all equipment;
13. Election Media Processors;

14. modem transmission network logs;

15. any external storage device, servers, component, or other technology used to create, program, read, store, or transfer any of the above.

With respect to electronic records, we expect that Defendants have already imposed a litigation hold to preserve and retain all potentially pertinent ESI within their possession, custody or control, consistent with their obligations under the Federal Rules of Civil Procedure. For purposes of this notice, ESI shall include, without limitation, all electronic mail ("email") files and attachments, backup email files (including backup media, such as Microsoft Exchange server backup tapes), text files (including word processing documents), data files, program files, spreadsheets, graphical image files (including .JPG, .GIF, .BMP, .TIFF and .PDF files), databases, voicemail messages and files, calendar and scheduling information, computer system activity logs (including network, web, and server logs), external storage devices, servers, or other technology used to create, program, read, store, or transfer data, and backup tapes. It shall also include all file fragments, residual and hidden data, deleted files and other electronically recorded information to the extent that the preservation of such data is reasonably calculated to lead to the retrieval of any relevant deleted information.

The duty of good faith which arises from the Federal Rules of Civil Procedure relating to the discovery of electronically stored information requires Defendants to take all steps necessary to prevent the loss of any relevant information, even if it is believed not to be reasonably accessible. Please also note that electronically stored information typically contains relevant, discoverable information beyond what is apparent to the viewers, *e.g.*, embedded data or metadata. As a result, Defendants must preserve all electronically stored information in its original electronic form, even where paper copies might exist. Because electronically stored information can be easily modified, deleted or otherwise corrupted, Defendants must take all necessary steps to make sure that all electronically discoverable data is preserved. This obligation includes the requirement that Defendants confirm that data is not altered or otherwise destroyed from automatic functions occurring during the routine operation of any electronic information systems, upgrades or the recycling of computer-related hardware or software. This preservation requirement includes, but is not limited to, the obligation to suspend any such operations, upgrades, or recycling features or protocols (including any document or data destruction policies) pending resolution of potential claims against Defendants.

We reserve the right to supplement this demand as investigation and discovery proceed. Of course, if you have any questions regarding any of the foregoing, please contact me directly.


Sincerely,

Joe Robert Caldwell, Jr.

4