Civil Action File No: 1:17-CV-02989-AT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, et al.,
*Plaintiffs,*

v.

BRIAN KEMP, et al.,
*Defendants.*

## STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COALITION PLAINTIFFS' THIRD AMENDED COMPLAINT

**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................i

TABLE OF AUTHORITIES......................................................iii

INTRODUCTION.....................................................................1

BACKGROUND.......................................................................4

ARGUMENT...........................................................................6

I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION.....................6

A.     **Plaintiffs Lack Standing to Bring This Action**...........................6

    1.   *Plaintiffs Have Not Sufficiently Alleged An "Injury In Fact."*........8

    2.   *There is No Causal Connection Between Plaintiffs' Alleged Injury And Any of the State Defendants' Conduct*...............................11

    3.   *It is Unlikely That Any Favorable Decision Will Redress Plaintiffs' Alleged Injury*......................................................................15

    4.   *Plaintiffs May Not Manufacture Standing by Inflicting Harm on Themselves*........................................................................17

    5.   *Plaintiff CGG Lacks Associational Standing*..........................18

B.     **Plaintiffs' Federal Claims, Against the State Defendants in Their Official Capacities, Are Barred by the Eleventh Amendment**....21

C.     **None of *Ex parte Young's* Exceptions Apply**..............................29

    1.   *Ex parte Young's immunity exception is inapplicable without a violation of federal law that is "ongoing" and "continuous."*.........29

2.    *Ex parte Young's exception to immunity does not apply because Plaintiffs' relief would "adjudicate the legality of past conduct," meaning their relief is not "purely prospective."*........................31

3.    *Ex parte Young's exception to immunity does not apply because Plaintiffs' relief "implicates special sovereignty interests" such that this suit is essentially to usurp the State's role in the regulation of elections*...............................................................................33

II.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM........................36

A.    The Due Process Claims..........................................................37

B.    The Equal Protection Claims..................................................45

C.    The State Board Members Are Not a Proper Party as to Either Counts of the Third Amended Complaint..............................47

CONCLUSION................................................................................48

CERTIFICATE OF COMPLIANCE..................................................49

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1..............49

CERTIFICATE OF SERVICE..........................................................50

# TABLE OF AUTHORITIES

## CASES

*Alabama Freethought Ass'n v. Moore*,
  893 F. Supp. 1522 (N.D. Ala. 1995)..............................................- 18 -

*Allen v. Wright*,
  468 U.S. 737 (1984) ..................................................................- 12 -

*Am. Ass'n of People with Disabilities v. Shelley*,
  324 F. Supp. 2d 1120 (C.D. Cal. 2004) .......................................- 45 -

*Amer. Dental Assoc. v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010)...................................... - 36 -, - 37 -

*Andrade v. NAACP of Austin*,
  345 S.W. 3d 1 (Tex. 2011) ........................................................- 40 -

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 ..............................................................................- 23 -

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................... - 36 -, -37-

*Banfield v. Cortés*,
  631 Pa. 229 (Pa. 2015) ................................................. - 43 -, - 44 -

*Batson v. Kentucky*,
  476 U.S. 79 (1986) ....................................................................- 46 -

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................- 40 -

*Boglin v. Board of Trustees of Alabama Agricultural & Mechanical
   University,*
   290 F.Supp.3d 1257 (N.D. Ala. 2018).......................................- 27 -

*Briggs v. Briggs,*
   919 F.2d 1525 (11th Cir. 2007)......................................- 14 -, - 15 -

*Brown v. Williamson Tobacco Corp. v. Gault,*
   280 Ga. 420 (2006) ...................................................................- 37 -

*Burdick,*
   504 U.S. ....................................................................................- 41 -

*Bush v. Gore,*
   531 U.S. 98 (2000) ....................................................................- 39 -

*Cassady v. Hall,*
   No. 18-10667, 2018 WL 2991972 (11th Cir. June 15, 2018) ....................- 33 -

*City of Cleburne v. Cleburne Living Center,*
   473 U.S. 432 (1985) ........................................................- 46 -, - 47 -

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ...........................- 10 -, - 11 -, -18-, - 20 -, - 21 -

iv

*Consumers Union v. Supreme Court of Virginia,*
    446 U.S. 719 (1980) ................................................................- 35 -

*Corbitt v. Home Depot U.S.A., Inc.,*
    589 F.3d 1136 (11th Cir. 2009) .................................................- 2 -

*Cty. Ct. of Ulster Cty., N.Y. v. Allen,*
    442 U.S. 140 (1979) ................................................................- 10 -

*Davis v. FEC,*
    554 U.S. 724 (2008) .................................................................- 6 -

*Dillard v. Chilton Cty. Com'n,*
    495 F.3d 1324 (11th Cir. 2007) ..................................................- 8 -

*Dimaio v. Democratic Nat'l Comm.,*
    520 F.3d 1299 (11th Cir. 2008) ................................................- 11 -

*E&T Realty v. Strickland,*
    830 F.2d 1107 (11th Cir. 1987) ................................................- 46 -

*Elder v. City of Winder,*
    201 Ga. 511 (1946) ................................................................- 31 -

*Elend v. Basham,*
    471 F.3d 1199 (11th Cir. 2006) ................................................- 11 -

*Ex parte Young,*
    209 U.S. 123 (1908) ......................................................- 23 -, -27-

*Favorito v. Handel,*
 285 Ga. 795 (2009) ................................................................... passim

*Fedorov v. Board of Regents for University of Georgia,*
 194 F.Supp.2d 1378 (S.D. Ga. 2002) ......................................... - 31 -

*Georgia Dep't of Natural Resources v. Center for a Sustainable Coast,*

 294 Ga. 593 (2014) .................................................................... - 22 -

*Georgia Republican Party v. Securities and Exchange Com'n,*
 888 F.3d 1198 (11th Cir. 2018) ....................................... - 12 -, - 19 -

*Griffin Indus. v. Irvin,*
 496 F.3d 1189 (11th Cir. 2007) ....................................... - 45 -, - 46 -

*Grizzle v. Kemp,*
 634 F.3d 1314 (11th Cir. 2011) ................................................. - 27 -

*Hennings v. Grafton,*
 523 F.2d 861 (7th Cir. 1975) ..................................................... - 41 -

*Hess v. Port Authority Trans–Hudson Corporation,*
 513 U.S. 30, (1994) .................................................................... - 33 -

*Holcombe v. Georgia Milk Producers Confederation,*
 188 Ga. 358 (1939) .......................................... - 24 -, - 25 -, - 26 -

*Horton v. Bd. of County Comm'rs*,
    202 F.3d 1297 (11th Cir. 2000) ................................................................- 38 -

*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997) ...............................................................................- 34 -

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ...............................................................................- 23 -

*Lance v. Coffman*,
    549 U.S. 437 (2007) ...............................................................................- 6 -

*Lathrop v. Deal*,
    301 Ga. 408 (2017) .................................................- 22 -, - 24 -, - 25 -

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................- 7 -, - 8 -, - 18 -

*Manders v. Lee*,
    338 F.3d 1304 (11th. Cir. 2003) ...........................................................- 24 -

*McKinney v. Pate*,
    20 F.3d 1550 (11th Cir. 1994) ...............................................................- 38 -

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ...............................................................................- 3 -

*Moore v. Robinson*,
    206 Ga. 27 (1949) ..................................................................................- 24 -

*Olvera v. University System of Georgia,*
   298 Ga. 425 (2016) ....................................................................- 21 -

*Papasan v. Allain,*
   478 U.S. 265 (1986) ...................................................................- 31 -

*Perry v. CNN, Inc.,*
   854 F.3d 1336 (11th Cir. 2017)...................................................- 11 -

*Peters v. Boggs,*
   217 Ga. 471 (1961) .....................................................................- 26 -

*Quern v. Jordan,*
   440 U.S. 332 (1979) ...................................................................- 23 -

*Raines v. Byrd,*
   521 U.S. 811 (1997) .....................................................................- 6 -

*Reynolds v. Sims,*
   377 U.S. 533 (1964) ...................................................................- 39 -

*Rittenhouse v. DeKalb County,*
   764 F.2d 1451 (11th Cir. 1985)...................................................- 38 -

*Riven v. Private Health Care Sys., Inc.,*
   520 F.3d 1308 (11th Cir. 2008)...................................................- 36 -

*Scott v. Taylor,*
   405 F.3d 1251 (11th Cir. 2005) ................................................- 35 -

*Seminole Tribe of Fla. v. Fla. Dep't of Revenue,*
   750 F.3d 1238 (11th Cir. 2014) ....................................- 31 -, - 35 -

*Seminole Tribe,*
   517 U.S. ...................................................................- 33 -

*Sinaltrainal v. The Coca-Cola Co.,*
   578 F.3d 1252 (11th Cir. 2009) ................................................- 37 -

*Snowden v. Hughes,*
   321 U.S. 1 (1944) ...........................................- 41 -, - 44 -

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ........................- 7 -, - 9 -, - 11 -

*Stein v. Cortes,*
   223 F.Supp.3d 423 (E.D. Pa. 2016) ................- 10 -, - 43 -

*Storer v. Brown,*
   415 U.S. 724 (1974) ......................................................- 41 -

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,*
   305 F.3d 1293 (11th Cir. 2002) ..............................................- 2 -

*Stroud v. McIntosh,*
   722 F.3d 1294 (11th Cir. 2013) ............................................- 24 -

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ................................................................- 19 -

*Summit Med. Assocs. P.C. v. Pryor,*
  180 F.3d 1326 (11th Cir. 1999) ...................................- 27 -, - 30 -

*Taylor v. Ledbetter,*
  791 F.2d 881 (11th Cir. 1986) ...............................................- 38 -

*Timmons v. Twin Cities Area New Party,*
  520 U.S. 351 (1997) ................................................................- 41 -

*Town of Chester v. Laroe Estates, Inc.,*
  137 S. Ct. 1645 (2017) .............................................................- 6 -

*United States v. Hays,*
  515 U.S. 737 (1995) .................................................- 7 -, - 8 -, - 9 -

*Warth v. Seldin,*
  422 U.S. 490 (1975) ..................................................................- 7 -

*Weber v. Shelley,*
  347 F.3d 1101 (9th Cir. 2003) ...................................- 17 -, - 43 -

*Wesberry v. Sanders,*
  376 U.S. 1 (1964) ...................................................................- 39 -

*Wexler v. Anderson*,
   452 F.3d 1226 (11th Cir. 2006) ................................................................ - 43 -

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ............................................................................ - 23 -

**STATUTES**

42 U.S.C. §1983 ............................................................................... - 3 -

52 U.S.C. § 21081(a)(3) ....................................................................... - 44 -

C.R.S. § 7-126-102(2) ......................................................................... - 19 -

O.C.G.A. § 21-2-379.2(b) ............................................................- 13 -, - 14 -, - 38 -

O.C.G.A. § 21-2-31 ........................................................................... - 47 -

O.C.G.A. § 21-2-50 ........................................................................... - 28 -

O.C.G.A. § 21-2-50(15) ...................................................................- 25 -, - 28 -

O.C.G.A. § 21-2-379.2 ........................................................................ - 30 -

O.C.G.A. § 21-2-380 .......................................................................... - 17 -

O.C.G.A. § 21-2-380(b) ....................................................................... - 42 -

O.C.G.A. § 21-2-383 ....................................................................- 13 -, - 16 -, - 47 -

O.C.G.A. § 21-2-383(b) ...................................................................... passim

O.C.G.A. § 46-6-5 ............................................................................ - 16 -

## INTRODUCTION

The Coalition Plaintiffs have filed a fourth iteration of their claims challenging the method by which all voters in Georgia cast their ballot during in person voting, i.e., through the Direct Recording Electronic (DRE) machine. Plaintiffs continue to bring claims against the Secretary of State, the State Election Board and each of its members, (hereinafter the "State Defendants"). Plaintiffs also cling to tangential "public observance" claims against county officials for Fulton County having little, if any, relation to the injunctive relief they seek regarding DRE machines and even less to do with the State Defendants.[1]

Plaintiffs do *not* allege that they were treated differently than other voters or that their votes were diluted as compared to others, that election officials refused to count their votes or failed to follow state election procedures or otherwise violated state election law. As before, Plaintiffs continue to allege only generalized and unfounded fears that Georgia's election machinery is *vulnerable* to tampering and that future elections must have polls counted by hand because of Plaintiffs' unfounded contention that

_____

[1] Plaintiffs' initial lawsuit included election challenge claims directed at the Sixth Congressional District election which included Cobb, DeKalb and Fulton counties. Plaintiffs have since abandoned those claims and dismissed multiple defendants.

Georgia's DRE machines should be "*presumed* to be compromised." *See, e.g.*, Doc. 226 ¶¶ 119, 115 (emphasis supplied). This is the hallmark of a generalized grievance for which standing is not recognized under Article III.

As before, Plaintiffs' Third Amended Complaint remains a shotgun pleading, using incorporation-by-reference to cram 160-plus scattershot paragraphs into two counts (down from the earlier eleven). *See* Doc. 226 at ¶¶ 167 (incorporation by reference paragraph), 176 (same).[2] Conspicuous by their absence are specific facts raising a plausibly "imminent" threat to the recording of Plaintiffs' future votes. Instead, the driving force behind the complaint is Plaintiffs' distrust of election machines. *See, e.g.*, ¶ 91 (machines "not trustworthy"); *see also*, *id.* at ¶ 90 ("the results produced by an AccuVote DRE are not reliable because the machine's software . . . is subject to undetectable manipulation").

Plaintiffs' complaint still fails to match any individual Defendant's actions to either a specific claim against that Defendant or to the legal authority (and legal limitations), operative regarding the Defendants. These

---

[2] The Eleventh Circuit consistently condemns this approach. *See Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1166 (11th Cir. 2009); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

State Defendants have nothing to do with Plaintiffs' supposed "public access" complaints at polling stations in Fulton County (Doc. 226 ¶¶ 131-35).[3]

Based upon their own fears and subjective bias, Plaintiffs have repackaged their earlier counts for mandamus and coercive orders, only now artfully re-pled as supposedly prospective-only "injunctive relief." *Compare* Doc. 70 at ¶ 143 (former complaint seeking mandamus against Board members "to remove from commission machines that are not 'practicable'") *with* Doc. 226 at ¶ 172 (seeking injunction against use of DRE machines in favor of "conducting the Relevant Upcoming Elections using paper ballots"). But this is an elevation of form over substance.  The objective remains the same: co-opt the power of a federal judicial decree to override a decision enacted by the elected representatives of the State of Georgia and compel elections operate the way Plaintiffs prefer: via paper ballots counted by hand.

While their form has been disguised, the substance of Plaintiffs' allegations reprise the same claims rejected by the Supreme Court of

---

[3] For example, the Complaint spuriously alleges that the State Defendants "authorized" alleged actions of the Fulton County Defendants, apparently at polling stations in Fulton County, without explaining how the State Defendants played any alleged part (or what that part specifically was). Doc. 226 at ¶¶ 131-135.  Liability under Section 1983 cannot be imposed on theories of vicarious liability or *respondeat superior*.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Personal involvement is the *sine qua non* of liability under 42 U.S.C. §1983.  *Id.*

Georgia. *See Favorito v. Handel*, 285 Ga. 795 (2009) (rejecting claims that DRE machines denied Equal Protection under the Federal and State Constitutions and the fundamental right to vote under the Due Process Clause of the Fourteenth Amendment). Under Georgia's statutory scheme, the use of DRE machines is not subject of an act of enforcement by the State Defendants. It is a legislative mandate. Thus, Plaintiffs' request for an injunction against "enforcement" of Georgia's DRE statute by the Secretary and State Election Board members would not give Plaintiffs any meaningful relief. The State Defendants again move to dismiss all claims.

## BACKGROUND

Plaintiffs first filed suit on July 3, 2017. Less than thirty days later (after removal to this Court), Plaintiffs first moved for leave to amend their Complaint. Doc. 2. This Court granted leave and deemed that amended Complaint filed as of August 18, 2017. Doc. 14 (Order); *see also* Doc. 15 (Amended Complaint). Motions to Dismiss by the various defendants were filed. *See, e.g.*, Docs. 47, 48, 49, and 50. Two days later, Plaintiffs asked to Court to entertain yet another amendment. *See, e.g.*, Doc. 57. By leave, the Second Amended Complaint was filed on September 15, 2017. Doc. 70.[4]

---

[4] The Second Amended Complaint dropped claims against Defendant Karen Handel and signaled a morphing of Plaintiffs' claims away from what had

Again, the State Defendants moved to dismiss, citing multiple defects in standing, failure to plead a viable claim and raising various immunities. The Third Amended Complaint represents the Coalition Plaintiffs' futile attempt to plead around these defects. *See, e.g.,* Doc. 160 at 3 (Coalition Plaintiffs presume these changes will "eliminate sovereign-immunity"). But Plaintiffs cannot disguise the substance of the relief they still wish to seek, and that means formidable immunities remain notwithstanding attempts to plead artfully around them.

Were this Court to grant the relief sought by Plaintiffs, the November 2018 election would still go forward, only without an adequate means of counting votes using DRE machines. Put simply, Plaintiffs seek to dictate how elections are conducted in Georgia (by hand-counted paper ballots) and put themselves (and the Court) essentially in a position of controlling the State government apparatus going forward, with de facto authority over how and what procedures will be used to count votes. Counting paper ballots by hand would be a logistic and expensive challenge, if it could be done at all by November 2018 (it cannot). This case is, therefore, completely unlike a simple prohibitory injunction restraining one rogue official bent upon taking

---

been a contest to the results of the Ossoff-Handel election. *See, e.g.*, Docs. 76, 81.

unconstitutional action. Regardless of how they try to disguise it, the intrusion upon Georgia's sovereignty threatened by Plaintiffs' so-called "relief" goes to the heart of why sovereign immunity exists.

## ARGUMENT

### I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

### A.   Plaintiffs Lack Standing to Bring This Action.

The facts that Plaintiffs intend to vote in the future and harbor fears of "undetectable manipulation" of DRE machines is precisely the kind of "undifferentiated, generalized grievance" that signifies a lack of particularized stake in this litigation. *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (four voters' concern that Constitution's Elections Clause was not being followed insufficient to confer standing). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).   A "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).   "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each

element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 519 (1975)).

The complaint does not plead any events or facts particular to Plaintiffs personally. As to its central thesis regarding DRE machines, the complaint cites "warnings" from "news reports" (¶ 79), "findings" in "studies" concerning DREs in states like California and Ohio (¶¶ 84-85), and recycled conjecture about an alleged past security lapse relating to a server at Kennesaw State University. *See* Doc. 226 at ¶¶93-108. The complaint contains nothing to connect these dots to anything relating to the actual performance or accuracy of Georgia's DRE machines, much less these particular Plaintiffs. Equally generalized is the relief: enjoining the State Defendants from "enforcing," O.C.G.A. § 21-2-383(b), Georgia's statute mandating DREs.

It is by now well settled that "the irreducible constitutional minimum of standing" contains three elements. *United States v. Hays*, 515 U.S. 737, 742-743 (1995) (quoting *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)). First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* Second, there must be a causal connection between the injury and the conduct complained

of.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

1.      *Plaintiffs Have Not Sufficiently Alleged An "Injury In Fact."*

Plaintiffs cast their Third Amended Complaint as "seek[ing] to remedy Georgia's unreliable, insecure an unverifiable election methods." Doc. 266, ¶ 7.  But the Supreme Court has "repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power."  *Hays*, 515 U.S. at 743.  It is not enough merely to seek to protect "an asserted interest in being free of an allegedly illegal electoral system." *Dillard v. Chilton Cty. Com'n*, 495 F.3d 1324, 1333 (11th Cir. 2007).

As an initial matter, "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560. Here, Plaintiffs are not affected in a personal way.  All voters in Georgia may choose to vote in person using a DRE machine, or alternatively by absentee paper ballot. *Favorito v. Handel*, 285 Ga. 795, 798 (2009) ("Under Georgia law, every eligible voter in Georgia can make a decision to vote utilizing absentee ballots.").  "[C]ontentions regarding the accuracy of recounts 'are *merely hypothetical* and *cannot serve as a basis for declaratory relief.*'" *Id.* at 800 (emphasis supplied) (citations omitted). "Particularization is necessary to

- 8 -

establish injury in fact, but it is not sufficient. An injury in fact must also be concrete." *Spokeo*, 136 S. Ct. at 1548. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)). The Supreme Court has explained:

> When we have used the adjective "concrete," we have meant to convey the usual meaning of the term — "real," and not "abstract." Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967). Concreteness, therefore, is quite different from particularization.

*Spokeo*, 136 S. Ct. at 1548.

Here, as in *Spokeo*, Plaintiffs have failed to articulate any concrete injury from the use of the DRE machines, either in any prior election or in any future election.[5]   Plaintiffs' claims are premised entirely on the *possibility* that Georgia's election system *might be* subjected to malicious interference. "Plaintiffs' allegation that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of

---

[5] Moreover, Plaintiffs must reside in the jurisdiction for which they seek to enjoin the future use of DRE machines. *See Hays*, 515 U.S. at 745 (only voters residing in the challenged district have standing). Excepting Megan Missett, none of the individuals in the complaint are electors of Fulton County, the sole remaining county were the sought-after injunctive relief would operate. The solitary basis for standing pled as to Plaintiff Missett is the bare allegation that she "intends to vote" in future elections. Doc. 226 at ¶ 13.

the vote count, simply do not constitute injury-in-fact." *Stein v. Cortes*, 223 F.Supp.3d 423, 432 (E.D. Pa. 2016).

Plaintiffs assert that Georgia's DRE System is "*presumed* to be compromised" Doc. 226 ¶ 110 (emphasis supplied); *see also*, *id.* at ¶ 115 (DRE system "must be presumed to be compromised"). A generalized fear that malicious activity might occur is not sufficiently concrete to confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting "reasonable likelihood" of injury as sufficient to meet the injury in fact standard). Here, Plaintiffs' allegations do not even rise to the level rejected as insufficient in *Clapper*, a seminal case on standing under Article III. A mere "presumption" is even more ephemeral than the "reasonable likelihood" standard rejected in *Clapper*. Thus, Plaintiffs' "presumption" that they might become impacted somehow in the future is insufficient to confer standing because it dilutes the requirement that an injury must be "certainly impending" to constitute an injury in fact. *Clapper*, 568 U.S. at 409-10.

"As a general rule, if there is no constitutional defect in the application of a statute *to a litigant*, he does not have standing to argue that it would be unconstitutional *if applied to third persons in hypothetical situations*." *Cty. Ct. of Ulster Cty., N.Y. v. Allen*, 442 U.S. 140, 155 (1979) (emphasis supplied). Here, Plaintiffs' Third Amended Complaint persists in addressing purely

speculative injuries that the DREs *might* not work as designed due to hackers or that election officials *might* surreptitiously track the order in which voters appear and then discover how a voter voted.[6]  Courts "should not speculate concerning the existence of standing. . . . If the plaintiff fails to meet its burden, th[e] court lacks the power to create jurisdiction by embellishing a deficient allegation of injury."  *Dimaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006)).  Here, Plaintiffs have failed to allege a concrete injury and therefore lack standing to bring this action.[7]

2.  *There is No Causal Connection Between Plaintiffs' Alleged Injury And Any of the State Defendants' Conduct.*

Even if Plaintiffs' alleged injuries were more than speculative, the injuries are still not traceable to any of the State Defendants.  Plaintiffs' allegations about criminal interference with the voting system concern hypothetical third parties, not the State Defendants.  *Clapper*, 568 U.S. at 411 (holding that speculation about whether Plaintiffs would be subjected to

---

[6] Defendants deny Plaintiffs' allegations that ballots are sequentially numbered and recorded as such when real ballots are cast.

[7] Nor are Plaintiffs' unexplained and vague conclusions that Georgia election law has been violated, by themselves, sufficient to confer Article III standing. Even the violation of a federal statutory right is insufficient to necessarily confer Article III standing.  A Plaintiff must still show harm, not just a "bare procedural violation" of a statute.  *Perry v. CNN, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1550).

surveillance under the challenged federal statute, "or some other authority— shows that [Plaintiffs] cannot satisfy the requirement that any injury in fact must be fairly traceable to" the challenged statute). "A prospective injury that is contingent on the choices of a third party is less likely to establish standing." *Georgia Republican Party v. Securities and Exchange Com'n*, 888 F.3d 1198, 1202 (11th Cir. 2018); *see also Allen v. Wright*, 468 U.S. 737, 752-753 (1984) (holding that parents of school children did not have standing to challenge federal tax exemptions to racially discriminatory private schools because the alleged injury was not "fairly traceable to the assertedly unlawful conduct of the IRS."). Here, any injury would be traced to illegal hacking or surreptitious conduct by election officials, not the actual use of DREs. There is no dispute that when working properly, DRE machines record a vote in the same manner as it is cast.[8] It is only hypothetical third-party interference that creates any potential injury to Plaintiffs.

Targeting injunctive relief at the State Defendants misunderstands Georgia law. Although Plaintiffs couch their claims as against the Secretary and State Election Board members, this Court should not accept that

---

[8] Plaintiffs admit that "[w]hen operating properly, AccuVote DRES use software installed on the unit to record the voter's choice on both the DRE's removable memory card and into the machine's internal flash memory." Doc. 226 at ¶ 71.

characterization because the State Defendants neither "enforce" DRE law of their own accord, nor are Defendants unrestrained in their ability to depart from section 21-2-383(b).  The recurrent theme of the Plaintiffs' is that the State Defendants must be enjoined from "enforcing" O.C.G.A. § 21-2-383(b) so as to "require[e] voters to vote using DREs." Doc. 226, at ¶ 175.  Reading the relevant statutes, however, exposes Plaintiffs' thesis as a false construct.

By passing section 21-2-383, the General Assembly mandated the use of DREs.  In contrast to other cases where Article III standing was found to exist, this case does not challenge the statutory regime or any particular procedures concerning DRE machines.  In reality, this suit complains of past discretionary decisions by public officials to certify the DRE machines as safe and accurate for use.  That the decisions at issue in this case were entrusted exclusively to these designated public officials by laws that are *not* challenged as unconstitutional by these Plaintiffs sets this case apart.

In previous iterations of their complaint, Plaintiffs sought to mandate a reexamination of the safety and accuracy of Georgia's voting system. Doc. 70, at ¶ 134 (former Count VIII, seeking writ of mandamus to compel Secretary "to conduct the reexamination required by Georgia Code Sections 21-2-379.2(b)").  Under certain circumstances, Georgia law obliges the Secretary to reexamine the DRE system and formally attest "in his or her opinion,"

whether "the kind of system so examined can be safely and accurately used by electors." O.C.G.A. § 21-2-379.2(b). Such reexaminations form some of the boundaries of the Secretary's discretion to depart from a legislative mandate to otherwise deploy and use DRE machines in counting ballots in Georgia's elections.

At the outset of this lawsuit, the Secretary exercised his discretion to "conduct a reexamination that is thorough, methodologically sound, and able to be accomplished in a reasonable period of time" at no cost to the requesting electors, thus rendering the mandamus claim moot. *See* Doc. 49-6 (July 18, 2017 Letter from Germany to Marks).[9] Although Plaintiffs failed to meet all the statutory preconditions for such a reexamination of Georgia's DRE system, the Secretary conducted one anyway. Doc. 191-1 at 3 (Examination Report, certified by Secretary Kemp on April 20, 2018).[10]

---

[9] This Court may consider documents extrinsic to the pleadings in determining a jurisdictional issue, such as mootness. *Briggs v. Briggs*, 919 F.2d 1525, 1529 (11th Cir. 2007).

[10] While it is not necessary to consider in order to grant defendants' Motion, the "Findings" of the Reexamination state: "In three different counties, on three different days, using three different sets of DRE units, 600 randomly selected votes were cast using a GEMS database created as it would be for all elections in Georgia. In all instances, the ballot images, DRE tapes, and GEMS reports showed that all votes cast were accurately recorded and preserved on each DRE unit." Doc. 191-1 at 7. "Based on these results, the examination team finds that the examined system can be safely and accurately used." *Id.* at 8.

The use of DREs for elections in Georgia is not a mandate from the State Defendants, but one that they are subject to because it comes from the elected representatives of Georgia, who enacted the statutory conditions under which DREs must be used in Georgia's election.  The "classification" challenged in Count II (Equal Protection) did not originate from the State Defendants; it is statutory. *See* O.C.G.A. § 21-2-383(b). Plaintiffs' allegations overlook the principle that, as a public officials, the Secretary and State Board Members are governed by the laws enacted by the Georgia Legislature. Plaintiffs fail to link themselves to any actual harm by virtue of the "State [Election] Board's rules implementing the Code [that] require that all voters who cast ballots in person at the polls on Election Day must vote by DRE." Doc. 226 ¶ 58.  Plaintiffs implicitly concede that state law, not the Secretary or the SEB, requires use of a DRE system of voting. *Id.*

3.  *It is Unlikely That Any Favorable Decision Will Redress Plaintiffs' Alleged Injury.*

For reasons related to the foregoing, Plaintiffs' alleged injuries cannot be redressed by a favorable ruling from this Court.  It is an illusion to think the State Defendants are "enforcing" O.C.G.A. § 21-2-383(b) "against" the

Plaintiffs.[11]   This is not a case where the harm flows from the State Defendants' enforcement of a statute against them.   The granting of an injunction barring "enforcement' by the State Defendants would not offer any redress because it would not change the deployment of DREs.

Plaintiffs' requested relief offers no real redress because it targets the wrong actors as defendants.   The Secretary and SEB members are neither the agents of any "enforcement" of the law against Plaintiffs, nor are they the source of the requirement, as a general rule, that DREs be used in Georgia's elections.   Although Plaintiffs complain of a SEB rule (183-1-12-.01), that rule merely carries into effect the statutory command requiring DREs generally in the absence of enumerated exceptions that do not apply here.   The State Defendants are obliged to carry into effect the laws passed by the General Assembly unless and until they are declared unconstitutional. O.C.G.A. § 46-6-5 ("Powers of all public officers are defined by law. . . .").

An injunction that purported to enjoin Defendants "from enforcing O.C.G.A. § 21-2-383(b) . . . and from requiring voters to vote using DREs" (Doc. 226, at ¶ 175), would not provide any meaningful redress to the Plaintiffs.   Even were such an order of injunction entered against the State

_____

[11]  The complaint does not challenge (at least not forthrightly), the constitutional validity of O.C.G.A. § 21-2-383 that was confirmed by the Supreme Court of Georgia in *Favorito v. Handel*.

Defendants, other public officials charged with following Georgia's elections law would continue to do so even if the State Defendants took no further action. Further, Plaintiffs' speculation that a different balloting system would eliminate potential third party interference with voting ignores the reality recognized by the courts that no election system is flawless. *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th Cir. 2003) ("The unfortunate reality is that the possibility of electoral fraud can never be *completely* eliminated, no matter which type of ballot is used.") (emphasis in original); *Favorito v. Handel*, 285 Ga. at 797 (same).

4.   *Plaintiffs May Not Manufacture Standing by Inflicting Harm on Themselves.*

Plaintiffs cannot manufacture standing by incurring a harm of their own choice. Plaintiffs claim standing exists because they "intend[] to vote" in the November 2018 Election. *See, e.g.*, Doc. 226, ¶¶ 24-27. But if Plaintiffs object to using DRE machines, they are free to vote by absentee ballot without any precondition and on any day except the actual day of the election. *See, e.g.*, O.C.G.A. § 21-2-380 (absentee elector, defined as ballot cast other than in person on the day of the election, "shall not be required to provide a reason in order to cast an absentee ballot"). "[I]n deciding to forego the privilege of voting early on a paper ballot, voters *assume the risk* of

necessarily different procedures if a recount is required." *Favorito v. Handel,* 285 Ga. at 798 (emphasis supplied).[12]

Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper,* 556 U.S. at 416.   "This court cannot understand how voluntary exposure to purportedly offensive conduct can establish standing to obtain an injunction barring such conduct." *Alabama Freethought Ass'n v. Moore,* 893 F. Supp. 1522, 1536 (N.D. Ala. 1995).  Such "clever machination . . . would make a mockery" of Article III's case or controversy requirement. *Id.*; *see also Lujan,* 504 U.S. at 565 n. 2 ("[I]mminence ... has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, *and the acts necessary to make the injury happen are at least partly within the plaintiff's own control* ") (emphasis added).

5.   *Plaintiff CGG Lacks Associational Standing.*

Finally, Plaintiff CGG does not have standing to bring this action. Plaintiff CGG is a non-profit corporation organized in Colorado.  Doc. 226 ¶

---

[12] Especially as members of an entity, the Coalition for Good Governance, that purports to educate its members on voting issues, there is ample time between now and the November 2018 Election for the Coalition to educate its members as to the ready availability of voting by absentee ballot.

18. CGG asserts that it is bringing this action on behalf of its members. *Id.* at ¶ 23. Because its members cannot "presume" their way to standing, CGG cannot satisfy standing by presuming or hypothesizing harm to its members. *See Ga. Republican Party*, 888 F.3d at 1204 ("probabilistic standing ignores the requirement that organizations must 'make specific allegations establishing that at least one identified member had suffered or would suffer harm'") (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

While Plaintiff CGG purports to be a "membership organization," its executive director testified in June, 2017 that there was no formal procedure to membership. Instead, she considers anyone that contacts the organization "to be on [their] mailing list and get information" a "member." Doc. 49-3 at 2 ln. 21 through p. 3 ln. 6. However, Colorado law is clear that *consent* of the proposed member is needed before they may become a member. C.R.S. § 7-126-102(2). According to the CGG's website, under the "Join Email List" tab on the website, no indication is provided that by providing a name and address an individual is actually *joining* the organization, much less any ability to grant or deny consent to be a member.[13] CGG cannot assert the rights of individuals simply because they are on CGG's mailing list.

---

[13] https://coalitionforgoodgovernance.org/join-us/ last visited on August 29, 2017.

Complaining of "diverted resources" (Doc. 226, at ¶ 140) and distraction from "efforts to market" itself (*Id.* at ¶ 142 (fourth bullet)), CGG's attempt at organizational standing fares no better.[14]   Because Plaintiffs do not face a threat of certainly impending harm from DREs, any costs they have incurred to avoid speculative harms are the product of their own subjective fear.  The Supreme Court says Article III demands more.  "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on nonparanoid fear." *Clapper*, 568 U.S. at 416 (rejecting organizational standing).   Again, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.*

---

[14] Plaintiffs deploy the circular argument that paying "fees of lawyers for advice and representation" to "resist Defendants' enforcement of laws" proves standing. Doc. 226, at ¶ 142 (first bullet).  If paying lawyers satisfied constitutional standing, the requirement would be moot once a lawyer was retained for filing suit.  Because the Coalition had a pre-existing incentive to hire lawyers, market itself, and "educate" its membership even without Georgia's DRE law, the kind of "costs" listed in ¶ 142 are not "fairly traceable" to the State Defendants' activities regarding section 21-2-383(b). *Clapper*, 568 U.S. at 417.

B.   **Plaintiffs' Federal Claims, Against the State Defendants in Their Official Capacities, Are Barred by the Eleventh Amendment.**

Plaintiffs' Third Amended Complaint recasts their federal claims as asserted against the individually named State Defendants in their official capacities.  Notwithstanding their pretense of now seeking solely prospective injunctive relief, Plaintiffs' grievance remains the same: that State Defendants "ha[ve] taken no action to mandate the use of paper ballots to protect Georgia's elections." Doc. 226 ¶ 15.  Plaintiffs continue to enlist this Court in ordering the State Defendants to conduct the November 2018 Election by a hand-counting of paper ballots. *See, e.g., id.* at 16 ("the State possesses . . . [the] know-how to immediately transition to paper ballots"); *id.* (demanding deployment of "the currently available paper-ballot system"). Plaintiffs' claims seek to dictate the form and content of Defendants' actions regarding Georgia's elections by "requiring" the State Defendants to undertake "post-election audits of paper ballots to verify the results reported by the tabulation machines." Doc. 226 (second "Prayer for Relief," subsection "A").

The "sweep of sovereign immunity under the Georgia Constitution is broad." *Olvera v. University System of Georgia*, 298 Ga. 425, 426 (2016).  In *Georgia Dep't of Natural Resources v. Center for a Sustainable Coast*, the

Georgia Supreme Court reversed its earlier divided precedent to announce a "bright line rule that only the Constitution itself or a specific waiver by the General Assembly can abrogate sovereign immunity." 294 Ga. 593, 602 (2014).

Application of that bright-line rule led the Court to reject a prior holding that had authorized common law injunctive relief against the State and rule that injunctive relief is barred by sovereign immunity, unless the plaintiff can demonstrate the existence of an explicit waiver authorizing the claim. In *Olvera*, the Georgia Supreme Court applied the same reasoning to claims seeking declaratory relief.

In *Lathrop v. Deal*, 301 Ga. 408 (2017), the Georgia Supreme Court ruled that sovereign immunity barred claims against the State for injunctive and declaratory relief based on enforcement of a law alleged by the plaintiffs to be unconstitutional. The holdings in these three cases leave no doubt that Plaintiffs cannot sue the State or the State Defendants in their official capacity for declaratory or injunctive relief based on the alleged violations of the Georgia Constitution regarding ballot secrecy (Doc. 226, at ¶ 178), because there is no explicit waiver of sovereign immunity in either the state constitution to authorize these claims.

No matter how Plaintiffs try to dress up their injunction as a purely prospective prohibitory injunction, what Plaintiffs seek is to seize the reins of Georgia's elections system and to install themselves, aided by judicial decree, in the decision-making role of elected and appointed public officials. Such claims against the State Defendants in their official capacities are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).[15] An exception to this immunity, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), is limited to suits against state officers for *prospective* injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 no. 24 (1997).

Notwithstanding their attempts to evade it by artfully re-pleading the Third Amended Complaint, sovereign immunity remains an impenetrable obstacle to Plaintiffs' claims. Plaintiffs ask this Court to control, through injunctive and declaratory relief, the State's discretionary decision regarding the certification of DRE machines and, de facto, compel the State Defendants and all of Georgia's counties to count ballots in some other way for the upcoming November 2018 election. The Eleventh Amendment bars suits

---

[15] The Supreme Court has held that "§ 1983 does not override a State's Eleventh Amendment immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Kentucky*, 473 U.S. at 169.

against state officials where the state is, in reality, the true party in interest. *See, e.g., Manders v. Lee*, 338 F.3d 1304, 1308 (11th. Cir. 2003) (to receive Eleventh Amendment immunity, defendant need only be acting as the "arms of the State").[16]   Here, Plaintiffs' continued request for relief against the public officials in their official capacity is implicated because the state is, in fact, "the real party in interest."

In determining whether a suit should be deemed to be one against the State or one against the individual state officer,[17] Georgia courts have stated that "the test for determining whether or not a suit is in reality one against the State" focuses on the relief sought: The action is considered a suit against the state where the requested relief "will operate to control the action of the State or subject it to liability." *Moore v. Robinson*, 206 Ga. 27, 37 (1949).  In *Holcombe v. Georgia Milk Producers Confederation*, 188 Ga. 358 (1939), discussed in *Lathrop*, the Georgia Supreme Court elaborated on some of the

---

[16] Plaintiffs cannot point to the removal to this Court by the State Defendants as a waiver of Defendants' immunity defenses. *Stroud v. McIntosh*, 722 F.3d 1294, 1297 (11th Cir. 2013).
[17] In *Lathrop*, the Supreme Court ruled that individual capacity suits could be brought in one category of case not applicable here: where "state officers were sued in their individual capacities with respect to the enforcement of allegedly unconstitutional laws." *Lathrop*, 301 Ga. at 415.

relevant factors in determining whether a lawsuit suit controls the action of the State:

> In the present case . . . No judgment is asked which will take the property of the State, or fasten a lien on it, or interfere with the disposition of funds in its treasury, or compel the State indirectly, by controlling its officers, to affirmatively perform any contract, or to pay any debt, *or direct the exercise of any discretion committed to its officers*.

*Holcombe*, 188 Ga. at 363, quoted in *Lathrop*, 301 Ga. at 417 (emphasis added).   Thus, because the relief sought in that case did not control the actions of the state, by, for example, directing the discretion of a state officer, the Court held that the state was not the real party at interest, and, the suit could proceed against the individually named officers with sovereign immunity serving as no bar.

By contrast, this is *not* a case involving an ultra vires act or threatened enforcement of an allegedly unconstitutional law.  Unlike the situation where a state officer has engaged in actions without legal authority, here Georgia law affirmatively *requires* the Secretary to administer a DRE system. O.C.G.A. § 21-2-50(15) (the Secretary "*shall* perform all the duties imposed by this chapter," including the duty "[t]o develop, program, build, and review ballots for use by counties and municipalities *on direct recording electronic (DRE) voting systems in use in the state*") (emphasis supplied).

- 25 -

The Plaintiffs here are clearly attempting to "direct the exercise of . . . discretion" committed to the Secretary by the General Assembly under the Election Code, which demonstrates that the lawsuit is in substance against the State. *Holcombe*, 188 Ga. at 363. The expansive relief sought by the Plaintiffs – an order requiring paper ballots be used, then counted by hand— would clearly affect State property, State resources, State policy, and the Secretary's discretion to administer the Election Code.

Courts have emphasized that a lawsuit is deemed to control the state for purposes of determining the real party at interest when the subject matter involves expenditure and disbursement of State funds. *See, e.g.*, *Peters v. Boggs*, 217 Ga. 471, 474 (1961). Here, Plaintiffs want to require the State to purchase new voting equipment and train poll workers on new procedures to count paper ballots *by hand*—a process not used in Georgia for decades. If Plaintiffs were successful in obtaining a mandatory injunction compelling the November Election be conducted by paper ballot and with results counted by hand, this lawsuit would be compelling state officials to take various actions that could only be undertaken by virtue of their official positions as officers of the State, heedless to Georgia's laws that forbid them from such actions under the circumstances.

The Supreme Court's decision in *Ex parte Young* provided a narrow exception to the above-stated general rule of immunity when a suit alleged a violation of a federal constitution against a state official in her official capacity for injunctive relief only on a prospective basis.  However, the relief sought by these Plaintiffs could not fall within *Ex parte Young*'s exception. Unlike the typical case for the exception, this is not a case involving an ultra vires act or seeking to enjoin the enforcement of an unconstitutionally void statute. *C.f. Grizzle v. Kemp*, 634 F.3d 1314 (11th Cir. 2011) (*Ex parte Young's* exception applied to preliminary injunction seeking to declare statutory provision unconstitutional).  Instead, Plaintiffs seek to enjoin "enforcement" of a statute they do not challenge as unconstitutional and to overrule a state official's exercise of discretion granted him by that same constitutional statute.

"[T]he *Ex parte Young* exception only applies in instances where the state officer named as a defendant in her official capacity has the authority to enforce an unconstitutional act in the name of the state." *Boglin v. Board of Trustees of Alabama Agricultural & Mechanical University*, 290 F.Supp.3d 1257, 1265 (N.D. Ala. 2018) (internal quotations omitted) (quoting *Summit Med. Assocs. P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999).  Here, none

of the State Defendants have the authority to "mothball" the state's DRE machines in disregard of a statutory mandate.

Unlike a situation where a state officer has engaged in actions without legal authority, here Georgia law affirmatively requires the Secretary of State to administer the DRE system.  Code section 21-2-50 states that the Secretary "shall perform all the duties imposed by this chapter," including the duty "[t]o develop, program, build and review ballots for use by counties and municipalities on direct recording electronic (DRE) voting systems in use in the state." O.C.G.A. § 21-2-50(15).  As this Court well knows, the Supreme Court of Georgia has already held that voters do not have a right under state law to a particular balloting system and, further, held that the DRE system does not violate the Georgia Constitution's requirement that voting be by secret ballot. *Favorito v. Handel*, 285 Ga. 795 (2009).

Undaunted, Plaintiffs insist that because the State Defendants disagree with their belief that DRE machines must be *presumed* vulnerable, the State Defendants are enforcing *constitutional* laws *unconstitutionally*. *See, e.g.*, Doc. 226 at ¶ 115 (alleging use of DREs in elections in November of 2016, April of 2017 and June of 2017, "Defendants caused Georgia voters to cast votes on an illegal and unreliable system that must be presumed to be compromised").  Because the Secretary of State's exercise of his discretion led

to an outcome with which they disagree, Plaintiffs contend this Court should compel the State of Georgia (and, by extension, every county therein) to perform elections entirely without DRE machines statewide.

## C.   None of *Ex parte Young's* Exceptions Apply.

Under these circumstances, the application of an exception under *Ex parte Young* is problematic for Plaintiffs for three separate and independent reasons, any one of which is adequate to require dismissal under the Eleventh Amendment.  First, Plaintiffs' relief does not remedy a violation of federal law that is "ongoing" and "continuous."  Second, and notwithstanding Plaintiffs' description as "only" for prospective relief, Plaintiffs still want "to adjudicate the legality of past conduct," meaning their relief is not truly or in substance, purely prospective.   Finally, to the extent this suit usurps Georgia's control over its elections, Plaintiffs' relief "implicates special sovereignty interests" such that this suit cannot be exempted from immunity under *Ex parte Young*.  Each of these issues are addressed more particularly below.

> 1.   *Ex parte Young's immunity exception is inapplicable without a violation of federal law that is "ongoing" and "continuous."*

*Young*'s exception to 11th Amendment immunity is limited to suits for prospective relief against an "ongoing and continuous" violation of federal.

*See, e.g., Summit Med. Assocs.*, 180 F.3d at 1337 (noting an ongoing and continuous violation of federal law is required for the *Ex parte Young* doctrine to apply). This case does not fit that mold. Under the relevant statutes, and as conceded by the Plaintiffs, the Secretary of State makes periodic evaluations of the safety and security of voting by DRE machines "at any time" and/or upon request. *See, generally*, O.C.G.A. § 21-2-379.2.

Regardless of Plaintiffs' allegations, the law makes clear that the Secretary of State undertakes an ongoing and continuous review to ensure that DREs can be safely and accurately used by electors in Georgia elections. Contrary to the frivolous contention—which Plaintiffs know to be untrue— that "no efforts have been made" (Doc. 226 at ¶ 112), to ensure Georgia's elections system is safe and secure, the Secretary of State commissioned examiners to re-assess and verify that Georgia's system for employing DREs can still be used safely and accurately. *See* Doc. 191-1. Georgia's law regarding ongoing reassessments of the safety and accuracy of DRE machines belies Plaintiffs' pretense of redressing a presumed "vulnerability" that these State Defendants are purposely allowing to fester to the specific detriment of any of the named Plaintiffs.

In the absence of proof to the contrary—and especially where "none of the alleged injuries have actually occurred," there is a "legal presumption

that public officials will perform their duty in a lawful manner." *Elder v. City of Winder*, 201 Ga. 511, 512 (1946).   Plaintiffs' differences of personal opinions—based on media reports and studies—as to the qualitative assessment of future vulnerability to criminal, third-party hacking does not convert their claims into a redressable violation of federal law that is "continuous" and "ongoing."

      2.    *Ex parte Young's exception to immunity does not apply because Plaintiffs' relief would "adjudicate the legality of past conduct," meaning their relief is not "purely prospective."*

Another prerequisite of *Young*—that the relief be purely prospective—is not met either.   The *Ex parte Young* exception does not allow a plaintiff "to adjudicate the legality of past conduct." *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).   Although Plaintiffs claim their relief is prospective only, their relief remains "backward-looking" because it "seeks to remedy harm 'resulting from a past breach of a legal duty on the part of the defendant state officials.'" *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1249 (11th Cir. 2014) (quotation omitted).[18]

---

[18] Simply because the remedy will occur in the future, does not transform it into "prospective" relief, especially where "the relevant events [to Plaintiffs' claims] have already occurred." *Fedorov v. Board of Regents for University of Georgia*, 194 F.Supp.2d 1378, 1387 (S.D. Ga. 2002).

The complaint persists in lodging allegations concerning Merle King, the Executive Director at CES, since dismissed as a party. Plaintiffs' allegations regarding King relate to an alleged past lapse in security at CES. Doc. 226 ¶¶ 93, 94, 100. These allegations all relate to past "harm."

Plaintiffs seek declaratory relief that is, by definition and necessity, an adjudication of the legality of past conduct. *See, e.g.*, Doc. 226 at ¶ 115 (alleging that by using of DREs in elections in November of 2016, April of 2017 and June of 2017, "Defendants *caused* Georgia voters to cast votes on an illegal and unreliable system that must be presumed to be compromised") (emphasis supplied). Also, the Coalition Plaintiffs base their constitutional standing upon their assertion that "*prior* and intended" "unconstitutional enforcement of O.C.G.A. § 21-2-383(b)" is at stake. *See, e.g.*, Doc. 226 at ¶ 148 (emphasis supplied). Consequently, the relief sought by the Plaintiffs is not limited only to the prospective but, rather, embraces past conduct, too. Plaintiffs' claims for retrospective relief—i.e. declaratory relief that their rights have, in the past, been violated—disqualify Plaintiffs from the *Ex parte Young's* exception.

.

3.   *Ex parte Young's exception to immunity does not apply because Plaintiffs' relief "implicates special sovereignty interests" such that this suit is essentially to usurp the State's role in the regulation of elections.*

Most importantly, the drastic ramifications that would be inflicted upon the State provide another separate and independent reason why immunity under the Eleventh Amendment bars Plaintiffs' relief.   Under these circumstances, a coercive intrusion by federal courts into the exercise of state official's discretion under a constitutional law "implicates special sovereignty interests."   The Eleventh Amendment does not exist solely in order to "preven[t] federal-court judgments that must be paid out of a State's treasury." *Seminole Tribe*, 517 U.S. at 58 (citing *Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 48, (1994)). "It also serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Id.*

An order of injunction that bars use of DRE machines during the November 2018 election would put these private Plaintiffs (and this federal court) in the *de facto* driver's seat with control over the election system.   In weighing whether the Eleventh Amendment protects these defendants' under sovereign immunity, this Court should look to "the essential nature and effect of the proceeding." *Cassady v. Hall*, No. 18-10667, 2018 WL 2991972, *2 (11th

Cir. June 15, 2018).  Put simply, whether or not DRE machines are available for use, an election will occur in November 2018.  Notwithstanding Plaintiffs' uninformed assumptions, there are not currently enough optical scanners statewide to make that a viable alternative option for counting efficiently all the ballots expected to be cast in November of 2018.  This is, therefore, not a simple prohibitory injunction restraining one rogue official against unconstitutional action. Overriding a constitutional statute and mandating by injunction a reversion to using and counting paper ballots by hand for a statewide election implicates exactly the "special sovereignty interest" that makes an exception under *Ex parte Young* infirm.

The *Young* exception is unavailable if the suit would "upset the balance of federal and state interests that it embodies.*" Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 277 (1997).  In weighing an exception to immunity, this Court cannot ignore the burdens of manpower and probable outright procurement expense that would necessarily be thrust upon the State and every County Board of Elections in this State.  If the Plaintiffs were to prevail, Georgia's sovereign interests "would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Idaho*, 521 U.S. at 287.  Regardless of how they try to disguise it, Plaintiffs want to seize the reins of government—the very thing some of the

- 34 -

immunities at issue exist to prevent except under exceptional circumstances not present here.

With respect to the individual members of the SEB, Plaintiffs allege only that these members are responsible for "promulgating rules and regulations to obtain uniformity in election practices" and that are "consistent with law" in addition to "investigat[ing] the administration of primary and election laws and frauds and irregularities in elections." Doc. 226, ¶ 36. None of the asserted "responsibilities" of the SEB are sufficiently connected to the state action Plaintiff seeks to enjoin to allow suit under *Ex Parte Young*. *See, e.g., Boglin*, *supra*, at 1266 (sovereign immunity remained where limited statutory authority of officials meant they were unable to directly provide the injunctive relief). Moreover, to the extent Plaintiffs' suit is premised on the SEB's promulgation of rules and regulations, the claim is barred by legislative immunity, regardless of the relief sought. *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (explaining that the immunity "applies with equal force to suits seeking damages and those seeking declaratory or injunctive relief."). The Supreme Court has extended legislative immunity to state officials "acting in their legislative capacity." *Consumers Union v. Supreme Court of Virginia*, 446 U.S. 719, 734 (1980)

(extending immunity to state Supreme Court justices in challenge to attorney disciplinary rules).

For the three separate and freestanding reasons listed *supra*, Plaintiffs are disqualified from using the *Ex Parte Young* exception. Therefore, the State Defendants are entitled to Eleventh Amendment immunity as to all federal claims. There is no subject matter jurisdiction to hear such claims and they are subject to dismissal this this reason, separate and apart from any other.

## II. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM

As discussed above, Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction. However, even if Plaintiffs' claims were not barred, they are all nonetheless subject to dismissal for failure to state a claim.

When reviewing a motion to dismiss, the Court must take the factual allegations of the complaint as true, and must construe those allegations in the light most favorable to the plaintiff. *Riven v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th

Cir. 2010) (courts are to "eliminate any allegations in the complaint that are merely legal conclusions").   Also, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. 678-79).  "[U]nwarranted deductions of fact in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations."  *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotations omitted).

Plaintiffs' fourth try at a viable complaint pares down their previous claims two constitutional claims under the Fourteenth Amendment for substantive due process and the Equal Protection Clause.[19]   Yet, still, Plaintiffs fail to state a viable constitutional claim.

## A.    The Due Process Claims.

The Fourteenth Amendment's Due Process Clause provides two types of protection: (1) substantive due process; and (2) procedural due process.

_____

[19]  Plaintiff, Ricardo Davis, was also a Plaintiff in an earlier challenge to the DRE ballot system.  *Favorito v. Handel*, 285 Ga. 795 (2009).  Ricardo Davis' claims in this action are barred by res judicata.  *Brown v. Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 421 (2006).

*McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (*en banc*).[20]   The Georgia Supreme Court has already held that voters do *not* have a right under state law to a particular balloting system and held that the DRE system does not violate the Georgia Constitution's requirement that voting be by secret ballot. *Favorito*, 285 Ga. at 797-799.

Although Plaintiffs seek injunctive relief under the pretense that no other adequate remedies exist, Plaintiffs' own earlier complaints conceded the existence and availability of state remedies, such as a reexamination of the DRE system. Doc. 70, at ¶ 134 (Second Amended Complaint seeking remedy of "the reexamination required by Georgia Code Sections 21-2-379.2(b)); *See Horton v. Bd. of County Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("If state court could [provide an adequate remedy], then there is no federal due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.").[21]   Here, the Secretary has already voluntarily provided the adequate legal remedy of a reexamination, concluding Georgia's DRE system is safe and accurate. *See,*

---

[20] The Third Amended Complaint apparently abandons claimed violations of procedural due process, but for an analysis of that area of law, *see* Doc. 83-1 at 28-35.

[21] Moreover, the Eleventh Circuit has held that a state remedy is *not* inadequate merely because a claim may be barred by state immunity laws. *Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1459 (11th Cir. 1985); *Taylor v. Ledbetter*, 791 F.2d 881, 884 (11th Cir. 1986).

*generally*, Doc. 191-1. Because an adequate remedy exists, Plaintiffs cannot state a viable claim for injunctive relief.

Furthermore, Plaintiffs fail to sufficiently allege a violation of substantive due process. Plaintiffs' conclusory allegations that DRE machines must be "presumed" to not be reliable are wholly insufficient to state a plausible claim. Wholly absent from the complaint is any factual allegation of even one iota's difference in the actual accuracy rates between voting systems (i.e. voting absentee by paper ballot versus by DRE).

According to Plaintiffs' theory, a hypothetical touchscreen voting system that is so nearly accurate as to approach zero defects would nevertheless be constitutionally suspect if it were not susceptible to a paper audit using a substantially similar manual recount procedure as to that applying to the far less accurate voting system of paper ballots counted by hand. In contrast to other voting rights cases, the complaint does not allege that using DREs causes the State to "value one person's vote over another" *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (*per curium*); or results in "[w]eighting the votes of citizens differently," *Reynolds v. Sims*, 377 U.S. 533, 563 (1964); or makes one man's vote in a congressional election worth more than another's as in *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964). "Factual allegations must be enough to raise a right to relief above the speculative

- 39 -

level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs cannot pursue substantive due process claims premised on conclusory allegations that the DRE system is unreliable when the complaint lacks *any* factual allegation that even a single vote has been incorrectly recorded.

Nor do allegations that election officials *could* by review of votes, and by surreptitiously recording the order in which voters appear, discover how a particular voter voted establish a substantive due process violation. Doc. 226, ¶ 92 (alleging design flaws "make[] it possible" to connect voters with their ballots). While Defendants strongly dispute Plaintiffs' allegations regarding sequentially issued serial numbers connected to ballots, even if that allegation were true, speculative allegations about the possibility of manipulation by election officials cannot by itself state a claim. *See also Andrade v. NAACP of Austin*, 345 S.W. 3d 1, 15 (Tex. 2011) ("The voters' secret ballot allegations involve only hypothetical harm").

For comparison, absentee ballots may be subject to illegal manipulation in numerous ways.  A voter may be coerced to vote an absentee ballot for a particular candidate by persons close to that voter.  While the activity of coercing a voter to vote for a particular candidate is illegal, that does not make absentee ballots unconstitutional.

Plaintiffs also premise their due process claims on Defendants' alleged violation of state requirements for public observance.   Doc. 226 at ¶¶ 134 (alleging "Fulton Board Members violated their statutory duty to 'perform their duties in public'").   First, other than the unfounded conclusion that these violations were done "with the authorization of Defendants Kemp and the State Board," (*id.* at 135), the Plaintiff pleads no facts that would lead a reasonable person to credit that averment.   Secondly, and even if Plaintiffs were correct as to their interpretation of state law, a [m]ere violation of a state statute does not infringe the federal Constitution." *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); see *also Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (explaining that "[i]t is not every election irregularity . . . which will give rise to a constitutional claim and an action under section 1983.").

The Supreme Court has long recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974).[22]   Putting

---

[22] "Regulations imposing severe burdens on Appellants' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick*, 504 U.S. at 434).

aside hypothetical interference by a third party engaged in criminal conduct, Plaintiffs have not identified any actual burden on their right to vote caused by the use of DREs.

First, and as mentioned *supra*, Plaintiffs may choose to vote by absentee paper ballot or on Election Day by DRE.  O.C.G.A. § 21-2-380(b). Plaintiffs cite no authority for their statement that having to choose between voting by absentee paper ballot or on election-day burdens their right to vote. Doc. 226, ¶ 170.  As the *Favorito* Court recognized, "absentee voters 'have not been treated differently from the polling place voters, except in a manner permissible under the election statutes' and as a result of their own choice." 285 Ga. at 798.  More importantly, Plaintiffs make no allegations that their votes *have been* diluted or not counted as cast.  They simply assert that this Court should *presume* that DREs are unreliable.   These allegations are insufficient to state a Fourteenth Amendment claim.

The Georgia Supreme Court has held that the use of DRE voting machines does not violate voters' state or federal constitutional rights, including substantive due process rights.   *Favorito*, 285 Ga. at 797-798 (explaining that voters do not have a right to a particular ballot system and that "it is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems.").  Similarly, the Eleventh Circuit has

rejected a Due Process and Equal Protection challenge to manual recount procedures premised on the lack of a paper trail for counties that used the touchscreen machines. *Wexler v. Anderson*, 452 F.3d 1226, 1233 (11th Cir. 2006), *cert. denied*, 549 U.S. 1111 (2007).

> [I]f voters in touchscreen counties are burdened at all, that burden is the mere possibility that should they cast residual ballots, those ballots will receive a different, and allegedly inferior, type of review in the event of a manual recount.  Such a burden, borne of a reasonable, nondiscriminatory regulation, is not so substantial that strict scrutiny is appropriate.

452 F.3d at 1232-1233.  "Decisions that sustain due process challenges to elections involve documented instances of improperly cast ballots, wholesale refusal to count properly cast ballots, direct infringements of the right to cast ballots, or a total failure to conduct the election." *Stein*, 223 F. Supp. 3d at 438 (holding that use of DRE ballot system does not state a due process claim).  By comparison, no such allegations are present here.

"[I]t is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems. So long as their choice is reasonable and neutral, it is free from judicial second-guessing." *Weber*, 347 F.3d at 1107; *Favorito*, 285 Ga. at 797 (same, quoting *Weber*).  "DREs that register votes electronically without a voter-verified ballot do not severely restrict the right to vote." *Banfield v. Cortés*, 631 Pa. 229, 265 (Pa. 2015).

"DREs are not perfect . . . ., [but] [n]o voting system is." *Andrade, supra*, 14. But "DREs can reduce uncounted votes and virtually eliminate the racial gap that tends to exist with other types of equipment, [they] have the potential to expand access for people with disabilities and for voters with limited English proficiency, and [DREs] tend to considerably reduce the number of uncounted votes. *Id.* (internal quotations and citations omitted).

Importantly, Defendants are required, pursuant to the Help America Vote Act (HAVA), to provide a voting system that will:

> (A) be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters;
>
> (B) satisfy the requirement of subparagraph (A) through the use of *at least one direct recording electronic voting system* or other voting system equipped for individuals with disabilities at each polling place;

52 U.S.C. § 21081(a)(3) (emphasis added). Paper ballots do not provide vision impaired voters the ability to cast a vote in a private and independent manner.

> DRE systems contain an audio component which enables visually impaired voters to listen to candidates' names on headphones and to vote using distinctively shaped keys. DRE systems also contain mouth or head sticks, sip-and-puff devices, or other accessible switch technology that enables manually impaired voters to select candidates of their choice. Only with the use of these devices may

such disabled voters, for the first time, vote independently and in private.

*Am. Ass'n of People with Disabilities v. Shelley*, 324 F. Supp. 2d 1120, 1125 (C.D. Cal. 2004).

Where, as here, Plaintiffs have not alleged any burden on their right to vote by use of DRE, Plaintiffs have failed to sufficiently allege a federal constitutional claim. But even if this Court were to find that Plaintiffs' right to vote was burdened, that burden is not severe, and the State's interests in complying with federal law and providing persons with disabilities access to voting technology that provides them with the means to vote in private and independently is more than sufficient to justify any minimal burden.

**B.   The Equal Protection Claims.**

Like the substantive due process claims, Plaintiffs' equal protection claim is redundant. Plaintiffs complain that electors casting DRE ballots are treated differently than electors casting absentee ballots. But there is no equal protection violation for treating dissimilar persons unequally. *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007) ("To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, [courts] are obliged to apply the 'similarly situated' requirement with rigor."). The Equal Protection Clause of the Fourteenth Amendment

commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons *similarly situated* should be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (emphasis added). An equal protection claim requires a showing that a plaintiff has been the victim of intentional discrimination. *Batson v. Kentucky*, 476 U.S. 79 (1986). But the complaint omits any specific definition of a truly "similarly-situated group" that could give rise to a plausible inference of discrimination.

"To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, [courts] are obliged to apply the 'similarly situated' requirement with rigor." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *Id.* (quoting *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)). Plaintiffs' complaint is not that similarly situated voters truly are treated differently. Plaintiffs are upset that some choosing to vote absentee get a paper ballot while voters who wait until Election Day to vote in person get no paper ballot. The two classes of voters, after choosing to cast their ballots using *different* methods, are no longer *similarly situated*.

As the Supreme Court of Georgia recognized, all Georgia voters "have the option of casting an absentee ballot or using the touch screen electronic voting machines on Election Day." *Favorito,* 285 Ga. at 798.  To the extent that different recount procedures are necessarily applied to these different ballots, that does not violate the Equal Protection Clause. *Id.* at 799.  Where, as here, there are no allegations that Plaintiffs are members of a suspect or quasi-suspect class, "[t]he general rule is that [the state action] is presumed to be valid and will be sustained if the classification drawn by the [state action] is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440.

## C.   The State Board Members Are Not a Proper Party as to Either Counts of the Third Amended Complaint.

The claim against the individual Board members should be dismissed because the members have not, and will not, be the party "enforcing" O.C.G.A. § 21-2-383 in relation to the Plaintiffs.  Doc. 226 at ¶ 175.  Further, it would actually be unlawful for the Board members to remove the DREs, because this action is not one of the ten legally enumerated duties of the Board set forth in O.C.G.A. § 21-2-31 (Duties of the State Election Board).

## CONCLUSION

For the foregoing reasons, the State Defendants pray that all claims against them be dismissed.

This 3rd day of July, 2018.

BARNES LAW GROUP, LLC

*/s/ John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*

## CERTIFICATE OF COMPLIANCE

I hereby certify that I have read the Court's Standing Order in Cases Proceedings Before the Honorable Amy Totenberg and that I will comply with its provisions during the pendency of this litigation.

*/s/John F. Salter*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Century Schoolbook and a point size of 13.

*/s/John F. Salter*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing **STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COALITION PLAINTIFFS' THIRD AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all attorneys of record.

This 3rd day of July, 2018.

**BARNES LAW GROUP, LLC**

*/s/John F. Salter*
**JOHN F. SALTER**
Georgia Bar No. 623325
**ROY E. BARNES**
Georgia Bar No. 039000

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
john@barneslawgroup.com
roy@barneslawgroup.com

*Attorneys for Defendants Brian P. Kemp, David J. Worley, Rebecca N. Sullivan, Ralph F. "Rusty" Simpson, Seth Harp, & The State Election Board*