IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,** **Plaintiffs,** **v.** **BRAD RAFFENSPERGER, ET AL.,** **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**CURLING PLAINTIFFS' SPECIFICATION AND ITEMIZATION OF
REQUESTED AWARD FOR FEES UNDER 42 U.S.C. § 1988 AND
RESPONSE IN SUPPORT OF BILLS OF COSTS**

Pursuant to Local Rules 54.1 and 54.2, Curling Plaintiffs hereby submit their

detailed specification and itemization of the requested attorneys' fees and expenses

to be awarded, along with appropriate declarations and other supporting

documentation, and respond to State Defendants' Objection to Curling Plaintiffs'

Bills of Costs, as follows:

**I.      INTRODUCTION**

Curling Plaintiffs have tangled with Defendants through every hill and

valley of this hard-fought case, and exposed Defendants for their indifference and

lack of candor with the Court and the voters of Georgia.  Curling Plaintiffs' most

significant victory yet was the Court's August 15, 2019 Order, which enjoined

Defendants to stop using the GEMS/DRE system, to pilot hand-marked paper ballots, and to revamp substantial portions of their elections and IT infrastructure. Curling Plaintiffs never let up and never lost focus of the case's central purpose:  to vindicate the right to vote.

Defendants protested at every turn, raised defenses on shaky grounds even when doing so was certain to delay resolution of the case, and finally descended into sanctionable misconduct.  (*See* Dkt. No. 623.)  Nor did Defendants even try to create the appearance of helping the Court.  Instead, they "minimized, erased, or dodged the issues underlying this case."  (Dkt. No. 579 at 152.)  Defendants' conduct makes clear that Curling Plaintiffs' long litigation efforts were necessary. The appropriate result is an award compensating Curling Plaintiffs' attorneys for their fees, expenses, and costs in full.

## II.      APPLICABLE LAW

### A.      Fees

To avoid repetition, Curling Plaintiffs incorporate Section III.B of their Memorandum in Support of their Special Motion for Award of Attorneys' Fees and Costs.  (Dkt. No. 596-1 at 6-8.)  A preliminary injunction that materially alters the legal relationship of the parties is sufficient to entitle the party receiving

injunctive relief to prevailing-party status and an award of attorneys' fees. *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355-57 (11th Cir. 2009).

"[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, '*for all time reasonably expended on a matter.*'" *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (citation omitted) (emphasis in original). The lodestar method of multiplying all time reasonably expended by a reasonable hourly rate "approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). "There is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citation omitted and formatting altered).

Courts should not adjust the lodestar downward when Plaintiffs fully succeed on their claims. *Id.* at 1352. Courts must account for the public benefit from the vindication of constitutional rights when determining whether Plaintiffs have been fully successful. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306-07 (11th Cir. 2001) (reversing lodestar reduction where lower court failed to consider public benefit).

Fees for appellate work are recoverable in certain circumstances, such as where the appeal does not decide the merits of the case. *Franklin v. Hartford Life Ins. Co.*, No. 8:07-cv-1400-T-23MAP, 2010 WL 916682, at \*5 (M.D. Fla. Mar. 10, 2010).  Further, non-local rates are recoverable if there is "a lack of attorneys practicing in [the place where the case was filed] who are willing and able to handle [the] claims." *A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).  Finally, time expended by paralegals is recoverable at market rates. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288-89 (1989).

## B.   Expenses

"[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses" are recoverable under 42 U.S.C. § 1988. *Barnes*, 168 F.3d at 438 (citation omitted).  The Eleventh Circuit directs courts to give the standard of reasonableness "a liberal interpretation." *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192 (11th Cir. 1983).  Making counsel bear sizeable out-of-pocket expenses would defeat the purpose of the fee-shifting statute, which is to ensure enforcement of the civil rights laws by making it financially feasible to litigate violations. *See Dowdell*, 698 F.2d at 1190 ("[F]ees and expenses are inseparably intertwined as equally vital components of the costs of litigation.").  "The Eleventh Circuit and district courts

4

in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research." *Yule v. Jones*, 766 F. Supp. 2d 1333, 1344 (N.D. Ga. 2010).

### C.   Costs

Rule 54(d) of the Federal Rules of Civil Procedure "gives rise to a presumption that costs should be awarded to the prevailing party, and places the burden on the losing party to overcome that presumption." *Wetherington v. Ameripath, Inc.*, No. 1:10-cv-1108-AT, 2013 WL 12097825, at *13 (N.D. Ga. Mar. 27, 2013) (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991)).

## III.   CURLING PLAINTIFFS' REQUESTS ARE REASONABLE

Curling Plaintiffs now submit time and cost records kept with the required level of particularity.  The fee request is itemized and based on the hours reasonably expended on this litigation multiplied by reasonable hourly rates.

### A.   Fees

#### 1.   *Number of Hours*

The number of hours Curling Plaintiffs' attorneys' claim is reasonable because that was the amount of time necessary to counter Defendants' dilatory and bad-faith litigation tactics.  "The government cannot litigate tenaciously and then

be heard to complain about the time necessarily spent by the plaintiff in response." *Rivera*, 477 U.S. at 581 n.11 (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980)); *cf. Obester v. Lucas Assocs., Inc.*, No. 1:08-cv-3491-AT, 2011 WL 13167915, at *5 (N.D. Ga. Dec. 19, 2011) ("Defendant fiercely litigated this case at every stage . . . and cannot be heard at this juncture to complain about the scope of litigation hours required . . . .").

Courts in this circuit often make large awards on the basis of Defendants' litigation conduct.  In *Yule*, the court awarded over $1.89 million in fees and expenses, representing nearly 90% of Plaintiffs' request, where "Defendants and their lawyers employed a defense strategy that made [the] litigation expensive . . . ."  766 F. Supp. 2d at 1349.  And in *Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, the court found the attorneys' time "fully compensable" (with two minor exceptions) after taking into account Defendants' "refusal even to attempt to negotiate a reasonable settlement and cho[ice] instead to assert a number of meritless defenses to which Plaintiff was then required to respond."  No. 2:12–CV–00082–RWS, 2014 WL 2195719, at *5 (N.D. Ga. May 27, 2014).

Curling Plaintiffs' award should also include fees for appellate work, since Defendants forced the appeal on frivolous grounds and Curling Plaintiffs incurred

substantial fees that should never have been required.  *See Franklin*, 2010 WL

916682, at *5 (awarding appellate fees).  A contrary decision would pervert the

incentive structure of the civil rights fee-recovery regime by encouraging frivolous

appeals for which losing Defendants would have no fee liability.  *Cf. Dowdell*, 698

F.2d at 1189 ("the standard of reasonableness is governed by the economic realities

of civil rights litigation.")

Despite Defendants' litigation tactics, Curling Plaintiffs completely

succeeded in obtaining a court order prohibiting Defendants from using the

insecure and unreliable GEMS/DRE system after January 1, 2020.  Since this relief

fully addressed the heart of Curling Plaintiffs' claims, the Court should award a

fully compensatory fee.  *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983);

*Bivins*, 548 F.3d at 1352.  Curling Plaintiffs' success was heightened by the fact

that the Court required Defendants to pilot a hand-marked paper ballot system and

to take other actions to secure Georgia's election system, additional significant

benefits redounding to the public.[1]  *Villano*, 254 F.3d at 1307.

Finally, the number of hours is reasonable because it excludes a variety of

time and timekeepers in the exercise of diligent billing judgment.  (*See* Cross Decl.

¶¶ 45-46.)

---

[1] Curling Plaintiffs do not yet seek any fees for attorney time in relation to claims
against Defendants' use of the Dominion BMD-based election system.

### 2.    Hourly Rates

The hourly rates used to calculate the current request are the standard rates that each of the law firms that represented Curling Plaintiffs charge paying clients for their time, and are reasonable in light of the rates that similar law firms and lawyers charge for the time of attorneys with comparable background and experience.  (Cross Decl. ¶ 48; Knapp Decl. ¶¶ 16-17; Ward Decl. ¶¶ 15-16.) "What [an attorney] charges clients is powerful, and perhaps the best, evidence of his market rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000).

The non-local rates for Morrison & Foerster LLP are reasonable under the special circumstances of this case.  *See Barnes*, 168 F.3d at 437.  Curling Plaintiffs were unable to find local counsel to represent them despite reasonably diligent efforts.  (Curling Decl. ¶¶ 7-12.)  Morrison & Foerster got involved in this case precisely because Curling Plaintiffs were unable to keep their Atlanta-based representation or find new Atlanta-based representation.  (Cross Decl. ¶ 3.)

Moreover, in making a ruling on the key GEMS database discovery dispute, the Court relied on the institutional cybersecurity expertise of Morrison & Foerster's Washington, D.C. office and attorneys.  (Dkt. No. 463 at 14.)  Such

expertise could not have been equaled by any Atlanta-based attorneys theoretically willing to handle the case.

### B.   Expenses

Curling Plaintiffs have fully documented their expenses in the attached declarations.  Although many courts have held that expert fees are not recoverable as expenses incurred in connection with claims asserted pursuant to 42 U.S.C. § 1983, the unique facts of this case warrant an exception.  It was strictly necessary for Curling Plaintiffs to enlist the assistance of experts in election system cybersecurity to analyze and demonstrate the unconstitutional flaws of Georgia's GEMS/DRE system.  Necessity of expert involvement should be the guiding consideration.  *Compare Desena v. Lepage*, 847 F. Supp. 2d 207, 211 (D. Me. 2012) (expert fees denied when testimony not necessary) *with Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1205-06 (N.D. Iowa 2003) (expert fees granted when testimony necessary), *aff'd*, 382 F.3d 816 (8th Cir. 2004).

### C.   Costs

Defendants' first argument against the Bills of Costs is that they are premature because the Court's August 15, 2019 Order (the "Order") is not a final order for purposes of taxing costs.  (Dkt. No. 618 ("Costs Obj.") at 2.)  Defendants cannot have it both ways.  Defendants' own position is that the Order was a final

judgment; they argued at length that the Order so fully resolved GEMS/DRE-related claims that the Court should require Curling Plaintiffs to file their new BMD-related claims as a separate lawsuit.  (*See generally* Dkt. No. 607; *see also id.* at 6 ("[T]he matter has been effectively resolved . . . .").)  Finally, even if the Bills of Costs were premature—and they are not—courts may nonetheless consider them in the interest of judicial economy.  *See, e.g.*, *Wetheringon*, 2013 WL 12097825, at *14.

   *1.*  *Morrison & Foerster LLP*[2]

Defendants begin by conceding that actual expenses of witness travel are recoverable under 28 U.S.C. § 1821(c)(1).  Contemporaneous receipts show that Dr. Halderman and Mr. Finley traveled by common carrier in economy class, which provided them the lowest rate offered to the public by the domestic airlines they used.  (*See* Cross Decl. Ex. C.)  At any rate, contemporaneous business records, such as law firm billing records, are evidence of the actual cost of expenses incurred.

---

[2] It is true that Morrison & Foerster's Bill of Costs was filed less than two hours past Local Rule 54.1's 30-day limit, due to technical issues with viewing the ECF system.  However, since Defendants articulate no harm of any kind, and all parties and the Court will benefit from considering these costs together with related fees and expenses, the Court should excuse this minor technical non-compliance.

Curling Plaintiffs agree with Defendants that lodging expenses are limited to the GSA per-diem, which was $166 per night in September 2018 and $152 per night in July 2019, according to the GSA's website that Defendants provided. (Costs Obj. at 5.)  Therefore, Curling Plaintiffs revise the Bill of Costs slightly and only to reflect the change in lodging amounts.  (*See* Ex. 2.)

Next, Defendants argue that the level of detail of the records for transcripts is so inadequate that the Court should categorically reject these costs.  (Costs Obj. at 5.)  That is ridiculous.  Morrison & Foerster's documentation largely specifies the relevant deposition or hearing.  Additional attached documentation clarifies the necessary purpose served by obtaining VERITEXT-related transcripts.  (*See* Cross Decl Ex. C.)  Costs for video depositions are not unreasonable *per se* (*see Wetherington*, 2013 WL 12097825, at *16), and especially not so here, since Curling Plaintiffs actually relied on the video deposition of Dr. Michael Shamos during day one of the July 2019 preliminary injunction hearing.

Defendants then complain about the $26,888.22 cost for the Open Records Request in February 2019.  (Costs Obj. at 6-7.)  However, it was reasonable at the time to believe those requests were necessary to gather information to support Curling Plaintiffs claims.  For one, it was through a similar Open Records Request that CES/KSU's inadequate response to Logan Lamb's and Chris Grayson's

11

findings was brought to light.  It is self-serving and transparently incorrect for Defendants to suggest that Curling Plaintiffs could have used "less costly" discovery, (Costs Obj. at 7), when Defendants made only paltry document productions excluding entire categories of highly relevant documents, such as *emails*, and where the format of production made efficient review effectively impossible.  (Cross Decl. Ex. D.)  Because Curling Plaintiffs' choice to pursue Open Records Request was reasonable, such costs should be taxed against Defendants in full.  *See Villano*, 254 F.3d at 1311 ("the recoverability of costs is determined by the necessities of the case; even relatively large or unusual costs may be taxed when they are reasonably incurred . . . ." (citing *Dowdell*, 698 F.2d at 1191)).

Finally, Defendants misstate the law (after having once stated it correctly) in stating that Curling Plaintiffs "conceivably might recover some amount for copying of exhibits actually used or presented." (Costs Obj. at 7.)  Recoverable copying costs *far exceed* those for exhibits actually used or presented, and extend to all papers that Curling Plaintiffs "could have reasonably believed that it was necessary to copy." (Costs Obj. at 6 (citing *U.S. EEOC v. W&O Inc.*, 213 F.3d 600, 623 (11th Cir. 2000)).)  Since Curling Plaintiffs were required to attend numerous meetings with defense counsel, depositions, court conferences, and

evidentiary hearings over the last two years, the copying costs Curling Plaintiffs seek to tax are well within the scope of reasonable necessity.

### 2.   Krevolin & Horst LLC

Despite Defendants' cursory complaints, the documentation originally attached to Krevolin & Horst LLC's Bill of Costs was sufficient to warrant taxation of costs in the full amount.  Defendants are uniquely responsible for much of these costs through their conduct.  For example, in 2018, Defendants were unwilling to submit to discovery of any kind (on grounds later held to be totally without merit).  Defendants' refusal to comply with discovery obligations left Plaintiffs no other option than to pursue alternative methods to gather information. Krevolin and drafted and served a subpoena on the Georgia Secretary of State's Elections Division Director Chris Harvey, triggering a fee and other costs that should not have been necessary.  Out of an abundance of caution, however, Krevolin and Horst now submit additional supporting documentation.  (Knapp Decl. Ex. B.)

### 3.   Holcomb + Ward LLP

To avoid confusion, Curling Plaintiffs clarify that the Bill of Costs for Holcomb + Ward LLP was filed in error, and the Coalition Plaintiffs are the correct parties to seek recovery of those costs.

13

However, when it comes to the issue of attorney time, Defendants cannot minimize the importance of Holcomb + Ward's involvement.  They were in charge of the case during its important early stages around the time that the wiping of the CES/KSU server first came to light.  Defendants, for their part, cannot seriously contend that commencing this lawsuit "ha[s] no role in obtaining the Order." (Costs Opp. at 8.)  That Order was only possible thanks to the initial steps Holcomb + Ward took to begin the process of holding Defendants accountable for protecting Georgia citizens' right to vote.

### D.   Curling Plaintiffs are Entitled to Full Non-Duplicative Recovery

*1.   Relationship between Multiple Fee- and Cost-Seeking Motions*

In the totals presented herein, Curling Plaintiffs specifically do not seek double recovery of any costs awarded in connection with the two Bills of Costs previously submitted.  (Dkt. Nos. 606, 608.)  Nor do they seek double recovery of any fees or costs awarded to Curling Plaintiffs in connection with Plaintiffs' Joint Motion for Sanctions.  (Dkt. No. 623.)  Such fee or cost items have been redacted from this filing's supporting documentation where possible and specified and clearly subtracted from the award requested here.  (Cross. Decl. ¶ 52; Knapp Decl. Ex. A at p. 23).

However, if the Court concludes that any of the amounts in those filings are not currently recoverable under the legal standards applicable to them, then Curling Plaintiffs incorporate those requests here and ask that any non-recoverable amounts be added to the total award under 42 U.S.C. § 1988.

Contrary to Defendants' wishful thinking, (*see* Costs Opp. at 1 n.1), Curling Plaintiffs did not exclude the items claimed in its Bills of Costs from potential inclusion in an award of fees and expenses under 42 U.S.C. § 1988.   Curling Plaintiffs merely wanted to avoid the appearance of duplicative requests and excluded those items only "*from [counsel's] good-faith estimates*" required to be made in the special motion.  (Dkt. No. 569 at 2; Dkt. No. 569-1 at 5.)  The purpose of the good-faith estimate requirement is to give Defendants a rough idea of potential liability, not to impose a technical limitation on recovery not present in the statute.

2.     *Holcomb + Ward LLP's Fees and Costs*

To avoid confusion, Curling Plaintiffs do not seek recovery for an amount of $72,259.63 in fees that the Coalition paid to Holcomb + Ward LLP, which the Coalition Plaintiffs claim in its present fee detail.  Instead, Curling Plaintiffs seek only the difference between that amount and Holcomb + Ward's standard market rates for paying clients.  The Supreme Court recognizes the propriety of this

approach. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("[Section] 1988's . . . 'reasonable attorney's fee' . . . contemplates reasonable compensation, in light of all of the circumstances . . . no more and no less.  Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount.").  The Coalition Plaintiffs have agreed to this division of fee requests.

## IV.      SUPPORTING DOCUMENTATION

In support, Curling Plaintiffs are submitting:

1.      Declaration of David D. Cross, attached hereto as Exhibit 1.

2.      Morrison & Foerster LLP Fee Report, attached as Exhibit A to the Cross Declaration.

3.      Morrison & Foerster LLP Cost Report, attached as Exhibit B to the Cross Declaration.

4.      Morrison & Foerster LLP receipts and invoices, attached as Exhibit C to the Cross Declaration.

5.      Emails regarding Defendants' inadequate document production, attached as Exhibit D to the Cross Declaration.

6.      Revised Bill of Costs for Morrison & Foerster LLP, attached hereto as Exhibit 2.

7.      Declaration of Donna Curling, attached hereto as Exhibit 3.

8.      Declaration of Halsey Knapp, attached hereto as Exhibit 4.

9.    Krevolin & Horst LLC Statement of Account, attached as Exhibit A to the Knapp Declaration.

10.   Krevolin & Horst LLC receipts and invoices, attached as Exhibit B to the Knapp Declaration.

11.   Declaration of Bryan Ward, attached hereto as Exhibit 5.

12.   Holcomb + Ward LLP billing history statement, attached as Exhibit A to the Ward Declaration.

As reflected in these supporting documents, Defendants' bad faith litigation tactics significantly raised the costs of asserting Curling Plaintiffs' claims. Curling Plaintiffs have repeatedly proposed and pursued measures to streamline and expedite this case, including by stipulating to dismissal of certain claims and Defendants, and by breaking ranks with Coalition Plaintiffs to file a motion for preliminary injunction in 2019.

## V.    CONCLUSION

Accordingly, Curling Plaintiffs request an award of attorneys' fees, expenses, and costs in the total amount of **$4,224,151.69**, broken down as follows:

- Morrison & Foerster LLP: **$3,562,471.25** in fees and **$337,456.70** in expenses;

- Krevolin & Horst LLC :   **$229,627.50** in fees and $**1,815.87** in expenses;

- Holcomb + Ward LLP: **$92,780.37** in fees.

Respectfully submitted, this 15th day of October, 2019.

/s/ David D. Cross
David D. Cross (*pro hac vice*)
John P. Carlin (*pro hac vice*)
Jane P. Bentrott (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JCarlin@mofo.com
JBentrott@mofo.com
RManoso@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling,*
*Donna Price & Jeffrey Schoenberg*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ David D. Cross*
David D. Cross

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**                                                          **Civil Action No. 1:17-CV-2989-AT**

**BRAD RAFFENSPERGER , ET AL.,**
**Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2019, a copy of the foregoing **CURLING PLAINTIFFS' SPECIFICATION AND ITEMIZATION OF REQUESTED AWARD FOR FEES UNDER 42 U.S.C. § 1988 AND RESPONSE IN SUPPORT OF BILLS OF COSTS** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ David D. Cross*
David D. Cross