IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

    *Plaintiffs,*

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants.*

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

**STATE DEFENDANTS' LIMITED REPLY TO STATUS REPORTS FOR TELEPHONIC STATUS CONFERENCE**

In the light of statements made in the Curling and Coalition Plaintiffs' most recent filings [Docs. 692, 699], State Defendants submit this limited reply to help focus the telephonic status conference and address just some of the inaccuracies those filings contain.

On December 30, 2019, State Defendants requested a status conference with the Court to discuss the need to continue to preserve DRE machines that have been decertified and can no longer be used for elections in the State of Georgia. [Doc. No. 689]. As shown, maintaining the useless equipment is costly and distracting. Plaintiffs responded with a litany of inaccurate statements, affidavits, and other purported "evidence" in an attempt to turn a telephonic status conference into an evidentiary hearing. Indeed, the

1

Coalition Plaintiffs filed a 22-page brief less than 18 hours before the status conference.

State Defendants do not have time to fully respond to all of the allegations in the Plaintiffs' various submissions before the status conference. Nor do State Defendants believe it is proper to continue to litigate a case as important as this one through means that are not subject to the rules of evidence or procedure. This limited reply is not intended as a full response to Plaintiffs. Instead, State Defendants request that this Court limit the agenda of the status conference to those issues identified by the Court in its January 10 Order, [Doc. 694], and not transform it into Plaintiffs' proposed evidentiary hearing.

## I.   Inaccuracies and inequities of Plaintiffs' filings.

Plaintiffs' pleadings are full of incorrect claims that should be properly briefed and responded to prior to their consideration by this Court. By way of example, a few of Curling Plaintiffs' incorrect claims include:

- That the time for the rollout of BMDs is less than the timeline to which the State objected previously [Doc. 692, pp. 4, 11] (as this Court knows, the BMD-rollout process actually began in April 2019 and is ongoing);

- That State Defendants refused to provide information to Plaintiffs [Doc. 692, pp. 5-6, 12] (this Court stayed discovery on BMDs and the proposed State Election Board rules provide the backup plan for hand-marked ballots);
- That State Defendants destroyed documents related to DREs [Doc. 692, p. 5-6] (as explained in other filings, the State can obtain access to DRE Recap Sheets, but the State does not have those documents in a database format nor should it be required to create such a database for machines that will never be used again);
- That the Cobb pilot went more smoothly than the BMD pilots [Doc. 692, pp. 8-9] (in the same videos cited by Plaintiffs, the Cobb elections director explained that voters marked paper ballots improperly and explained the logistical issues with deploying thousands of paper ballots);
- That the State dismissed problems with BMD pilot elections [Doc. 692, pp. 8-9] (the State prepared an extensive post-mortem and the State has every interest in the BMD rollout succeeding).

The Coalition Plaintiffs continue this unfortunate trend, also presenting a litany of incorrect information:

- That no county has received an election-management system ("EMS") [Doc. 699, p. 5] (this Court is well aware that multiple counties have run elections using BMDs, which requires the EMS);

- That the State is unable to administer elections because the new rules regarding BMDs are not yet finalized [Doc. 699, pp. 7-8] (elections continue to take place in the state of Georgia using BMDs, as Coalition Plaintiffs acknowledge);

- Accusing State Defendants of somehow failing to predict the unexpected deaths of two Georgia legislators [Doc. 699, pp. 9-10] (State Defendants' statements explained how *DREs* would not be used after January 1, and consistent with those representations, both special elections are proceeding on BMDs);

- That the State does not yet know what a "vote" is for purposes of a BMD[1] [Doc. 699, pp. 10-11] (failing to acknowledge that the pilot BMD elections took place without this information);

- That the State is making an "arbitrary and capricious" allocation of voting machines [Doc. 699, pp. 12-13] (the cited email exchange

---

[1] Setting aside the continuing Eleventh-Amendment problems of Coalition Plaintiffs asking this Court to decide questions of state law.

4

between Mr. Germany and Mr. Worley explains what the bipartisan State Election Board was seeking to accomplish in addressing machines for early-voting sites);

- That an attacker gained access to the KSU server using the "shellshock" attack. [Doc. 699, p. 17] (Mr. Lamb clearly explains that it is entirely possible this *did not happen*, that the logs also could have been an employee putting a patch on the system instead of an attack, and that additional forensic work is required before drawing any conclusions [Doc. 699-10, ¶ 19]);

- That 80 counties do not know when to expect delivery of the BMD machines, despite the fact that mail ballots must be prepared by February 4 [Doc. 699, p. 3-4] (State Defendants informed the Court [Doc. 698] that the Election Management System ("EMS") will be rolled out to every county no later than February 1. The EMS, not the BMDs, is what counties need to process absentee ballots. State Defendants also explained [Doc. 698], that BMDs are scheduled for delivery after the old DRE/GEMS equipment is picked up and the county notifies the State that it is prepared to receive the BMDs); and

- "By January 10, the Secretary of State's office was communicating that one half of the counties were either delivered or scheduled." [Doc 699 at p. 4, Doc. 699-6 (Marilyn Marks Decl.)] (It is unknown whose notes are attached to Ms. Marks' declaration. However, at least as of State Defendants' Notice Filing on January 16, 2020, 94 counties had either received or were scheduled to receive their BMDs. [Doc 698-1 at ¶ 4].)

In addition to these inaccuracies, Dr. Halderman apparently began his review of the image of the FBI server in December 2019. [Doc. 692-3, ¶ 4]. As did Mr. Lamb. [Doc. 699-10, ¶ 8]. But, despite requests, State Defendants did not receive a copy of the server from Plaintiffs' vendor (who had possession of the server images the FBI made available) until *January 10, 2020*, less than a week ago. While State Defendants are moving expeditiously to conduct their own review, Plaintiffs' experts have had access to the server image weeks prior to State Defendants' receiving their copy from Plaintiffs' chosen vendor.

## II. Status Reports and Conferences are not evidentiary hearings.

For the fourth time in the last nine months, Coalition Plaintiffs have filed a "status report" within twenty-four hours of a scheduled status conference with the Court. See [Doc. 351, 586, 675, 699]. This time, Coalition

Plaintiffs have injected into the docket various pieces of "evidence" regarding the BMD rollout, the Kennesaw State University Server, and alleged spoliation—without regard for its inadmissibility at trial. While State Defendants have endeavored to provide a partial response to a few of the more inaccurate assertions contained in Coalition and Curling Plaintiffs' recent filings, this matter should not proceed on the basis of document dumps, statements from persons who have not been cross-examined, and attempts to create evidentiary hearings where this Court has not ordered one.

Indeed, the Coalition's latest request for relief (couched in a "status report") is impermissible under the Federal Rules of Civil Procedure, which require that a "request for a court order must be made by motion." Fed. R. Civ P. 7(b).  Most recently, Coalition Plaintiffs implore the Court to order the state to conduct upcoming elections by their preferred voting method voting—never mind their pending preliminary-injunction motion—and also allege spoliation of evidence that they claim requires the Court's attention. [Doc. 699 at pp. 13 and 20–21]. Moreover, Coalition Plaintiffs' "status report" has largely no bearing on the topic State Defendants were requested to address—a statistical sample of useless GEMS/DRE equipment and the status of the ongoing BMD rollout. [Doc. 694]. Given the nature of the latest invective from

7

the Coalition Plaintiffs, State Defendants further have no choice but to respond with less than 18 hours between the time of Plaintiffs' filing and the status conference.

## CONCLUSION

This case has been ongoing for nearly three years. During the pendency of this lawsuit, the General Assembly has enacted sweeping election reforms, some of which render the basis of the litigation—the GEMS database and DREs—entirely moot. Recognizing they are limited to prospective, injunctive relief, Plaintiffs are now on the third and fourth iterations of dueling Complaints, and a third set of diverging Motions for Preliminary Injunction, but they still want to litigate about machines that cannot be used in Georgia. That is what prompted State Defendants to seek a status conference.  State Defendants now urge this Court to limit the telephonic conference to the issues it identified and to bring regular order to this litigation through the application of the standard rules of discovery, procedure, and evidence.

Respectfully submitted, this 16th day of January, 2020.

> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Carey A. Miller

Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: (678)336-7249

*Counsel for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing STATE DEFENDANTS' LIMITED REPLY TO STATUS REPORTS FOR TELEPHONIC STATUS CONFERENCE has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/Bryan P. Tyson*
Bryan P. Tyson
