## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**

**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## COALITION PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION ON PAPER POLLBOOK BACKUPS

In support of their Motion for Preliminary Injunction on Paper Pollbook Backups (Doc. 800), Coaliton Plaintiffs file this Reply to the Response Briefs of the State Defendants (Doc. 815) and the Fulton County Defendants (Doc. 814).

## Introduction

In their Responses, the Defendants present no evidence refuting the Coalition Plaintiffs' showing that the failure to provide the counties with updated paper pollbook backups for the June 9 primaries caused the devastating and disenfranchising long lines at multiple polling locations in Gwinnett, DeKalb, Cobb and Fulton Counties.  The Defendants also do not say that they have done anything in the meantime to fix the problem or give any reason to believe that the same problems will not return on November 3, when the turnout will be many times greater.   Defendants also do not deny that providing updated paper pollbook

1

backups will substantially mitigate the risk and harm of malfunctioning electronic pollpads.

At the December 6, 2019 status conferemce, referring to the proposed remedy, the Court asked counsel for the State Defendants: "why wouldn't the state just do that?"  (Doc. 679 at 11).  The State Defendants still offer no coherent response.  The Coalition Plaintiffs clearly have met their burden of establishing entitlement to this simple and effective injunctive relief.

Athough the Coalition Plaintiffs welcome the opportunity to address this Motion at the hearing on September 10, 2020, this is a discrete issue that can be resolved prior to the hearing based on the written submissions.

In Part A, the Coalition Plaintiffs will show that Defendants' briefs do not respond to the evidence or arguments presented in the Coalition Plaintiffs' Motion and that the Coalition Plaintiffs are entitled to injunctive relief.  In Part B, the Coalition Plaintiffs will address two meritless prodedural arguments, showing that the relief sought in this Motion is well within the claims encompassed by the operative complaints and that the relief sought is not barred by Eleventh Amendment immunity.

**A.     Coalition Plaintiffs Are Entitled to Equitable Relief**

      1.     *Success on the Merits*

The Coalition Plaintiffs established in their initial Motion that the nationally ridiculed long lines during the June 9 primary were caused by the State Defendants' failure to provide precincts with updated paper pollbook backups. The Coalition Plaintiffs also showed that solving this problem – and preventing future disenfranchisement – is not difficult for the State Defendants to accomplish: simply send to each precinct, after early voting, a paper copy of the updated information that is loaded into each electronic pollbook.  The Coalition Plaintiffs further showed that, unless equitable relief is granted, there is an unacceptably high rish of another "Complete Meltdown," only this time it will be in the Presidential Election when turnout will be many times the turnout in the primaries.

In their Responses, Defendants offer *no* evidence disputing the Coalition Plaintiffs' showing that the long lines were caused by not having updated paper pollbook backups for the malfunctioning electronic PollPads.  The closest that State Defendants come to presenting evidence about the need for paper pollbook backups is to suggest in a footnote that the long lines were caused "by the virus and not the State."  (Doc. 815 at 17 n. 6).  In support of this statement, the State Defendants cite Judge Batten's decision in *Coalition for Good Governance v. Raffensperger,* No. 20-cv-1677 (N.D. Ga. May 14, 2020).  Judge Batten's decision,

however, was issued on May 14 and, of course, does not contain any factual findings as to the causes of the delays that would be experienced in the future.

In their Response, the State Defendants claim that the Coalition Plaintiffs have not carried their burden on these core facts, but do so while completely ignoring the Coalition Plaintiffs' entire 171-page filing of declarations from eye-witnesses to the June 9 election. (*See generally* Doc. 755). These declarations offer vivid (and depressing) accounts of malfunctioning PollPads and extremely long lines in multiple polling locations in Gwinnett, DeKalb, Fulton and Cobb Counties. (*Id.*). The Coalition Plaintiffs filed these declarations with their August 2, 2020 Notice of Filing Evidence and Request for Immediate Injunctive Relief Relating to Paper Pollbook Backups. (Doc. 756). Altough the Coalition Plaintiffs did not re-file these declarations with this Motion, the Coalition Plaintiffs expressly incorporated them by reference. (Doc. 800-1 at 2 n.1). Furthermore, the Coalition Plaintiffs devoted a long section of their Brief discussing this evidence in detail (*id.* at 9 – 12) and cited this volume of evidence by docket number no less than 29 times. (*Id., passim*). Despite the Coalition Plaintiffs' extremely heavy (and warranted) reliance upon these declarations, the State Defendants do not address this evidence in their Response in any way whatsoever.

Not only do the State Defendant ignore the evidence submitted in support of the Motion, they repeatedly mischaracterize the Coalition Plaintiffs' Motion. The

State Defendants start their analysis of the merits by staing: "Coalition Plaintiffs generally claim that the mere use of electronic pollbooks burdens voters," (Doc. 815 at 15),[1] and, following this wildly inaccurate characterization of the Motion, conclude that Coalition Plaintiffs "have failed to show an unconstitutional burden on voting due to the electronic pollbooks." (*Id.* at 16). But the Coalition Plaintiffs nowhere claim that the "mere use electronic pollpads burdens voters." Instead, as the State Defendants know full well, the Coalition Plaintiffs' Motion is based on the evidence – still undisputed – that using electronic pollbooks *without an updated paper backup* disenfrachises voters.

Defendants not only do not refute Coalition Plaintiffs' showing of the causes of the "Complete Meltdown," they have no evidence suggesting that this will not happen again. There is no hint of any plan by the Defendants to fix this problem. As Coalition Plaintiffs showed in their main brief, even after the well-documented failures of the KnowInk PollPads in the June 9 primary, in the August 11 election there were still numerous reports of PollPad malfunctions. (Doc. 800-1 at 13-14).

More alarming, the State Defendants do not counter the Coalition Plaintiffs' description of new evidence of electronic PollPad vulnerability, a weakness that

---

[1] Part I of the State Defendants' Brief is entitled "Coalition Plaintiffs do not offer sufficient evidence that KnowInk PollPads unconstitutionally burden voters." (Doc. 815 at 6). The KnowInK PollPads have been riddled with problems early on, but this Motion is based on the failure to have a current paper backup for the KnowInk PollPads, not the PollPads themselves.

will only increase the need for a paper pollbook backup.  (Doc. 800-1 at 14-15).
The Coalition Plaintiffs explained that, to make the PollPads easier for temporary
pollworkers to operate, KnowInc, the PollPad manufacturer, made the
determination that in Georgia passwords would no longer be required to operate
PollPads because they were a "'redundant security measure.'"  (Doc. 800-1 at 15,
citing Mr. Hursti's Declaration, now at Doc. 802 at 17).  In their Response, the
State Defendants admit that PollPads are no longer password protected, stating:
"Mr. Hursti is admittedly not an election administration expert and thus his
opinions about the use of passwords for equipment that is kept locked when not in
use by poll officials is irrelevant."  (Doc. 815 at 8 n. 4).  Mr. Hursti is, however, a
cyber-security expert and, more to the point, it requires no expertise to conclude
that not having PollPads password protected is outrageously irresponsible: now,
any person with physical access to a electronic pollbook has the power to
disenfranchise every voter – or a selection of voters – on Election Day.  This
complete security failure – which the State Defendants do not deny – must be
addressed regardless of the disposition of this Motion.  Furthermore, this lapse
demonstrates how little the Defendants can be trusted to deploy this complex
equipment responsibly and how necessary it is to have non-technical back-up
systems in place in the event the equipment continues to fail.

2.    *Feasibility of the Remedy*

In addressing the difficulty and efficacy of the proposed remedy, the State Defendants offer an absurd collection of conflicting positions.  One version of the State Defendants' rebuttal to the Coalition Plaintiffs' requested relief is that it is unnecessary because the Secretary *already* provides the counties with paper pollbook backups.  Thus, on page 5 of their Response, the State Defendants argue that the Motion is knowingly meritless because the Coalition Plaintiffs' recognize that "paper backups are already provided."  On page 21, the State Defendants argue that the injunction would be an "obey the law" injunction because paper pollbook backups are required by Georgia law and "[n]o injunctive relief is required to generate the required lists."  (As explained below, this argument is completely false: the State does *not* provide updated paper pollbook backups to the counties.)

The other, conflicting, version of the rebuttal to the Coalition Plaintiffs' requested relief is that it is too burdensome.  Thus, on page 5 of their Response, the State Defendants complain that entering the injunction will require "the State Defendants to expend resources to provide a paper pollbook backup that reconciles early and absentee voting prior to election day."  On page 24, the State Defendants note that printing the required paper pollbook backups will be time consuming and will require training pollworkers "on an entirely new protocol."  The State

Defendants, therefore, are claiming in the same brief that (a) they are *already* providing the counties with paper pollbook backups *and* (b) that providing the counties with paper pollbooks backups would be difficult to accomplish.

Both of these conflicting positions are wrong.  First, despite the State Defendants' gibberish, the evidence, including the declaration of Chris Harvey, establishes without contradiction the plain facts about what the Secretary does and does not provide the counties.  First, the Secretary provides to the counties *electronic* pollbooks (the KnowInk PollPads) that are updated afer the close of early voting,  (Doc. 815 at 11-12), and *paper* lists of registered voters.  (The State Defendants call this the "electors list," but this is incorrect: the "electors list" is what is in the PollPads). The paper list of registered voters is supplemented with a separate document shortly before election day to show newly registered voters, but does not show who has voted in early voting or who has been issued a mail ballot. (*Id.* at 11).  The lists of registered voters cannot serve as backup for the electronic pollbooks  because they do not show who has voted.  Finally, the State Defendants concede that what the Coalition Plaintiffs seek – a paper pollbook backup – (a) is something that they do *not* currently provide the counties and (b) would indeed serve as a backup to the electronic PollPads.  (*Id.* at 5 (recognizing that Coalition Plaintiffs seek a "paper pollbook backup that reconciles early and absentee voting prior to election day.")).

The State Defendants further devote an entire section of their Response explaining the state's interest in keeping the electronic pollpads and the outdated registered voters lists.  (Doc. 815 at 19 – 21).  This argument is utterly irrelevant: the Motion, if granted, would not prohibit the State Defendants from using electronic pollpads or the registered voters lists.  (Doc. 800 at 1 – 2).

The only potential burden that the State Defendants articulate that has anything to do with this Motion is in the administrative cost and burden of printing and sending the paper pollbook backups to each precinct and the effort required to train pollworkers on what they describe as the "new protocol."  (Doc. 815 at 24). Significantly, the State Defendants do *not* suggest that the remedy is not feasible or that it is technically or administratively difficult to compose and print the paper pollbook backups.  The State Defendants also do not contend that they could not deliver paper pollbook backups, updated with information from early voting, to each princint by Election Day.   It would just increase printing costs to do so.

The State Defendants further complain that providing a paper pollbook backup would require additional training.  Yet this is no reason to not provide a remedy that will save voters from disenfranchisement and make it easer for pollworkers in the event of equipment malfunction.  In addition, the record shows that pollworkers need additional training now anyway on how to check-in voters,

whether or not the electronic pollpads are functioning.  (Doc. 680-1 at 83-89; Doc. 755 at 76-79; Doc. 800-1 at 19 n. 15, 16).

The Coalition Plaintiffs fully appreciate that it is important to try to keep costs down, but the State's response is insufficient as a matter of law: they cannot escape the imposition of an effective remedy simply by saying that doing the right thing is too hard or is administratively inconvenient.  Federal courts frequently impose far more costly remedies, whether the remedy involves segregated schools,[2] overcrowded prisons,[3] or unconstitutionally deficient voting systems.[4] The cost of printing and sending paper pollwork backups to the counties, and training pollworkers, is greatly exceeded by the harm caused by not having means to continue voting if and when the electronic pollbooks malfunction.

### 3.  *Balancing of the Equities*

Citing *Purcell v. Gonzalez,* 549 U.S. 1 (2006), the State Defendants argue that the State's nterest in not making changes to the election process tips the balance of the equities in their favor.  (Doc. 815 at 25).  To the contrary: the public

---

[2] *Swan v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, @ (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.")

[3] *Brown v. Plata,* 563 U.S. 493 (2011) (affirming reduction of prison population as remedy for unconstitutional prison conditions).

[4] *NAACP v. Cortes*, 591 F. Supp. 2d 757, 763, 768  (E.D. Pa. 2008) (granting injunctive relief, rejecting as factually unfounded defendants' arguments that changing election rules would "cause chaos and confusion").

interests articulated by the Supreme Court in *Purcell* support the granting of injunctive relief in this case.  First, the Supreme Court held that that "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."  549 U.S. at 4.  Reducing or eliminating the long lines that plagued the June 9 primaries will unquestionably increase public confidence in our electoral process.

Second, *Purcell* held that in some instances court orders "can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5.  In this case, unless the State Defendants provide a current paper pollbook backup for the electronic pollbooks, the long lines will reappear on November 3, greatly increasing voters incentive to stay away from the polls.  In sum, because the injunctive relief will enhance confidence in the integrity of our electoral process and increase incentive to vote, granting injunctive relief is completely consistent with *Purcell.*

## B.   Defendants' Procedural Arguments are Meritless

### 1.   *The Pleadings Encompass the Claim*

Unable to defend the Motion on the merits, the State Defendants argue that the Motion should be denied because it concerns a claim and relief that is outside the scope of this case.  (Doc. 815 at 1 – 3).  The argument is premised on the State Defendants' mistaken belief – repeatedly asserted – that this lawsuit concerns only

the DREs and the BMD touchscreen devices, but the Court has repeatedly

confirmed that the operative complaints encompass the security of the Secretary's

"election technology infrastructure," including, among many other components

and operations, the electronic pollbooks.  (Doc. 751 at 20).   In the Court's July 30,

2020 Order Denying in Part Defendant's Motion to Dismiss, the Court repeated its

findings from August 2019 concerning the integrity of the State's voter registration

system which had been left open at KSU.  (Doc. 751 at 21, quoting Doc. 579 at 88-

89).  The Court then explained that the registration system was not being replaced

and would still be used to populate the new PollPads.  (Doc. 751 at 22).  The Court

then observed: "Plaintiffs' allegations that errors and deficiencies in the voter

registration system and database are likely to carry over into the new system and

cause another round of voter disenfranchisement are plausible and remain a

material concern."  (Doc. 751 at 22).  In a complete and final rejection of

Defendants' argument that claims relating to electronic pollbooks are beyond the

scope of this case, the Court held:

> While the Court at this junction has only preliminary evidence in the
> record before it that addresses these claims in their current form, the
> Court notes that alleged significant problems relating to the express
> pollbooks were reported by the media during the June 2020 election
> cycle.  The Court makes no findings whatsoever based on this
> reporting, but simply finds that given the body of evidence originally
> presented and presented in connection with Plaintiffs' newest
> amended complaints, *critical deficiencies in the MVP and voter*

*registration system and electronic pollbooks are, at very least,*
*plausible and not moot.*

(*Id.* at 23-24 (emphasis added).

The State Defendants also ignore completely the detailed procedural history

of the specific remedy that Coalition Plaintiffs seek in this Motion set forth in the

Coalition Plaintiffs' initial brief.  (Doc. 800 at 4-9).   As the Coalition Plaintiffs

explain, the issue presented by this Motion has been at the heart of this litigation,

both before and after the State's implementation of the new BMD system.

> 2.    *Plaintiffs' Motion is Not Barred by the Eleventh Amendment*
>       *under Pennhurst*

The State Defendants also state that "Coalition Plaintiffs readily admit that

the key issue in their motion is the interpretation of state regulation on paper

pollbook backups."  (Doc. 815 at 14).  Based upon this alleged admission, the Sate

Defendants argue that the Eleventh Amendment bars the claim and that the state

law issue (which is never identified) should be certified to the Georgia Supreme

Court.   This is completely incorrect.  The Coalition Plaintiffs nowhere suggest,

much less "readily admit," that an interpretation of state law is a key issue.  In fact,

at the page the State Defendants cite, the Coalition Plaintiffs state that the proposed

injunctive relief "is not inconsistent with the new Board rule."  (Doc. 800-1 at 17).[5]

---

[5] Furthermore, even if the proposed relief was inconsistent with any State regulation, injunctive
relief would still be warranted because "'state policy must give way when it operates to hinder

Since the Coalition Plaintiffs are not asserting a state-law claim, *Pennshurst State School & Hospital v. Halderman,* 465 U.S. 89 (1984), plainly does not apply. Further, the suggestion that there is a state law issue that needs to be certified to the Georgia Supreme Court is frivolous.

For the foregoing reason, the Motion should be granted.

Respectfully submitted this 1st day of September, 2020.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

---

vindication of federal constitutional guarantees.'"  *Missouri v. Jenkins,* 495 U.S. 33, 57 (1990) (citations omitted).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br>**E**<br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has

been prepared in accordance with the font type and margin requirements of LR 5.1,

using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER , ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 1, 2020, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Bruce P. Brown*
Bruce P. Brown

16