# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL., <br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, ET AL., <br> Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CURLING PLAINTIFFS' RESPONSE TO THE COURT'S
## SEPTEMBER 15, 2020 ORDER

Curling Plaintiffs continue to seek the full relief requested (Dkt. 785), which the evidence has shown is eminently feasible and critically needed for elections this year. That said, this Court directed the following question to Plaintiffs: "whether they in fact seek relief, as an alternative to their request for a wholesale switch to hand-marked paper ballots, tailored to facilitating the uniform implementation of the State's established emergency ballot process." (Dkt. 900 at 2.) The answer is yes, depending on what the Court means by "facilitating the uniform implementation of the State's established emergency ballot process."

Curling Plaintiffs' requested relief includes enjoining Defendants from using Dominion BMDs on Election Day, *including* November 3, 2020, and instead requiring hand-marked paper ballots ("HMPBs"), just as Georgia's emergency paper ballot backup plan and election law already require. In other words, this Court has the discretion to award for 2020 elections, on a preliminary basis, part of the relief Curling Plaintiffs seek, including requiring HMPBs as the primary voting method on every Election Day for all Georgia elections, with a Dominion BMD available at precincts for those voters who need them (just as many jurisdictions do across the country). Although such an injunction would fall short of what the Constitution requires, it still would fall within the scope of relief Curling Plaintiffs seek and would serve as a valuable preliminary step toward permanent relief

needed to protect the right to vote in Georgia. (*See* Dkt. 627 at ¶¶ 141-45 (requesting "all other relief this Court deems proper"); Dkt. 785 at 2-3.)

Such a preliminary injunction would be needed to "facilitate the uniform implementation of the State's established emergency ballot process." Allowing Defendants to use Dominion BMDs as the primary voting method on Election Day would injure voters required to vote on those unreliable machines *and* subject voters to the arbitrary, inconsistent discretion of Defendants and other county election officials in determining whether, when, and how to invoke and execute Georgia's emergency paper ballot backup plan, as occurred on June 9, 2020. (*See, e.g.*, PX 40, 41, 42, 44, 45, and 51.) This led to highly disparate use of HMPBs on June 9. (*Id.*) Many voters were forced to wait for hours—or abandon voting entirely because of other obligations or for health reasons given the pandemic—while election officials struggled to get Dominion BMDs in place and functioning and failed to revert to HMPBs. This will happen again, but in spectacularly worse fashion given unprecedented voter turnout expected for Election Day, the worsening pandemic, and the many unresolved problems and vulnerabilities with Georgia's BMD system.[1] The Court can readily prevent this harm for all voters.

---

[1] Richard Fausset & Reid J. Epstein, *Georgia's Election Mess: Many Problems, Plenty of Blame, Few Solutions for November,* N.Y. Times (June 10, 2020),

This Court has broad discretion to fashion appropriate equitable relief to address the injury Plaintiffs will suffer in the upcoming election. *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1290 (11th Cir. 2015) ("Plainly, the federal courts possess broad discretion to fashion an equitable remedy."); *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1563 (11th Cir. 1988) ("The decision whether to grant equitable relief, and, if granted, what form it shall take, lies in the discretion of the district court."); *Kansas v. Nebraska*, 574 U.S. 445, 456, (2015) (in public interest matters, "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake"). "[W]hen district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001). Here, no statute prohibits the alternative relief contemplated; rather, it is entirely consistent with Georgia law, which requires the use of HMPBs if using Georgia's Dominion BMDs is "impossible or impracticable." O.C.G.A. 21-2-281, 21-2-334. Thus, the alternative relief is not a change to the face of elections but exactly the process Georgia law calls for in these circumstances, and mandating that process *now* is

---

https://www.nytimes.com/2020/06/10/us/politics/georgia-primary-electionvoting.html.

3

necessary to prepare and ensure the orderliness of the elections.

Under Georgia law, "In any primary or election in which the use of voting equipment is impossible or impracticable, . . . the primary or election may be conducted by paper ballot . . . ." O.C.G.A. 21-2-281. The statute requires that "the ballots shall be counted and return thereof made in the manner required by law for such nominations, offices, or questions, insofar as paper ballots are used," *i.e.* tabulated using Dominion's in-precinct scanners and securely deposited in the corresponding lockbox. O.C.G.A. 21-2-334. SEB Rule 183-1-12-.11(2)(c)-(d) provides the same.[2] Based on the complete record in this case, this Court has ample authority and factual support to find that Georgia's Dominion BMDs are "not practicable" for use on Election Day (except for those voters who need them), thus requiring the use of HMPBs just as Georgia law provides. Any election equipment that does not satisfy the constitutional right to vote is "not practicable" for use in elections. Invoking the statutory backup plan *now* is critical to ensure sufficient paper ballots (more than a mere 10% of registered voters), pens, etc. and to ensure every voter gets the same opportunity to have his or her vote counted.

---

[2] A variety of circumstances can trigger the emergency paper ballot backup plan—*e.g.* "power outages, malfunctions causing a sufficient number of electronic ballot markers to be unavailable for use, or waiting times longer than 30 minutes." (PX11; Dkt. 260-1 at 23-24.) The ease of hacking and systemic failures also should qualify.

4

This Court already laid the foundation for the contemplated alternative relief in its August 2019 Order, which Defendants did not—and cannot now—appeal:

> [A] default plan for use in the 2020 elections that addresses the contingency that the new BMD system enacted by the State Legislature may not be completely rolled out and ready for operation in time for the March 2020 Presidential Primary elections or in subsequent elections in 2020 and provide, as part of that contingency plan, for the use of hand-marked paper ballots for voting, in coordination with scanners and other equipment available through the State's contract with Dominion or amendment of such.

(Dkt. 579 at 148.)  The Court is well within its discretion to enforce this already-awarded relief given the overwhelming evidence proving that the "new BMD system" is not (and cannot be) "ready for operation" on Election Day (or ever). Such equitable relief is further supported by Defendants' other failures to comply with the Court's Orders.  (*See*, *e.g.*, *id.* at 150 (directing the Secretary to "work with its consulting cybersecurity firm to conduct an in-depth review and formal assessment" of election security issues); Dkt. 309 at 46 (requiring "a new balloting system … to address democracy's critical need for transparent, fair, accurate, and verifiable election processes that guarantee each citizen's fundamental right to cast an accountable vote").  Defendants disregarded these and other directives, continuing to "bur[y] their heads in the sand," which this Court warned them years ago would necessitate injunctive relief.  (Dkt. 309 at 45.)  The time for that relief is now, even if only for Election Day, with HMPBs as the primary voting method.

5

Defendants often cite the Supreme Court's decision in *Reynolds v. Sims*, 377 U.S. 533 (1964) to argue that this Court has no authority to require Georgia elections to comply with the Constitution this year. They are wrong. They lift a single phrase out of context that dealt specifically with legislative apportionment schemes, not election systems. They also ignore the fundamental right to vote recognized in that same opinion: "It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted." *Id.* at 554. The Court further emphasized: "Other rights, even the most basic, are illusory if the right to vote is undermined." *Id.* at 560. The Constitution never permits any election that does not afford every voter the right to have his or her vote count as intended. It is never too hard and never too late to protect the right to vote—especially when Defendants' burden claims lack any supporting evidence and contradict extensive evidence in the record.

Fulton County's Elections Director, Richard Barron, practically asked this Court to allow him to use HMPBs on Election Day rather than the BMDs his county and so many others have struggled with, because of the new system's many problems, complexities, and vulnerabilities. (Sept. 11, 2020 Tr. at 153.) The Court should enjoin Defendants from again treading on the right to vote in Georgia and mandate the statutory backup plan intended for such exigent conditions.

Dated:  September 16, 2020

Respectfully submitted,

 /s/ David D. Cross
David D. Cross (*pro hac vice*)
John P. Carlin (*pro hac vice*)
Lyle P. Hedgecock (*pro hac vice*)
Mary G. Kaiser (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
DCross@mofo.com
JCarlin@mofo.com
LHedgecock@mofo.com
MKaiser@mofo.com
RManoso@mofo.com

Halsey G. Knapp, Jr.
GA Bar No. 425320
Adam M. Sparks
GA Bar No. 341578
KREVOLIN & HORST, LLC
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
HKnapp@khlawfirm.com
Sparks@khlawfirm.com

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,** <br> **Plaintiffs,** <br><br> **v.** <br><br> **BRAD RAFFENSPERGER, ET AL.,** <br> **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

                                                 */s/ David D. Cross*
                                                 David D. Cross

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, ET AL.,<br>Defendants. | Civil Action No. 1:17-CV-2989-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, a copy of the foregoing **CURLING PLAINTIFFS' RESPONSE TO THE COURT'S SEPTEMBER 15, 2020 ORDER** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

                                                         */s/ David D. Cross*
                                                        David D. Cross