# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## PLAINTIFFS' NOTICE OF FILING DECLARATIONS OF HARRI HURSTI AND KEVIN SKOGLAND

Plaintiffs' jointly give notice of the filing of the Declaration of Harri Hursti, attached as Exhibit A, and the Declaration of Kevin Skogland, filed separately and provisionally under seal. Mr. Hursti's Declaration contains his observations of Fulton County's attempts on October 1, 2020 to install the new software on Fulton County's BMDs. Mr. Skogland's Declaration addresses the inadequacy of Pro V&V's analysis and testing of Dominion's recently rewritten software that is currently being installed on every Georgia BMD on a rushed basis. Mr. Skogland's Declaration is filed provisionally under seal only because it concerns the Pro V&V letter (Doc. 939) which was provisionally filed under seal by Defendants' counsel. As shown in the emails attached as Exhibit B, Plaintiffs'

counsel have repeatedly requested that Defendants' counsel withdraw the

confidential (or AEO) designation of the Pro V&V letter, but have received no

response.   There is no basis to file the Pro V&V letter under seal.

Respectfully submitted this 4th day of October, 2020.


/s/ Bruce P. Brown                          /s/ Robert A. McGuire, III
Bruce P. Brown                              Robert A. McGuire, III
Georgia Bar No. 064460                      Admitted Pro Hac Vice
BRUCE P. BROWN LAW LLC                        (ECF No. 125)
1123 Zonolite Rd. NE                        ROBERT MCGUIRE LAW FIRM
Suite 6                                     113 Cherry St. #86685
Atlanta, Georgia 30306                      Seattle, Washington 98104-2205
(404) 881-0700                              (253) 267-8530

*Counsel for Coalition for Good Governance*


/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges, Ricardo Davis & Megan Missett*

 /s/ David D. Cross                                    /s/ Halsey G. Knapp, Jr.
David D. Cross (*pro hac vice*)            Halsey G. Knapp, Jr.
John P. Carlin (*pro hac vice*)             GA Bar No. 425320
Lyle P. Hedgecock (*pro hac vice*)      Adam M. Sparks
Mary G. Kaiser (*pro hac vice*)           GA Bar No. 341578
Robert W. Manoso (*pro hac vice*)      KREVOLIN & HORST, LLC
MORRISON & FOERSTER LLP                1201 West Peachtree Street, NW
2000 Pennsylvania Avenue, NW            Suite 3250
Suite 6000                                            Atlanta, GA 30309
Washington, DC 20006                        (404) 888-9700
(202) 887-1500

*Counsel for Plaintiffs Donna Curling, Donna Price & Jeffrey Schoenberg*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,** <br> **Plaintiffs,** <br><br> **v.** <br><br> **BRAD RAFFENSPERGER, ET AL.,** <br> **Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2020, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Bruce P. Brown*
Bruce P. Brown

EXHIBIT

A

## DECLARATION OF HARRI HURSTI

Pursuant to 28 U.S.C. § 1746, HARRI HURSTI declares under penalty of perjury that the following is true and correct:

1.     This declaration supplements my prior declarations (Docs. 680-1, 800-2, 809-3, 860-1, 877, and 923-2) a nd I stand by the statements in those declarations.

2.     I arrived at the Fulton County Election Preparation Center ("EPC") on October 1, 2020 around 3:45pm. I was there in my capacity as an expert engaged by the Coalition Plaintiffs to conduct a Rule 34 inspection. (Exhibit 1) . I was accompanied during part of my visit by Marilyn Marks of Coalition for Good Governance.

3.     My goal for this observation and inspection was to review the ongoing updating of the Dominion software for Fulton County ballot marking device ("BMD") touchscreen units to ICX software version 5.5.10.32. It is my understanding that Fulton has an inventory of over 3,300 BMD touchscreens, all of which are to be updated with this software. A number of the machines were in the EPC warehouse and were staged to be updated or marked after the update had been completed.

4.     Upon our arrival, Ms. Marks and I were informed by Derrick Gilstrap, the manager of EPC, that all of the people working to upgrade the devices were

Dominion technicians. Mr. Gilstrap stated that he did not feel comfortable installing a last-minute software change, and did not want Fulton County staff to be responsible for installing it.  He told us that he told Dominion to conduct this operation, prior to having his staff install the November 2020 election programming and Logic and Accuracy testing ("LAT").

5.     Mr. Gilstrap told us that after the software update step that LAT would immediately begin, and made no mention of Acceptance Testing that should occur prior to LAT.

6.     Acceptance Testing is an almost universally mandated basic test of the hardware and software when a change or repair to either has been made before counties are permitted to install election programming and deploy voting system components. Acceptance testing must be performed on each unit, and cannot be performed on a sample basis. Fulton's failure to conduct such testing should be a serious warning sign of further recklessness in the installation of inadequately tested software.

7.     Mr. Gilstrap stated that Dominion had started the software update project with four workers, but soon realized that the task would take extended periods of time.   Mr. Gilstrap stated that Dominion had accordingly increased the workforce to 14 and expected the installation work to be completed on Monday, October 5.

8.      The new software was contained on USB sticks.  However, there was no inventory management present for the USB sticks. There also was no inventory control for the technician authorization smartcards, which provide access to the controls of the touchscreen. Workers did not sign or otherwise document when they took possession or returned the technician cards and software upgrade USB sticks. Those items were in an open plastic bag which was sometimes placed on table, and sometimes carried around the working area by the manager. Anyone was able to pick up a USB stick or drop them there freely, permitting the easy substitution of USB sticks containing malware or to leave the premises with copies of the software update.

9.      Some workers worked one BMD touchscreen machine at the time, while others simultaneously worked on 2 or 3 machines. There was no accountability for how many sticks and technician smart-cards each worker had in their possession. Clearly, the USB sticks were not considered to be security sensitive items at all.

10.      Some of the workers had instructions for software update visible in their pockets, while others did not seem to have the instructions readily available. One worker showed me the instructions, but it was different from the instructions I had seen that were sent to the counties. None of the technicians that I observed were following the instructions as they installed the new software.

11.     Technicians were not following a common process, and they all made their own variations on the workflow.  In my experience, this can negatively affect the quality and reliability of the software installation.  Many workers were texting and making phone calls while working and not focusing on their work. As a result, I observed repeated human errors such as skipping steps of the process.

12.     Some workers consistently took an extra step to destroy previous application data before uninstalling the old version of the software. Uninstalling software packages results in destroying application data, but that is known to be unreliable in old versions of Android. The step they took is ensuring, among other things, destruction of forensic evidence of Fulton's use of the equipment in prior elections.

13.     To avoid destruction of all forensic evidence from the BMDs, a number of images of the electronic data contained on the BMDs should be taken from a sample of them before installation of the new software.

14.     As part of the updating process, the workers are directed to enable the "Install from Unknown Sources" setting. This is an insecure mode because it turns off the operating system verification of trusted sources and therefore allows software from any source to be installed. During the 45 minutes of my observation, I observed that many units had been left in insecure mode. I estimate 15% of the units were already in the insecure mode when the work began on them, having

been left that way during the last software installations, or because of interim tampering.

15.     As described before, most workers I observed were not focusing on the work they were tasked to do, and as result, they were accidentally skipping steps. I observed that, as result of these human errors, the units were erroneously left in the insecure mode either by the workers skipping the step to place the machine into the secure mode after upgrade, or doing the step at such a fast pace that the system did not register the touch to toggle the switch and the worker did not stop to verify the action.

16.     The State Defendants and Dominion have repeatedly overstated the value of their hash test, but my observation showed that they themselves are not relying on such test as a control measure.   Dominion workers are not even checking the hash value.  I deliberately followed many workers when they processed the units. During over 45 minutes of observation, none of the workers took the step of verifying the hash value. Some workers did not realize that the upgrade had failed and the mistake was only caught by persons who were closing the cabinets when and if they looked at the software version numbers before closing the doors.

17.     I also observed random errors that were not caused by humans. For example, software sometimes refused to uninstall because the uninstall button was

disabled, or the installation silently failed. The technicians treated devices with issues by simply rebooting them. Technicians made no effort to diagnose or document the cause of the issues. The casual nature of dealing with the irregularities caused me to conclude that these abnormal incidents are commonplace.

18.     Based on my observations of the software update, I would anticipate that these machines are likely to behave inconsistently in the polling place, depending on a number of factors including the care taken in the software installation process.

19.     The current abbreviated LAT protocol adopted by Fulton County and the State cannot be relied on to identify problems created by the new software or its installation (or other problems with programming and configuration unrelated to the new software). Even if counties were conducting the full LAT required, it is but one step that is needed, and is quite insufficient for ensuring the reliability of the BMD touchscreens—which at the end of the day, simply cannot be done.

20.     In my professional opinion, the methods and processes of adopting and installing this software change is completely unacceptable. The methods and processes adopted by Dominion and Fulton County do not meet national standards for managing voting system technical problems and remedies, and should not be accepted for use in a public election under any circumstances.

21.     It is important that full details of the software change made be available for analysis and testing to determine the potential impact of the changes. I concur with Dr. Halderman's opinion in Paragraph 8 of his September 28, 2020 declaration (Doc. 923-1), in which he states that if the problem is as limited as described by Dominion, it could have been addressed with far less risk by the State without making an uncertified, untested software change.

22.     In my opinion, the installation of the last-minute software change adds intolerable risk to the upcoming election, and the simple solution of removing the BMD units from the process and adopting hand marked paper ballots is imperative.

23.     I note that I wanted to document the upgrading process, but Mr. Gilstrap told me that I was prohibited from taking photographs or video. I showed him the Rule 34 inspection document and pointed out the paragraph permitting photographing. He read that carefully but told me that he needed to clear that with his superiors before I could start taking pictures.  He never cleared this with his superiors while we were there.

I declare under penalty of the perjury laws of the State of Georgia and the United States that the foregoing is true and correct and that this declaration was executed this 4th day of October, 2020 in Atlanta, Georgia.

Harri Hursti

EXHIBIT

1

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| **DONNA CURLING, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **vs.** | ) | |
| | ) | **FILE NO. 1:17-cv-2989-AT** |
| **BRAD RAFFENSPERGER,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### COALITION PLAINTIFFS' NOTICE OF RULE 34 REQUEST FOR EXPEDITED INSPECTION AND COPYING TO DEFENDANT FULTON BOARD OF REGISTRATIONS AND ELECTIONS

Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis and Megan Misset ("Coalition Plaintiffs") request that Defendant Fulton Board of Registrations and Elections (including, members of the Fulton County Board of Registration and Elections) ("Fulton Board") (1) produce and permit the Coalition Plaintiffs to inspect, copy, test, or sample the items in the Defendants' possession, custody, or control that are set out herein; and (2) permit entry onto the designated land or other property possessed or controlled by the Fulton Board identified herein so that the Coalition Plaintiffs may inspect, measure, survey, photograph, test or sample the property or any designated object or operation on it as set out herein.

## **Items and Operations to be Inspected, Copied, Tested**

The following operations occurring at the following indicated times and places and the following records related to the September 29, 2020 election are subject of this Request:

1. Inspect and observe the operations comprising mail ballot scanning and processing activities, including (1) inspection and copying of all electronic documents generated or subject to review in the conduct of such activities, (2) observation of operations comprising on screen adjudication and remaking of ballots by the Vote Review Panel for the September 29, 2020 election at the time and place the Review Panel's activities are conducted. It shall be the responsibility of Fulton Board to inform Coalition Plaintiffs' counsel of the time and place of Review Panel meetings.

2. Inspect and copy digital printouts[1] of, and observe adjudication of, ballot images flagged for review by the Ballot Review Panel. The inspection and observation of the images flagged for review may include the on-screen review of the information concerning the vote mark provided via the information icon on the screen, and the adjudication notations recorded. If requested, the original ballots may be inspected for ballot images of interest to compare the fidelity of the image

---

[1] Digital printouts for inspection and copying as referenced herein are to include the Auditmark interpretations made on each ballot image.

to the original ballot.

3.  Inspect and copy digital printouts of ballot images for September 29, 2020 hand marked paper ballots not flagged for adjudication. If requested, the original ballots may be inspected for images of interest.

4.  Inspect and copy digital printouts of the Vote Review Panel adjudication decisions from the audit log/register for the September 29, 2020 election.

5.  Inspect, observe, and photograph September 29, 2020 Election Day processing of memory cards and ballots, including the upload of memory cards and ballot files to the Dominion server and workstations and operation of the EMS system. Inspection may begin at the time preparations are made for uploading early voting memory cards and continue through the completion of all uploads of memory cards.

6.  Inspect the mail ballot scanner settings and software threshold settings related to detection and recording of ballot marks on hand marked ballots during the scanning of September 29, 2020 mail ballots at the Fulton County location where such scanning activities occur.

7.  Coalition Plaintiffs' test of mail ballot scanner and adjudication software accuracy by Coalition Plaintiffs' representatives during Fulton Board's Logic and Accuracy Testing. Test will be conducted by Coalition Plaintiffs' representatives hand marking 50 blank ballots to be supplied by Fulton Board for the November

3, 2020 election. Testing will include a tabulation of the test ballots on an ICC scanner and a review and copying or digital printouts of the resulting ballot images, as well as a review of the on screen adjudication results of the 50 ballot test batch. The testing and inspection shall be accomplished at a mutually agreeable time during Fulton Board's Logic and Accuracy Testing during the week of September 28, 2020.

8. Inspect and observe operations comprising precinct operations in 05J, 07H, 01F, 01E, and 10C precincts on September 29, 2020, during polling place set up, preparation for poll opening, voting and poll closing activities.  Observation is to include visual access to electronic information displays on the scanners, and inspection of scanner settings and operation. Individual voter's ballots are not subject to inspection during a voter's active voting and ballot casting process.

9. Inspect the production of all electronic or paper reports prepared by election officials at 05J, 07H, 01F, 01E, and 10C precincts on September 29, 2020, and inspection and copying of all precinct recap and Pollpad reports as soon as they are available on September 30, 2020 or October 1, 2020.

10. Inspect and observe operations comprising start-up and operation of the PollPads including voter check-in and voter access card encoding procedures, and paper ballot lists at the 05J, 07H, 01F, 01E, and 10C precincts on September 29, 2020.

11. Inspect and observe operations comprising start-up and operation of the ballot

marking device units at the 05J, 07H, 01F, 01E, and 10C precincts on September 29, 2020, including the inspection of all on screen messages and displays. All such inspections will occur when no voter is using the specific ballot marking device being inspected.

12. Inspect and observe operations comprising mail ballot envelope and mail ballot application signature verification processing, including security controls beginning at 11:00 a.m. on September 28, 2020, and continuing from time to time as Fulton Board undertakes such activities.

13. Inspect, observe and photograph ongoing Logic and Accuracy Testing of election equipment at Fulton County's Election Preparation Center for the November 3, 2020 election during the week of September 28, 2020, with visual access adequate to read the touchscreens, printouts and scanner output.

## **Conditions for Inspection**

A. Coalition Plaintiffs will give Fulton Board's counsel at least 24 hours' notice of the names and contact information of representatives authorized to conduct the inspections.

B. Fulton Board will provide poll managers and EPC staff with a copy of this document to avoid inform Fulton Board personnel of the conditions for inspection. Inspectors will present a copy of this document to Fulton Board personnel at the assigned locations.

C.  Parties will cooperate to share and update times and places of election activities to be inspected and the inspection schedule given the fluid nature of election activities.

D.  For each inspection activity, Coalition Plaintiffs' representatives will be permitted to have one inspector knowledgeable of the voting system and one representative assisting and documenting the inspection work.

E.  Photographs, video, electronic and paper copies and printouts of all documents related to activities and records inspected are permitted to the extent that they do not contain personal identifying information.

F.  Inspection and observation include adequate visual access to the activities and documents to read screens or paper documents similar to the level of visual access of the officials conducting the activities.

G.  Coalition Plaintiffs' representatives shall be subject to the same confidentiality and non-disclosure agreements required of the officials conducting the activities observed or inspected.

Dated: September 22, 2020

/s/ Cary Ichter
CARY ICHTER
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE, Suite 1530
Atlanta, Georgia 30326
Tel.: 404.869.7600
Fax: 404.869.7610
cichter@ichterdavis.com

AND

Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucebrownlaw.com
**Bruce P. Brown Law LLC**
1123 Zonolite Road NE, Suite 6
Atlanta, Georgia 30306
Tel.:  404.881.0700

AND

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III
Pro Hac Vice (ECF No. 125)
**ROBERT MCGUIRE LAW FIRM**
113 Cherry St. #86685
Seattle, Washington 98104-2205
(253) 267-8530

*Attorneys for Plaintiffs Coalition for Good Governance, William Digges III, Laura Digges, Ricardo Davis, and Megan Missett*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Cary Ichter*

Cary Ichter
Georgia Bar No. 382515

## CERTIFICATE OF SERVICE

I hereby certify that that on September 22, 2020, Plaintiff Coalition for Good Governance, by and through its counsel of record, served a true and correct copy of the following discovery requests – **Coalition Plaintiffs' Notice of Rule 34 Request for Expedited Inspection and Copying to Defendant Fulton Board of Registrations and Elections -** on all counsel of record by electronic delivery of a PDF version to the following:

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515

Kaye Woodard Burwell
David Lowman
Cheryl Ringer
Fulton County Attorney's Office
141 Pryor Street, NW
Suite 4038
Atlanta, Georgia 30303
Kaye.burwell@fultoncountyga.gov
David.lowman@fultoncountyga.gov
Cheryl.ringer@fultoncountyga.gov

Bryan P. Tyson
Jonathan D. Crumly
Diane Festin LaRoss
James A. Balli
Bryan F. Jacoutot
Loree Anne Paradise
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
btyson@taylorenglish.com
jcrumly@taylorenglish.com
dlaross@taylorenglish.com
jballi@taylorenglish.com
bjacoutot@taylorenglish.com
lparadise@taylorenglish.com

Vincent Russo
Joshua B. Belinfante
Alexander F. Denton
Carey Miller
Robbins Ross Alloy Belinfante Littlefield
LLC
500 Fourteenth St. NW
Atlanta, Georgia 30318
vrusso@robbinsfirm.com
jbelinfante@robbinsfirm.com
adenton@robbinsfirm.com
cmiller@robbinsfirm.com

David D. Cross
John P. Carlin
Lyle F. Hedgecock
Mary G. Kaiser
Morrison & Foerster LLP
2000 Pennsylvania Avenue NW
Washington, DC 20006-1888
dcross@mofo.com
jcarlin@mofo.com
lhedgecock@mofo.com
mkaiser@mofo.com

Halsey G. Knapp, Jr.
Adam Martin Sparks
Grant Edward Schnell
Krevolin & Horst, LLC
One Atlantic Center, Suite 3250
1201 West Peachtree Street, NW
Atlanta, GA 30309
hknapp@khlawfirm.com
sparks@khlawfirm.com
grant.schnell@hklaw.com

John Michael Powers
David R. Brody
Ezra David Rosenberg
Lawyers' Committee for Civil Rights Under Law
Suite 900
1500 K Street, NW
Washington, DC 20005
jpowers@lawyerscommittee.org
dbrody@lawyerscommittee.org
erosenberg@lawyerscommittee.org

Robert Alexander McGuire
Robert McGuire Law Firm
113 Cherry Street #86685
Seattle, WA 98104-2206
ram@lawram.com

2

E
X
H
I
B
I
T

B

**Subject:** Re: Doc 939 - Pro V&V Report
**Date:** Saturday, October 3, 2020 at 6:10:09 PM Eastern Daylight Time
**From:** Bruce Brown
**To:** Cross, David D.
**CC:** Vincent Russo, Bryan Tyson, david.lowman@fultoncountyga.gov, Cheryl Ringer, J. Matthew Maguire
**BCC:** Bruce Brown

Bryan and Vincent -  we need to hear from you immediately on this.

> On Oct 3, 2020, at 1:27 PM, Cross, David D. <DCross@mofo.com> wrote:
>
> Please confirm today as our clients are entitled to review this.
>
> Thanks.

**From:** Bruce Brown <bbrown@brucebrownlaw.com>
**Date:** Saturday, Oct 03, 2020, 12:40 PM
**To:** Vincent Russo <vrusso@robbinsfirm.com>, Bryan Tyson <btyson@taylorenglish.com>
**Cc:** david.lowman@fultoncountyga.gov <david.lowman@fultoncountyga.gov>, Cross, David D. <DCross@mofo.com>, Cheryl Ringer <Cheryl.ringer@fultoncountyga.gov>, J. Matthew Maguire <MMaguire@pcwlawfirm.com>
**Subject:** Doc 939 - Pro V&V Report

**External Email**

Vincent and Bryan —
I understand that Doc 939 was provisionally filed under seal because of time constraints.  Upon reviewing the document it does not appear that there is anything in it that is confidential. Please confirm that you will be changing the sealed designation of this document and that it should be treated like any other non-confidential document.
Thanks,
Bruce

========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.