IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

DONNA CURLING, ET AL.,
Plaintiffs,

v.

BRAD RAFFENSPERGER, ET AL.,
Defendants.

Civil Action No. 1:17-CV-2989-AT

**COALITION PLAINTIFFS' REPLY BRIEF
IN SUPPORT OF PROPOSED SCANNER REMEDY (DOC. 990-2)
FILED PURSUANT TO ORDER (DOC. 964)**

State Defendants do not deny that changing the Brightness setting to a value of 25 and maintaining the Contrast setting at the default value of 4 will materially increase the number of valid ballot markings that are recognized as votes, rather than being wrongly recorded as "Blank Contests" in AuditMark. Instead, State Defendants object that the relief developed empirically and recommended by Mr. Hursti for immediate implementation does not involve changes to database programming, such as DPI, threshold, or grayscale settings.[1] The fact that

---

[1] The State could not realistically have expected the Coalition Plaintiffs' proposed relief to include changes to these values at this stage, given their refusal to permit access to Dominion databases. Insisting on relief that addresses only the software features that the State has prevented Plaintiffs from examining is pure gamesmanship, and it should not be indulged.

1

meaningful improvement in vote perception by the scanners is so easily achievable should be a good thing, but the State treats it as a flaw in the proposed order. Apparently the State is focused only on achieving litigation goals, not on enfranchising voters.

As Mr. Hursti noted in his declaration, his recommendation for *immediate* improvement in initial ballot scanning vote capture is one that can be made in less than 5 minutes (Doc. 990-1, at 2–3, ¶ 6), which means the recommended change can be made at any time during an election or recount, and could have already been voluntarily adopted to improve the initial ballot scan vote interpretation in the November 3 election. There is no current guidance from the Secretary for the counties regarding Brightness and Contrast settings, nor are these values required to be set in the database, so an immediate change could be made right away merely by issuing simple instructions to the county superintendents.  Defendants question Mr. Hursti's statement about how long it would take an authorized operator to change the Brightness settings, but Mr. Hursti personally observed the operator making this exact change in Cherokee County, where it took only a few minutes.

The simple change required by the proposed order was empirically generated by Mr. Hursti based on a brief period of trial/error and measurement of results.  Even more effective changes could potentially be recommended if Mr. Hursti were given a more extended opportunity to spend time directly examining

the Dominion scanner. Mr. Hursti developed his proposed solution without direct access to the Dominion scanner. He was permitted just over two hours of highly controlled access to the scanner and its software settings to test his research conclusions in a live election setting. (Doc. 990-1, at 10–14, ¶¶ 25–39.) Mr. Hursti was required to conduct this testing by working through a scanner operator who was a Cherokee county employee. Without direct access to an election database and without considerably more testing time, as anticipated, he noted that even though he was "unable to test and verify the optimal settings, the recommendations described in this declaration will measurably improve the accuracy in vote detection and tabulation of hand marked paper ballots scanned by the Dominion ICC scanner and can and should be made immediately." (Doc. 990-1, at 5, ¶ 12.) But Mr. Hursti's present inability to propose "optimal" settings is not an appropriate standard to use when determining whether to order relief.  On the contrary, the improvement in vote recognition that Mr. Hursti was able to achieve by the simple change that Coalition Plaintiffs propose is substantial and will detect large numbers of valid hand marked paper ballot votes that will otherwise be recorded as "Blank Contests" and be at risk of going uncounted as a result.  (Doc. 990-1, at 15, ¶¶ 40–42.)

State Defendants' argument that Mr. Hursti's straightforward recommendation to achieve immediate improvement in vote recognition should not

be adopted because discovery may yet reveal even more effective scanner changes is nonsensical. Coalition Plaintiffs will obviously welcome the opportunity—and plan—to conduct further discovery in which they can have Mr. Hursti follow up on his present recommendations by engaging in "future study to find optimal values using the total combination of available local settings." (Doc. 990-1, at 20, ¶ 58.) As Mr. Hursti himself noted, further study to find and test optimal settings for "brightness contrast and gamma should be conducted . . . for future elections before databases are built. Other settings for grayscale, threshold, and dpi should be tested and optimized simultaneously." (Doc. 990-1, at 20, ¶ 58.) But the immediately implementable change recommended by Coalition Plaintiffs right now, which can substantially improve the vote capture, should not be postponed or denied simply because the proposed change may not turn out to be the *optimal* change that is ultimately recommended after a more extensive study of potential database setting changes occurs.

The Court ordered State Defendants to "explore and determine whether a solution exists for the discounting of votes resulting from system deficiencies in the tabulator/scanning and the potential implementation of remedial measures in time for any runoffs in January 2021." (Doc. 964, at 125.) Beyond the immediately implementable Brightness setting change, which is easily implemented for the December 1 and January 5 runoffs, Mr. Hursti can provide more optimized

4

recommendations once he has been given meaningful access to examine and test the Dominion scanner and election database over the course of two to four days.

The Court itself raised the need for the parties to determine the impact of the vote detection issue on the November election: "Plaintiffs as well as the Defendants or County Boards of Election may of course revisit the question of additional relief related to the ballot scanners if there turns out to be more evidence after the election and if huge swaths of voters' absentee, provisional, or emergency paper ballot votes did not count." (Doc. 964, at 138.) Plaintiffs stand ready to examine that evidence in discovery and to determine and make such an evaluation. However, given the significant improvement that promises to be afforded by the simple Brightness setting change that Coalition Plaintiffs are presently recommending, the Court should not refrain from ordering the requested relief in anticipation that more extended empirical testing will, may, or may not make additional meaningful improvements. The change Coalition Plaintiffs are recommending now will demonstrably prevent imminent voter disenfranchisement.

<u>Alternative Relief</u>

The Court noted that the Dominion adjudication software has the capability to flag for human review any "Blank Contests" for which no marks are detected as votes (Doc. 964, at 140.) The Court recognized that using this tool to detect marginal marks might result in "a large number of ballots with truly blank

contests" being reviewed by humans, which could be burdensome in a general election with a long ballot likely to contain intentional undervotes. (Id.)

Importantly, the pending runoff elections set for December 1 and January 5 will have a small number of contests, making intentional undervotes much more likely be a rare exception. The vast majority of counties do not even have a December runoff; those that do will rarely have more than one contest. The ballots for the January election will only contain two U.S. Senate contests and one Public Service Commission contest. Under these circumstances, the Court should order the State Defendants to set the Blank Contests filter to flag all undervotes in the December and January elections for Vote Review Panel review.

By doing so, the Court would assure detection and human review of all valid marginal marks in a simple, efficient manner that can be controlled locally and implemented at the time when mail ballots are adjudicated. This simple solution should be exceptionally feasible for all of the short-ballot elections that are expected to take place between now and the November 2021 municipal elections. Flagging and adjudicating detected Blank Contests requires virtually no testing and can be implemented immediately by the counties. This commonsense relief for short, simple ballots should meet with no valid objection and will be effective at eliminating scanner disenfranchisement of mail voters during the discovery period that remains in this case, while further factual investigation and expert testing is

conducted to identify an optimal solution prior to the November 2021 municipal elections.

State Defendants' Revival of Defeated Merits Objections

Finally, State Defendants attempt to resurrect a merits argument that no relief should enter at all—an issue on which they already lost. They do so by belittling the idea that "the U.S. Constitution speaks to scanner brightness settings" and by insisting that "there is no constitutional right of voters to disregard ballot instructions and mark their ballots" in unapproved ways. (Doc. 1007, at 5, 8.) But this thin argument borders on frivolousness, for (as the motion reply pointed out at Doc. 853, at 13), Georgia law requires that all markings on a paper ballot that clearly indicate a voter's intent *must* be counted as votes, even if the voter does *not* mark the ballot as state law requires. O.C.G.A. § 21–2–438(c).  The State cannot justify the disenfranchisement of its citizens by trivializing the mechanism by which that disenfranchisement occurs. "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000). If Georgia law requires that human-discernible votes must be counted, as it does, then the State is

not free to arbitrarily discard human-discernible votes cast by mail simply because making a five-minute adjustment to scanner Brightness settings seems too easy.

## CONCLUSION

Coalition Plaintiffs' Proposed Order On Scanner Relief (Doc.990-2) should be entered further to the Court's previously entered Opinion and Order (Doc. 964.)

Respectfully submitted this 18th day of November, 2020.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | Admitted Pro Hac Vice |
| BRUCE P. BROWN LAW LLC | (ECF No. 125) |
| 1123 Zonolite Rd. NE | ROBERT MCGUIRE LAW FIRM |
| Suite 6 | 113 Cherry St. #86685 |
| Atlanta, Georgia 30306 | Seattle, Washington 98104-2205 |
| (404) 881-0700 | (253) 267-8530 |

*Counsel for Coalition for Good Governance*

*/s/ Cary Ichter*
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DONNA CURLING, ET AL.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER , ET AL.,**<br>**Defendants.** | **Civil Action No. 1:17-CV-2989-AT** |

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2020, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Robert A. McGuire, III*
Robert A. McGuire, III