IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONNA CURLING, *et al.* *Plaintiffs,* v. BRAD RAFFENSPERGER, *et al.*, *Defendants.* | CIVIL ACTION FILE NO. 1:17-cv-2989-AT |

## STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEFS REGARDING STANDING

## INTRODUCTION

During the February 2 status conference, the Court requested briefing on the context of "the evidence in this case." [Doc. 1061 at 37:10-11]. Coalition Plaintiffs insisted that an evidentiary hearing is unnecessary and that they are "very comfortable with the record on standing."[1] [Doc. 1061 at 8:23-24, 18:6-14, 19:14-16, 25:11-14, 38:16-23]. Curling Plaintiffs now claim they have shown an injury-in-fact "on the current record." [Doc. 1067, p. 10]. But Plaintiffs' briefs include *100 pages* of new declarations and exhibits.[2] [Docs. 1067, 1071]. Responding to 130 pages of briefing and exhibits in only five pages [Doc. 1061 at 39:3-10] is only possible because the new "evidence" does not alter the fundamental deficiency of Plaintiffs' claims: Plaintiffs have only generalized grievances and any injury is based solely on a speculative chain of events—exactly the same outcome-determinative problems that Mr. Wood and Ms. Powell faced repeatedly in litigation after the 2020 elections.

Despite all of the additional paper, Plaintiffs cannot show any concrete and particularized injury. The injury Plaintiffs claim is that they cannot verify whether their votes would be accurately counted if they were forced to

---

[1] Curling Plaintiffs reserved whether to have another hearing. *Id.* at 41:6-10.
[2] State Defendants object to the consideration of this new evidence.

vote on a BMD. [Docs. 1067, pp. 8-9; 1071, pp. 9, 13-14]. Dr. Halderman now claims the security risks of the BMDs "are *worse* than the risks" from the DREs—machines that had no paper trail—while continuing to opine in hypotheticals, referencing only possible "severe risks" that "could change" results, and worrying about the "risk of such an attack" that "perhaps"[3] might be problematic. [Doc. 1070, ¶¶ 2, 3-5, 16-17]. Curling Plaintiffs say they have "no confidence" in BMDs, are "concerned with threats," and wish they had a system with "less risk." [Docs. 1067-1, ¶¶ 7-8; 1067-2, ¶¶ 9, 14; 1067-3, ¶¶ 5-6, 10-11]. Coalition Plaintiffs point to existing evidence on their injury,[4] with the exception of adding items for the Coalition itself. [Doc. 1071-1]. Despite the years this case has gone on, Plaintiffs still have no injury.

## ARGUMENT AND CITATION OF AUTHORITY

There is no evidence of BMD ballots in Georgia not accurately reflecting the selections of the voters. All of Plaintiffs' additional "evidence"

---

[3] Dr. Halderman signed a letter stating there was no evidence that the 2020 elections had "been altered through technical compromise." *See* Nicole Perlroth, N.Y. Times, *Election Security Experts Contradict Trump's Voting Claims*, https://www.nytimes.com/2020/11/16/business/election-security-letter-trump.html (Nov. 16, 2020).

[4] Coalition Plaintiffs' new declarations raise new issues, including allegations of problems in Nov. 2020, problems with Dominion software, that Georgia conducted its audit improperly, and about the scope of the Governor's COVID stay-at-home order. [Docs. 1071-2, ¶¶ 12, 17, 22-24, 28-29, 31; 1071-5, ¶ 14].

still relies solely on what *might* happen. Dr. Halderman only talks about what *could* happen. The individual Plaintiffs worry about BMDs, so they vote by absentee ballot. None of the Plaintiffs in this case allege the BMD system itself has been *actually compromised* in a way that changed any election outcomes. But that is precisely what the "Kraken" case, which was dismissed for lack of a particularized injury, alleged—that "the Dominion software was accessed by agents" of China and Iran to "manipulate elections, including the most recent US general election in 2020" and that "hundreds of thousands of votes that were cast for President Trump" were changed by Dominion software. *Pearson v. Kemp*, Case No. 1:20-cv-04809-TCB, Doc. 1, ¶¶ 14-15.

And even in a case where there had been an actual compromise, the Eleventh Circuit is clear that mere vulnerabilities cannot establish standing. *Tsao v. Captiva MVP Restaurant Partners, LLC*, No. 18-14959, 2021 WL 381948 at *5 (11th Cir. Feb. 4, 2020). Plaintiffs never even address this case.

I.   **Response to Curling Plaintiffs' specific claims.**

Curling Plaintiffs rely primarily on their claim that in-person voters who use BMDs are treated differently than absentee voters to find a "personal and individual" harm. [Doc. 1067, pp. 6, 12-13]. But the Supreme Court has recognized that voters using different methods of voting may face different burdens. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197,

128 S. Ct. 1610, 1620 (2008). In addition, the "right to vote in any manner" is not absolute. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).

Despite all of their language about the importance of voting, Curling Plaintiffs do not identify anything about the BMD system they challenge that is not "common to all members of the public." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 575 (1992)). Curling Plaintiffs' reliance on vote-dilution cases in the context of districts misses the distinction between having *votes* counted improperly and a concrete harm from district design.[5] *Wood*, 981 F.3d at 1314.

Curling Plaintiffs continue to miss the point—voters who do not suffer "difficulty in voting for [their] preferred candidate or otherwise participating in the political process" do not have standing. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1246 (11th Cir. 2020). Curling Plaintiffs here can avoid all harm from their imagined hacking scenarios by simply voting using the method they say they will utilize—absentee ballots.

## II. Response to Coalition Plaintiffs specific claims.

Coalition Plaintiffs rely on their inability to "verify the content of one's

---

[5] Curling Plaintiffs' claims that State Defendants' reading of *existing* law on standing would "disallow all voting rights cases" and allow the reimposition of literacy tests and poll taxes is bizarre. [Doc. 1067, p. 17]. Those laws treat similarly situated people differently—something the use of BMDs does not.

actual vote," [Doc. 1071, p. 9]. Again, this is a hypothetical harm and not concrete. Their claims of ballot secrecy are barred by the Eleventh Amendment because they claim a violation of state law. *Id*. at p. 10. Further, to the extent Coalition Plaintiffs' ballot secrecy claim hinges on the placement of BMDs at a polling place, the claim is neither traceable to nor redressable by State Defendants. *Jacobson*, 974 F.3d 1254-55, 1257.

Coalition Plaintiffs insist that they have no evidence any election outcome would have changed. [Doc. 1071-2, ¶¶ 28, 31]. As a result, their claims can *only* be generalized grievances about the conduct of elections because they are not saying that any result would be different.

All of the claims about diversion of resources fail because Coalition Plaintiffs do not even mention *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). No matter what diversion they claim is taking place, Coalition Plaintiffs have only shown they are spending based on anything but "fears of hypothetical future harm that is not certainly impending." *Id*. at 416.

## CONCLUSION

This Court should "put aside the natural urge to proceed directly to the merits of this important dispute," *Raines v. Byrd*, 521 U.S. 811, 820 (1997), and dismiss this case because Plaintiffs lack standing.

Respectfully submitted this 17th day of February, 2021.

    Vincent R. Russo
    Georgia Bar No. 242628
    vrusso@robbinsfirm.com
    Josh Belinfante
    Georgia Bar No. 047399
    jbelinfante@robbinsfirm.com
    Carey A. Miller
    Georgia Bar No. 976240
    cmiller@robbinsfirm.com
    Alexander Denton
    Georgia Bar No. 660632
    adenton@robbinsfirm.com
    Robbins Ross Alloy Belinfante Littlefield LLC
    500 14th Street, N.W.
    Atlanta, Georgia 30318
    Telephone: (678) 701-9381
    Facsimile: (404) 856-3255

    */s/Bryan P. Tyson*
    Bryan P. Tyson
    Georgia Bar No. 515411
    btyson@taylorenglish.com
    Jonathan D. Crumly
    Georgia Bar No. 199466
    jcrumly@taylorenglish.com
    James A. Balli
    Georgia Bar No. 035828
    jballi@taylorenglish.com
    R. Dal Burton
    Georgia Bar No. 097890
    dburton@taylorenglish.com
    Diane F. LaRoss
    Georgia Bar No. 430830

dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## L.R. 7.1(D) CERTIFICATION

I certify that this Response Brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/Bryan P. Tyson*
Bryan P. Tyson