## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA CURLING, ET AL.,
Plaintiffs,

v.

BRAD RAFFENSPERGER, ET AL.,

Defendants.

Civil Action No. 1:17-CV-2989-AT

### REPLY BRIEF IN SUPPORT OF COALITION PLAINTIFFS' MOTION TO SEVER, GRANT MOTION FOR ATTORNEY'S FEES, GRANT MOTION FOR SANCTIONS, AND ENTER FINAL JUDGMENT ON SEVERED CLAIMS

### Summary

Defendants make three arguments in their Joint Response in Opposition to Plaintiffs' Motion to Sever (Doc. 1201).  First, Defendants contend that the Motion to Sever should be denied because Plaintiffs lack standing to bring any of the claims.  Second, Defendants contend that severing the case would be unworkable because it is not clear which claims would be in which case.  Third, Defendants argue that, if severed, the DRE Case should be dismissed as moot, but that, if the case is in fact moot, then the Court will not have the jurisdiction to make such a ruling.  These and other scattered argument that Defendants advance are meritless.

### A.    Standing

Defendants' leading argument is that the Motion to Sever should be denied because Plaintiffs do not have standing to bring either the DRE Case or the Post-DRE Case.   (Doc. 1201, at 6–10).  This Court, however, has already ruled on this issue multiple times, properly holding on each occasion that Plaintiffs had standing to challenge the DREs and the BMDs.  (*See generally* Doc. 751, at 34–45 (denying motion to dismiss BMD claims on the basis of standing); *Curling v. Kemp,* 334 F. Supp. 3d 1303, 1314 (N.D. Ga. 2018) (holding Plaintiffs had standing to obtain preliminary injunction of the DREs); *see also* Doc. 579, at 13.).  The Motion to Sever does not raise any new standing-related issues; whether or not the Motion to Sever is granted, Plaintiffs will still be required to establish ongoing standing to prevail on their Post-DRE Claims.  Unless and until the Court's rulings on standing are reconsidered by this Court or reversed on appeal, neither of which is warranted, motions like this one and the Plaintiffs' pending motion for an extension of discovery should be considered without the Court and the Plaintiffs having to revisit and address anew the decided issue of standing each and every time.

Defendants appear to be arguing here, as they have stubbornly insisted on doing in nearly all their other briefs, whatever the topic, that it is somehow unfair to make the Defendants litigate this case when, they believe, the Eleventh Circuit may ultimately hold that Plaintiffs do not have standing.  If Defendants desired an

appellate ruling on standing prior to further litigation, however, they could have appealed the Court's granting of Plaintiffs' motion for preliminary injunction on the DREs on standing grounds two years ago. But they did not make that choice and instead decided to continue litigating. They will next have the opportunity to challenge standing when summary judgment motions are due, but until that time, the issue of standing has been resolved.  More to the point, if a more expeditious appellate consideration of the standing issue were likely to be beneficial to their case (as Defendants apparently believe), then their better move would be to join Plaintiffs in urging the Court to grant the Motion to Sever, for doing so is the best way to expedite any appellate review on the issue of standing in the DRE Case.

The standing argument, therefore, is a red herring.  If this Court is nevertheless inclined to reconsider Plaintiffs' standing in order to decide this Motion to Sever, Plaintiffs would submit the following:  First, Plaintiffs have thoroughly addressed Defendants' standing arguments based on recent Eleventh Circuit precedent in prior briefing and in prior hearings.  (Doc. 1071; Transcript (Feb. 2, 2020 Hearing), Doc. 1160, at 20 - 22).  Second, Coalition Plaintiffs emphasize again that none of the Defendants' standing arguments attempt to address Coalition Plaintiffs' undeniable—and independently sufficient—grounds establishing the Coalition for Good Governance's organizational standing, which is

unaffected by any reading of the Eleventh Circuit's opinion in *Wood v. Raffensperger,* 981 F.3d 1307 (11th Cir. 2020).  (*See* Doc. 1071 at 15).

Third and finally, Plaintiffs have demonstrated clear standing, both on the part of individual Plaintiffs with injuries-in-fact and on the part of identified non-party individual members whose personal injuries-in-fact confer associational standing upon Coalition for Good Governance. Such individuals' injuries-in-fact include the individualized specific burdens of voting by absentee ballot to avoid touchscreen voting detailed by the Coalition Plaintiffs in their referenced Standing Brief; individual burdens resulting from the state law prohibition on marking an absentee ballot on Election Day (even if it is to be returned in person on Election Day, *see* O.C.G.A. §21-2-385(a)); individualized burdens suffered in order to apply for, return, and track absentee ballots; some individual members' loss of the social benefits of neighborhood polling place voting; and the particularized burdens borne by certain individuals with specific privacy-related concerns forced to vote on non-secret touchscreen BMDs in polling places. Given the numerous clear Article III injuries sustained by the Coalition for Good Governance as an organization and by certain of its members and the individual voter Plaintiffs, Plaintiffs have easily established standing without any need to prove the actual hacking of the BMD system or to show that the State disenfranchised particular Plaintiffs by miscounting their private and anonymous ballots.  The State's

suggestion that a hack of the voting system must be definitively proven, or that any individual voter's ballot must be de-anonymized and shown to have been miscounted is not, and should never be, the law.

## B.    Clarity of Definition of Severed Claims

Next, Defendants argue that severing the case would be unworkable because it will not be clear whether a particular claim is in the DRE Case or in the Post-DRE Case.   (Doc. 1201 at 2–3, 10–14).  But the only claims that Defendants identify as to which this objection applies are claims relating to the State's voter registration database and the State's continuing use of electronic pollbooks without paper pollbook backups.  Defendants' concerns are overblown, for an order granting the Motion to Sever will resolve the question since both of these claims are explicitly defined as being in the Post-DRE Case.  It makes perfect sense for those claims to be adjudicated in the Post-DRE Case because, simply, the State's voter registration database which populates the current electronic pollbooks are "Post-DRE" in that it survived the mothballing of the DREs and the transition to the Dominion system and is still in use by Defendants today.

Defendants make a number of particularly unpersuasive points about the clarity of Plaintiffs' proposed definition of the severed cases.  First, Defendants argue that the Motion to Sever should be denied because Plaintiffs have not adequately pled their challenges to the State's voter registration database or use of

electronic pollbooks without paper pollbook backups.   As the Defendants grudgingly acknowledge, however, this Court has already ruled against them on this precise issue by holding repeatedly that Plaintiffs' DRE and BMD complaints clearly encompass challenges to voting obstacles presented by Georgia's voter registration system and by both the old and new voting systems' electronic pollbooks.  (*See, e.g.*, Doc. 579, at 88–89; Doc. 751, at 20–25; Doc. 918, at 4; Doc. 1201, at 12 n. 5).  Indeed, this Court has not only rejected Defendants' arguments on the pleadings, in two separate Orders, one on appeal and one never appealed, it granted affirmative preliminary injunctive relief to the Plaintiffs on these specific claims.   (Doc. 579, at 150 (enjoining State to develop a plan to address errors in the voter registration database); Doc. 918 (enjoining State from using electronic pollbooks without paper backups)).

Moreover, even if the Court had not already rejected Defendant's scope argument, the adequacy of the pleadings on these claims would be unrelated to whether the case should be severed.  Severing and dismissing the DRE Claims will have no retroactive impact upon the (already established) adequacy of the pleadings.

Second, as Plaintiffs anticipated in their initial brief in support of the motion, Defendants now contend that because discovery in the Post-DRE Case may touch upon the DREs, the DRE Claims should not be severed from the Post-DRE Claims.

This is a non sequitur for the reasons Plaintiffs already explained.   Severance of the DRE Claims says nothing about what evidence may or may not be relevant to the Post-DRE Claims. Whether the Motion to Sever is granted or not, Plaintiffs are entitled to discovery of evidence that is "of consequence in determining the action," Fed. R. Evid. 401(b).  Evidence that is only probative of a moot claim is *not* "of consequence in determining the action."  Evidence that is probative of the Post-DRE claims is discoverable, whether or not the case is severed.  The calculation at the heart of Defendants' argument is apparent in the reality that Defendants will never concede that, if the Motion to Sever is denied, then DRE discovery should be permitted.

Finally, Defendants make several more arguments challenging the lack of distinction between the severed cases that are simply nonsensical.  For example, Defendants argue that granting the Motion to Sever "will leave the Defendants guessing as to what, exactly, they are defending against in either of the severed suits."  (Doc. 1201 at 12).  To the contrary: Defendants will be defending against *no* claims in the DRE Case because those claims have been resolved and will be dismissed as moot.  And, in the Post-DRE Case, Defendants will be defending against the *same* claims that they are defending against now and that they will continue to defend against if the Motion to Sever is *not* granted: the claims

challenging the voter registration database and the electronic pollbooks, as well as all the other components of the Dominion BMD system that are being challenged.

Defendants also argue that if the Motion to Sever is granted, common questions of law and fact will "remain as to both sets of claims."  (Doc. 1201, at 13).  Again, this argument misses the point of the requested severance entirely: there will be no questions of law or fact remaining in the DRE Case because that case is resolved and will be dismissed.  Defendants argue that granting the Motion to Sever would be improper because "[d]iscovery has not concluded, and the parties have not filed motions for summary judgment."  (Doc. 1021, at 3).  This is nonsensical: Defendants are the ones who have insisted for over a year that all further DRE discovery is unnecessary and should not even be allowed; granting the Motion to Sever will have no impact on the discovery that is left to be done or upon the Defendants' ability to move for summary judgment on the claims that remain unresolved.

In sum, the claims to be severed are well defined and are obvious to all parties.  There is no claim with respect to which any genuine question can arise as to whether it has been severed and dismissed.

### C.    Post-Severance Disposition of the DRE Case

In their final argument, Defendants feign confusion over exactly what relief Plaintiffs seek following the granting of the Motion to Sever.  (Doc. 1201, at 14

(stating that the relief sought is "unknown" and the motion is "insufficiently vague" [*sic*])).  On the contrary, Plaintiffs' Motion is very clear: Plaintiffs urge the Court to dispose of the only motions that remain pending in the DRE Case (namely, the Joint Motion for Sanctions and Plaintiffs' motions for attorney's fees), to dismiss the case as moot, and then to enter final judgment. (*See* Doc. 1182-1, at 1 (title) and 14).

Defendants initially agree that the DRE Case is moot, but then they make the strange leap of arguing that because the DRE Case is moot, the Court therefore has no power to take any action at all in the DRE Case – not even the power to enter final judgment.  (Doc. 1201, at 14-15) (arguing that since the DRE Case is moot, the Court is "depriv[ed] of jurisdiction to enter a final order on those claims"). Defendants obviously misapprehend the law: the Court always has the jurisdiction to determine its own jurisdiction and to act based on that determination, even when – indeed, especially when – the Court determines that it lacks subject matter jurisdiction.   Yet immediately after arguing that mootness deprives the Court of jurisdiction to dismiss the case or enter final judgment, Defendants reverse course, correctly stating that once the Court determines that the DRE Case is moot, the Court not only may, but must, dismiss the DRE Case and enter final judgment – precisely the relief that Plaintiffs seek in their Motion.

Defendants' convoluted discussion of the Court's power to enter final judgment seems most likely to be an attempt to engineer the argument that, once the DRE Case is recognized as moot, the Court does not have jurisdiction to award fees. This is not the law. *See, e.g.*, *Ketterle v. B.P. Oil, Inc.*, 909 F.2d 425, 430 (11th Cir. 1990) ("While the issues dealing with the merits of the case were moot, the court acknowledged in its November 15, 1988 order that it retained jurisdiction to determine the question of attorney fee awards. Thus, the question of attorney fees was not moot."); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009) ("When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still "prevailing parties" for the purposes of attorney's fees for the district court litigation.").

Judge William Pryor's opinion for the Eleventh Circuit in *Common Cause, Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009), is particularly instructive because that case, like this one, involves complex election litigation in which the plaintiffs' success on the merits of a preliminary injunction caused the defendant to take action that mooted the claims. In this case, that action was mothballing the DREs, whereas in *Billups* it was the State's repeal of the offending law. In *Common Cause*, the district court preliminarily enjoined the enforcement of Georgia's voter identification law. After the entry of the preliminary injunction,

the state repealed the law and replaced it with another voter identification law. The plaintiffs amended their complaint to challenge the new law. The district court dismissed the plaintiffs' claims challenging the prior law as moot and rejected the challenge to the new law on the merits. The district court, however, granted the plaintiffs' motion for attorney's fees based on the prior preliminary injunction of the repealed law, even though that claim was mooted by the passage of the new law.

On appeal in *Common Cause*, Georgia argued that the plaintiffs were not entitled to fees because, although they had obtained a preliminary injunction, "they did not succeed on the merits of their complaint." 554 F.3d at 1356. The Eleventh Circuit rejected the argument, holding that "'a preliminary injunction on the merits . . . entitled one to prevailing party status and an award of attorney's fees.'" *Id.* (quoting *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987)). The Eleventh Circuit ruled that the plaintiffs had "materially altered their relationship with the election officials" because the "injunction prevented Georgia from enforcing the requirement of photo identification for in-person voting." Georgia's subsequent repeal of the law did not undo plaintiffs' victory achieved at the preliminary injunction stage.

Also on point is Judge Cohen's recent decision in *Gonzalez v. Kemp,* 470 F. Supp. 3d 1343 (N.D. Ga. 2020). In *Gonzalez,* the District Court granted plaintiffs'

motion to preliminarily enjoin the enforcement of a state statute allowing the Governor to appoint district attorneys because the statute was contrary to the Georgia Constitution and, therefore, violated the Due Process Clause of the Fourteenth Amendment under *Duncan v. Poythress,* 657 F.2d 691 (5th Cir. 1981).[1]

After prevailing in an appeal of the preliminary injunction in which the statute was struck down, the plaintiff moved for a permanent injunction and for an award of attorney's fees, but the state moved to dismiss the case as moot since the statute could no longer be enforced.  Judge Cohen agreed with the State that the case was moot and accordingly granted the State's motion to dismiss the case as moot.  As in *Billups,* however, the mootness of the case had no impact upon the propriety of, or the Court's power to award fees.  Instead, Judge Cohen went on to grant the plaintiff's motion for attorney's fees based on their success in obtaining the preliminary injunction.   (No. 20-cv-2118-MHC, Doc. 70 at 11).  After entering the order granting the motion to dismiss and granting the plaintiffs' motion for fees, Judge Cohen then entered final judgment in the case.  (*Id.,* Doc. 71).

---

[1] "It is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment." *Duncan,* 657 F.2d at 703-04.

The relief that Plaintiffs seek – severance, rulings on the pending motions, then dismissal and final judgment – is therefore jurisdictionally sound, procedurally proper, and well supported by Eleventh Circuit precedent.

### D.     The Court Should Exercise its Discretion and Grant the Motion

In sum, Defendants have identified no procedural, jurisdictional, or practical reasons for denying the Motion to Sever.   The Motion rests within the "unfettered discretion" of the Court.  *Fisher v. Ciba Speciality Chemicals Corp.,* 245 F.R.D. 539, 541 (S.D. Ala. 2007) (quoting *Grisby v. Kane,* 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003)).   The Court should exercise its discretion to grant the Motion to Sever because doing so will effectuate one of the primary objectives of Rule 21, which is to facilitate the entry of final judgment on a discrete portion of a case that has been fully adjudicated.  WRIGHT, MILLER, AND KANE, 7 FED. PRAC. & PROC. CIV. § 1689 (3d ed.).  Granting the Motion also is consistent with all of the various tests that courts have articulated for determining whether to sever a case.[2]

---

[2] *See Turner Const. Co. v. Brian Termatore Plumbing & Heating, Inc.,* 2009 WL 3233533 at *4 (D. N.J. Oct. 5, 2009):

>  "In deciding whether to grant a severance, the court is required to balance the factors of benefit and prejudice that will result from the alternative courses." *Cruzan Terraces, Inc. v. Antilles Ins., Inc.*, 138 F.R.D. 64, 65 (D.Vi.1991). "Specific factors are '(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted.' " *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D.

Defendants criticize Plaintiffs for their motivation in seeking to sever the case, which is to expedite a ruling on their pending Joint Motion for Sanctions and their Motions for Attorney's Fees.   Plaintiffs have no objection to that characterization of their motivation.  As Plaintiffs have repeatedly expressed, these motions are ripe for determination, time-sensitive given the purposes of Rule 37 and 28 U.S.C. § 1988, and plainly meritorious.  Defendants' argument for continued postponement of the Court's decisions on these motions, however, exposes that Defendants' own true motivation for opposing severance is to achieve continued delay, which is inconsistent with fairness, judicial policy, and the civil rules, particularly Rule 1.

Rule 1 commands that all the Federal Rules, including Rule 21, must be "employed" "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Here, employing Rule 21 to sever the case, without any doubt, will advance the "just, speedy, and inexpensive" resolution of the DRE Case. It will also curtail the State's ongoing, cynical employment of the calendar

---

352, 355 (E.D.Pa.2000) (quoting *German v. Fed. Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1400 (S.D.N.Y.1995)). See also *Sutton Hill Assocs. v. Landes*, No. 87–cv–8452, 1988 U.S. Dist. LEXIS 4746, at *5 (S.D.N.Y. May 25, 1998) (noting that courts ruling on a motion to bifurcate consider these same factors). No one factor is determinative, and a court must consider the "overall equities" of a case in ruling on a motion to sever or bifurcate. *Rodin*, 49 F.Supp.2d at 721.

and its own inexhaustible resources to continually postpone final adjudication of

the Plaintiffs meritorious claims.

The Motion should be granted.

Respectfully submitted this 15th day of November, 2021.

/s/ Bruce P. Brown                          /s/ Robert A. McGuire, III
Bruce P. Brown                              Robert A. McGuire, III
Georgia Bar No. 064460                      Admitted Pro Hac Vice
BRUCE P. BROWN LAW LLC                        (ECF No. 125)
1123 Zonolite Rd. NE                        ROBERT MCGUIRE LAW FIRM
Suite 6                                     113 Cherry St. #86685
Atlanta, Georgia 30306                      Seattle, Washington 98104-2205
(404) 386-6856                              (253) 267-8530

*Counsel for Coalition for Good Governance*

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
ICHTER DAVIS LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600

*Counsel for William Digges III, Laura Digges,*
*Ricardo Davis & Megan Missett*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DONNA CURLING, ET AL.,**
**Plaintiffs,**

**v.**

**BRAD RAFFENSPERGER, ET AL.,**
**Defendants.**

**Civil Action No. 1:17-CV-2989-AT**

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on November 15, 2021, I electronically filed with the Clerk of Court a copy of the foregoing using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record. In addition, pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown