IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*,

    Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.*,

    Defendants.

CIVIL ACTION NO.
1:17-cv-2989-AT

**ORDER**

    This matter is before the Court on R. Kyle Ardoin's Motion to Intervene in his Official Capacity as the Louisiana Secretary of State [Doc. 1243]. The Louisiana Secretary of State ("LA Secretary of State") seeks to intervene in this case for the limited purpose of obtaining access to a provisionally sealed report (Doc. 1131) issued by cybersecurity expert Dr. J. Alex Halderman on behalf of the Curling Plaintiffs.

    In his motion, the LA Secretary of State argues that he has a compelling interest in accessing Dr. Halderman's report because it details multiple potential security flaws in Dominion ICX's ballot marking device machines, which the State of Louisiana utilizes for early voting. The LA Secretary of State emphasizes that in a subsequent declaration Dr. Halderman "specifically identifie[d] Louisiana as one

of the states at risk from the potential cybersecurity threats." (Doc. 1243-1 at 3–4.) And he contends that "[a]ccess to Dr. Halderman's report would enable Louisiana to review his findings, and possibly mitigate some of these potential vulnerabilities in connection with the upcoming 2022 elections." (*Id.* at 3.)

In a response to the LA Secretary of State's motion, the State Defendants in this case argue that "Dr. Halderman's purported reference to the voting machines used for early voting in Louisiana is not a reason to grant Intervener's motion under Federal Rule of Civil Procedure 24(b)." (Doc. 1244 at 1–2.) Under Rule 24(b), "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Accordingly, the State Defendants contend, "Because [the LA Secretary of State] does not have a claim or defense that shares with the main action a common question of law or fact, permissive intervention under Rule 24(b)(1)(B) is not appropriate." (Doc. 1244 at 2.)

However, as the LA Secretary of State notes, courts have applied a more relaxed approach to Rule 24's requirements where, as in this case, the movant seeks to intervene for the limited purpose of requesting access to documents subject to a confidentiality order. For example, in *Beckman Industries, Inc. v. International Insurance Co.*, 966 F.2d 470 (9th Cir. 1992), the intervenors sought to intervene in the case for the limited purpose of modifying a protective order. Like the State Defendants here, the defendant in that case argued that the

intervenors had failed to satisfy Rule 24's requirements for permissive intervention because they had failed to identify a claim or defense that was relevant to the action. *Id.* at 473–74. But the court found that "[t]here is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." *Id.* at 474. The court opined that "no independent jurisdictional basis" was required because the intervenors were not requesting that the court either rule on additional claims or make them parties to the action. *Id.* at 473. They were simply asking the court to exercise a power that it already had — "the power to modify the protective order." *Id.*; *see also* 7C Charles Allen Wright et al., Federal Practice and Procedure § 1917 (3d ed. 1998) ("A narrow exception to the rule that permissive intervention generally requires an independent jurisdictional basis is when a third party seeks to intervene for the limited purpose of obtaining access to documents protected by a confidentiality order.").

Similarly, in *E.E.O.C. v. National Children's Center, Inc.*, 146 F.3d 1042 (D.C. Cir. 1998), the court observed that "despite the lack of a clear fit with the literal terms of Rule 24(b)" in these circumstances, "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." *Id.* at 1045. Adopting a "flexible approach" toward permissible intervention under Rule 24, and recognizing the "longstanding tradition of public access to court records," the court construed the Rule as providing "an avenue for third parties to

3

have their day in court to contest the scope or need for confidentiality." *Id.* at 1046 (internal quotations marks and citations omitted).

On the other hand, even under this more "flexible approach" to Rule 24, "permissive intervention is an inherently discretionary enterprise," and courts have discretion to deny motions to permissively intervene even when the requirements of Rule 24 are otherwise satisfied.[1] *Id.* at 1046–48. Notably for purposes of this case, the LA Secretary of State himself acknowledges "the importance of protecting against sensitive voter and cybersecurity information being widely disseminated to the public." (Doc. 1243-1 at 10.) And as the State Defendants point out, this Court has expressed significant concerns about disseminating the information contained in Dr. Halderman's report. In spite of these very real concerns, the LA Secretary of State argues that the common law right of public access and the potential injury to voters in the State of Louisiana outweigh any interest in preventing him from accessing Dr. Halderman's report. While the Court gives great weight to the right of public access to information filed on the docket and the public interest in information regarding elections, it is not persuaded under the specific circumstances presented here that the petitioners' intervention motion should be granted.

As the LA Secretary of State concedes, the common law right of public access is not absolute; the Court must also consider a number of competing interests that may weigh against disclosure. Those factors include "whether allowing access

---

[1] The Court takes no position on whether the LA Secretary of State's motion was timely.

4

would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." (*Id.* at 9–10) (citing *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007)). The LA Secretary of State argues that a "less onerous alternative" would be granting him access to Dr. Halderman's report subject to the Court's Protective Order. However, the Court remains concerned about the risks associated with further dissemination of the report.[2] As the Court stated during a prior hearing in which the Coalition Plaintiffs sought to further disseminate the same report, "[a]s it is, I think that we're on very difficult territory." (Doc. 1143, Tr. at 66:25–67:1.) The Court still believes this to be true. Further disseminating Dr. Halderman's report presents complicated risks. Most importantly, sensitive information in the Report relating to the operation of Dominion's electronic voting software and system could potentially be misused by domestic or foreign hackers or alternatively used for other unlawful or improper purposes. At the current time, if the Court granted the LA Secretary of State access to Dr. Halderman's report, it could also open the floodgates to similar requests from other individuals and entities around the country, which would also increase the potential for hacking and misuse of

---

[2] The Court is not suggesting that the LA Secretary of State would intentionally fail to comply with the Protective Order if he were given access to Dr. Halderman's report.

5

sensitive, confidential election system information. Finally, as discussed below, the LA Secretary of State has other reasonable alternatives for assessing the sufficiency of its election system equipment.

For example, the LA Secretary of State could simply reach out to Dr. Halderman himself and request that Dr. Halderman perform a review of the State's election apparatus or Dominion systems on a retained basis. If anything, a targeted investigation of potential cybersecurity threats to Louisiana's own election system would more directly address the LA Secretary of State's concerns than a written report about the system utilized in Georgia. And even if as the LA Secretary of State argues, "the level of analysis and investigation by Dr. Halderman, and other experts, of the Dominion ICX voting system has never occurred previously," (Doc. 1243-1 at 3), that does not mean that a similar analysis and investigation could not be arranged in the future without the LA Secretary of State intervening in this case. In short, the LA Secretary of State has not established that intervening in this case for the purpose of accessing Dr. Halderman's report is an appropriate means of addressing concerns that actually fall within the scope of the LA Secretary of State's authority to investigate the functionality and any vulnerabilities in Louisiana's election system. Such concerns would be more appropriately addressed by retaining Dr. Halderman and other similarly skilled election cyber engineering experts.

The Court has carefully balanced the factors at play in reviewing the LA Secretary of State's intervention request. Given the particular circumstances and

alternatives discussed in this Order as well as consideration of the briefs and factors discussed, the Court **DENIES** the LA Secretary of State's Motion to Intervene [Doc. 1243].

**IT IS SO ORDERED** this 10th day of January, 2022.

_____
**Honorable Amy Totenberg**
**United States District Judge**