IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*

     *Plaintiffs,*

v.

BRAD RAFFENSPERGER, *et al.*,

     *Defendants.*

CIVIL ACTION

FILE NO. 1:17-CV-2989-AT

## MOTION FOR CLARIFICATION OR MODIFICATION OF THIS COURT'S ORDER, [DOC. 1348]

This Court entered an Order on March 18, 2022, concerning the "important and time-sensitive issue" raised via *ex parte* email by Curling Plaintiffs on December 23, 2020. [Doc. 1348]. State Defendants and their undersigned counsel do not seek reconsideration of that Order. Instead, to protect their clients' interests, State Defendants' counsel must respectfully request the Court clarify the Order to correct the issues discussed further below.

At the outset it is important to note what is not in dispute: (1) Curling Plaintiffs' counsel engaged in substantive *ex parte* written communication with the Court's law clerk about this case and about State Defendants' counsel; (2) State Defendants (and Coalition Plaintiffs) each objected to any

*ex parte* communications before the Curling Plaintiffs' counsel engaged in such conduct; (3) that *ex parte* written communication led to a telephone call between only the Curling Plaintiffs' counsel and the Court's former law clerk; and (4) Curling Plaintiffs repeatedly denied that *ex parte* communications occurred, then denied that they had a record of the communications, and continued to withhold communications indicating the telephone call occurred even after this Court ordered the communications be produced.

In this light, at least three things require this responsive motion. First, State Defendants have, in fact, sought information from Plaintiffs regarding the matter—even though it should not have been their duty to do so—only to be stonewalled and misled entirely. Second, the underlying email, which remains under seal, provided very little, if any, "additional information regarding the proposed subject matter of the requested hearing." [Doc. 1348 at 3]. Rather, the sealed email contains unwarranted attacks on State Defendants and their counsel as a basis for an *ex parte* communication with the Court that itself was obviously inappropriate and improper. Third, State Defendants never requested this Court authorize a deposition of its former clerk.

As counsel noted in the March 11, 2022 conference, this is an issue counsel wishes never had to be addressed. However, it is a not a problem of

State Defendants' making. Indeed, the underlying communications never should have occurred in the first place, but considering that it did occur and was withheld from State Defendants even after a Court Order, any reasonable litigant would be justifiably concerned.

I.    **State Defendants have repeatedly sought information concerning the "important and time-sensitive issue," which should have been immediately disclosed.**

In its Order, the Court explains that neither counsel for State Defendants nor counsel for the Coalition Plaintiffs "filed any letters or motions" immediately following the message to request a copy of it or to seek additional information, [Doc. 1348 at 4], and that State Defendants have always been "free to request information from Curling Plaintiffs' counsel" on the matter, *id.* 6. Respectfully, State Defendants must disagree.

First, before counsel for the Curling Plaintiffs engaged in *ex parte* communications, State Defendants explicitly objected to any communication outside their presence and requested to be copied to the communication at issue. *Id.* at 2–3. This should have ended the issue altogether, but even then, the communication should have been immediately disclosed. *See* Code of Conduct for United States Judges, Canon 3(A)(4); ABA Model Code of Judicial Conduct, Canon 2, Rule 2.9(A).

Nonetheless, because the communication was not disclosed (indeed, it was unclear whether further communication occurred after the State's unequivocal objection), State Defendants sought to understand what happened. As this Court is aware, this case was largely dormant for the first four months of 2021. *See* [Doc. 1087 at 1] (recognizing the "current paralysis in discovery" and "the inchoate status of this case pending the Court's" review of the parties' briefing on standing). Frustrated that this Court was reviewing their standing in the light of recent precedent and that a motions panel of the Eleventh Circuit declined to lift the stay it ordered (raising significant doubts about Plaintiffs' claims in the process), [Doc. 1082-1], Plaintiffs filed a motion for sanctions days later.[1] [Doc. 1083]. That motion prompted the Court to order "abbreviated" discovery, [Doc. 1088], and enter a scheduling order on May 18, 2021, amended on May 20, 2021, [Doc. 1093]. On June 9, 2021, State Defendants re-raised the issue and informed the Court that they remained unaware of the substance. [Doc. 1105 at 6, n.2].

---

[1] Plaintiffs' counsel later explained to the press that the "primary reason they renewed their motion for sanctions" was to obtain discovery, [Doc. 1089-1 at 3], which the Court granted.

Remaining unaware of the *ex parte* communications and their substance, State Defendants then served formal discovery specifically targeted to this issue in August 2021, seeking:

> [a]ll documents or communications related to the "important and time-sensitive issue" raised with the Court … via electronic mail on or about December 23, 2020, including but not limited to any such documents or communications between you and the Court ex parte.

[Doc. 1250-1]. Curling Plaintiffs objected and: (1) claimed they had no documents to produce; (2) informed the State's counsel that responsive documents had not been withheld except for privilege; (3) used a pedantic and unsupported distinction to claim that *ex parte* communications were not withheld; (4) explained that the emails had since been archived and lost; and then (5) finally admitted that "emails" existed and were in their possession but that they would not be disclosed without a Court order. [Doc. 1250].

This dispute ultimately required this Court's involvement and, on January 12, 2022, the Court ordered "Curling Plaintiffs to produce any document(s) or communication(s) responsive to the State Defendants' discovery request". [Doc. 1252]. More than two weeks later, on January 28, 2022, Curling Plaintiffs produced a single message, [Doc. 1328-1], which this Court described as providing "additional information" about their request. [Doc. 1348 at 3]. Despite the Court's order compelling production, Curling

Plaintiffs continued to withhold the subsequent communications indicating a telephone call occurred. Finally, upon another request from the State's counsel, those additional *ex parte* messages were produced on February 25, 2022, more than a month after this Court ordered production. Those communications, [Doc. 1328-2], indicated that a telephone call occurred between Curling Plaintiffs' counsel and the clerk which this Court described as a "courtesy call." [Doc. 1348 at 4]. State Defendants had no knowledge of any "courtesy call" (and had no reason to presume it occurred) until February 25, 2022, when the Curling Plaintiffs belatedly produced their remaining *ex parte* email communications.

In sum, while State Defendants may have been "free to request" this information, that did not mean they would receive a voluntary, forthright response. Nor did it mean State Defendants would even receive a complete disclosure after it was ordered by the Court. Unfortunately, hiding the communications and hiding the fact that a "courtesy call" occurred only further inflamed what was already a sensitive dispute, and further heightened State Defendants' concerns. This Court's Order should be modified to reflect these undisputed facts.

## II.   Curling Plaintiffs' email to the Court was improper and prejudicial.

As this Court noted in its Order, State Defendants—and even Coalition Plaintiffs—timely objected to any substantive discussion with the Court outside of their presence. [Doc. 1348 at 2–3]. Nonetheless, Curling Plaintiffs' counsel sent just such a communication on the evening of December 23, 2020, which this Court described as "providing additional information regarding the proposed subject matter of the requested hearing and the reasons [for] requesting that the hearing be held on a confidential basis with two designated counsel for each of the parties." *Id.* at 3. Respectfully, the substance of that communication was an attack on State Defendants and their counsel in a failed attempt to distinguish their extraordinary request from other cases pending in this District. Further, while the Court's Order notes that circumstances surrounding the request made for "an abbreviated mode of reviewing the Curling Plaintiffs' request," *id.* at 4, that is not the issue of concern. That the communications occurred at all and that, substantively, they were a personal and political attack on State Defendants and their counsel, is the issue of concern.

At most, a single paragraph of Curling Plaintiffs' ten-paragraph missive could be considered as providing any "additional information" and it

7

was nothing more than what Dr. Halderman has already speculated in open court (and others have alleged publicly): that malware could theoretically be implanted on a voting machine and somehow spread its way across thousands of others to alter election outcomes. Never mind that (1) both Dr. Halderman and Dr. Appel confirmed in their depositions they had never seen such self-propagating and adaptable malware; (2) no indication of any actual or imminent compromise was provided because it does not exist; and (3) after espousing the same theory before, Plaintiffs have found **nothing** after their examination of DREs and GEMS databases.

More concerning is that the remainder of the Curling Plaintiffs' message devolves into an attack on the credibility of State Defendants and "some of the lawyers" representing them. Left unsaid is what State Defendants and their counsel were doing on December 23, 2020: moving to dismiss the second case of L. Lin Wood, Jr., and responding to his motion to enjoin use of Georgia's Dominion Voting System for the runoff elections because he claimed it had been hacked, *Wood v. Raffensperger*, No. 1:20-cv-05155-TCB, ECF No. 25 (N.D. Ga. Dec. 23, 2020) (Defs.' Consolidated Mot. to Dismiss and Resp. in Opp. to Preliminary Inj.), just as State Defendants and their counsel had already done before, *Pearson v. Kemp*, No. 1:20-cv-04809-

TCB (N.D. Ga.).[2] In both cases, whether justified or not, those Plaintiffs simply parroted the allegations brought by the Plaintiffs in this lawsuit, asserting nearly identical claims, *see, e.g.*, [Doc. 1147], and relying heavily upon their experts' speculation in this case, *id.* at 3, n.3. The *ex parte* communications attempting to distinguish Plaintiffs' request from those cases was therefore indisputably substantive. Moreover though, it was a personal attack which should have never been offered, much less offered *ex parte*.

This Court should modify its Order to make clear that counsel's *ex parte* communication was improper as a matter of both procedure and substance. As it stands, the Court's Order implicitly condones such conduct: excusing its occurrence on account of COVID, Christmas, and pending elections, [Doc. 1348 at 4], and brushing aside its wholly inappropriate substance as "reasons" for requesting a confidential hearing. [Doc. 1348 at 3]. That the Court is sitting as the fact-finder in this case only underscores this problematic reaction to a message seeking to undermine the credibility of State Defendants and their counsel, outside of their presence. This Court further should modify its Order to accurately explain the substance of the

---

[2] Perhaps Curling Plaintiffs' lead counsel was unaware of this fact, but other counsel knew, participating in the same case as local counsel for intervenors.

message or, to remove all doubt, release it from the confidential designation.
[Doc. 1252 at n.1].

## III.  State Defendants have never requested discovery from the Court.

In its Order, the Court attributes to State Defendants an
"extraordinary request that the Court authorize a deposition of the Court's
former judicial law clerk." [Doc. 1348 at 2]. But State Defendants never asked
this Court to authorize such a deposition—it was Plaintiffs who contorted the
State's quest for clarity on Curling Plaintiffs' substantive communications
with the Court into such an inflammatory matter.

On February 25, 2022, after numerous denials of any communications
and unjustifiable delay in producing the *ex parte* communications, the
Curling Plaintiffs finally completed the production this Court compelled a
month prior. [Doc. 1252]. Within a week of that production, State Defendants
noted that the contents of the messages, coupled with Curling Plaintiffs'
attempt to hide that a telephone call ever occurred, required "further
discovery to (1) confirm completion of the production; (2) confirm that no
other *ex parte* communications have occurred; and (3) understand the nature
of a telephone call referenced therein." [Doc. 1327 at 4].

This Court then directed the parties to confer regarding outstanding discovery; the parties conferred on March 10, 2022. The next day, **Plaintiffs** included in **their portion** of the "joint" submission that "State Defendants informed Plaintiffs that they seek to depose this Court's former judicial clerk." [Doc. 1340 at 8]. This is incorrect. During the conference the day before, State Defendants' counsel stated that, in order to protect their clients' interests, they needed to understand what was discussed on that phone call and that, from the State's perspective, it would probably require a deposition of someone who was on the call. State Defendants' counsel even suggested that Curling Plaintiffs' counsel on the call could provide an affidavit instead. In fact, Curling Plaintiffs' counsel indicated he would do so but at that point it was Coalition Plaintiffs' counsel that jumped in to demand State Defendants seek a deposition of the clerk. Plaintiffs then included that information as fact in **their portion** of the "joint" filing which, due to simultaneous exchange of each party's portions and the understanding that each party had sole control over their own portion, State Defendants' counsel did not have the opportunity to rebut or correct.[3] Notably, however, State

---

[3] It is also of note that the parties simultaneously provided portions shortly after 9 a.m. on March 11, 2022, in advance of the 10 a.m. deadline for filing, which Curling Plaintiffs completed.

Defendants' portion of that filing, [Doc. 1340 at 15–16], did not "request that the Court authorize a deposition of the Court's former judicial law clerk" or seek "her provision of an affidavit." [Doc. 1348 at 2].

To be abundantly clear, State Defendants intended to depose, obtain an affidavit, or obtain an explanation in open court from counsel on the call. And State Defendants maintain this is a justified response to the material and substantive *ex parte* communications. Adding to State Defendants' reasonable concerns was that Curling Plaintiffs repeatedly failed to comply with the Court's order for production—continuing to withhold the responsive communications indicating a telephone call occurred—as State Defendants explained on March 4, 2022, [Doc. 1327 at 3–4], and in **their** portion of the filing on March 11, 2022, [Doc. 1340 at 15–16].

## CONCLUSION

This Court's March 18, 2022 Order deriding State Defendants' "backhanded" and "extraordinary" request to understand what, exactly, occurred in *ex parte* communications between Curling Plaintiffs and the Court shows precisely why State Defendants proceeded cautiously and only brought the matter to the Court as a last resort. Unfortunately, doing so appears to have made matters worse, obfuscating the actual issue of concern and the reasonable basis for that concern. State Defendants respectfully ask

the Court to amend or modify its order to clarify: (1) that State Defendants

did, in fact, seek disclosure of the communications which were still withheld

in spite of a Court order; (2) that the communications were improper both as

a matter of procedure and substance; and (3) that State Defendants did not

request this Court authorize a deposition of the Court's staff. Further, to

remove all dispute over the substance of those communications, the Court

should redact the identifying information of the Court's clerk and remove the

confidential designation it applied, [Doc. 1252 at n.1], so that the record is

clear on what was requested and why.

Respectfully submitted this 23rd day of March 2022.

*/s/Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
James A. Balli
Georgia Bar No. 035828
jballi@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise

*/s/Vincent R. Russo*
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Joshua B. Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander F. Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
ROBBINS ALLOY BELINFANTE
LITTLEFIELD LLC
500 14th Street, N.W.
Atlanta, Georgia 30318

Georgia Bar No. 382202                    Telephone: (678) 701-9381
lparadise@taylorenglish.com               Facsimile:  (404) 856-3255
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: 678-336-7249


*Counsel for State Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Motion has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Vincent R. Russo*
Vincent R. Russo