The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION


DONNA CURLING, ET AL.,            :
                                  :
         PLAINTIFFS,              :
vs.                               :  DOCKET NUMBER
                                  :  1:17-CV-2989-AT
BRAD RAFFENSPERGER, ET AL.,       :
                                  :
         DEFENDANTS.              :
```

**TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

**BEFORE THE HONORABLE AMY TOTENBERG**

**UNITED STATES DISTRICT SENIOR JUDGE**

**JANUARY 31, 2022**

**5:55 P.M.**

*MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

*TRANSCRIPT PRODUCED BY:*

*OFFICIAL COURT REPORTER:    SHANNON R. WELCH, RMR, CRR*
*                            2394 UNITED STATES COURTHOUSE*
*                            75 TED TURNER DRIVE, SOUTHWEST*
*                            ATLANTA, GEORGIA  30303*
*                            (404) 215-1383*

```
 1              A P P E A R A N C E S   O F   C O U N S E L

 2

 3   FOR THE PLAINTIFFS DONNA CURLING, DONNA PRICE, JEFFREY
     SCHOENBERG:
 4

 5         DAVID D. CROSS
           MORRISON & FOERSTER, LLP
 6
           HALSEY KNAPP
 7         ADAM M. SPARKS
           KREVOLIN & HORST, LLC
 8

 9

10   FOR THE PLAINTIFFS COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
     WILLIAM DIGGES, III, AND RICARDO DAVIS:
11

12         BRUCE BROWN
           BRUCE P. BROWN LAW
13
           ROBERT ALEXANDER McGUIRE, III
14         ROBERT McGUIRE LAW FIRM

15

16   FOR THE STATE OF GEORGIA DEFENDANTS:

17
           VINCENT ROBERT RUSSO, JR.
18         CAREY A. MILLER
           JAVIER PICO-PRATS
19         ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD, LLC

20
           BRYAN P. TYSON
21         TAYLOR ENGLISH DUMA

22
     FOR THE FULTON COUNTY DEFENDANTS:
23

24         DAVID LOWMAN
           CHERYL RINGER
25
```

1          **P R O C E E D I N G S**

2     **(Atlanta, Fulton County, Georgia; January 31, 2022.)**

3              THE COURT:  Thank you-all for making yourselves

4     available at such late notice.

5              So I was reviewing anew the materials in front of me.

6     And I'm struck, as I read them, by really the fact that I need

7     to understand more specifically some information in response to

8     some -- a few questions.

9              First of all, did -- is what was provided to me -- I

10    realize there were some things redacted.  But that doesn't

11    appear to be the abridged version that Dr. Halderman was

12    referencing in his affidavit in November that would be

13    something he could do in order to make this -- what he said was

14    more of the standard of what you would give to the public and

15    where there was highly sensitive information.

16             Now, maybe he thinks it is.  I don't know.  But I

17    can't tell from this that that is what I have been provided.

18    It doesn't look like that.

19             MR. CROSS:  Your Honor, this is David Cross.  My

20    understanding of what we provided and what you have is a

21    version of Dr. Halderman's report that redacts only certain

22    portions and in particular the portions that would identify the

23    steps for implementing a certain vulnerability that is

24    discussed at any point.

25             And we withdrew all confidentiality designations for

1  the remainder of the report meaning everything that is not
2  redacted.  So what you have Dr. Halderman is comfortable with
3  that eventually becoming public sort of in the right way at the
4  right time, as we have described before.
5              And I did have an opportunity to talk with
6  Dr. Halderman and Dr. Springall who helped him on this over the
7  weekend.
8              If it helps, I can tell you what our thinking is now
9  having had time to talk through this.
10             THE COURT:  Okay.
11             MR. CROSS:  Your Honor may recall that there was a
12 letter that came in from CISA sometime within the last few
13 weeks directing -- describing the process that they have in
14 place.
15             THE COURT: Can you explain -- no.  No.  Can you
16 explain who the letter was from?  It just -- it slipped out of
17 your mouth.
18             MR. CROSS:  Oh, I'm sorry.  The letter was -- the
19 letter was from CISA, C-I-S-A, the cybersecurity and -- the DHS
20 agency that deals with the election issues.
21             You remember this letter that came in?
22             THE COURT:  I do.  But I just -- the record will not
23 be clear.
24                  **(Unintelligible cross-talk)**
25             MR. CROSS:  I'm sorry.

1          THE COURT:  The agency that deals particularly with
2  election security issues.
3          Is that what you are saying?
4          MR. CROSS:  It is.  It is the cybersecurity or
5  information security agency.
6          So the thought that we had, Your Honor, is CISA is
7  really still in our view the best way to address this and get
8  it to the right people in the right way and ultimately to get
9  it into the public.
10         And the proposal we would make is this:  Allow
11 Dr. Halderman to submit the report to CISA through the process
12 that is in place for this as described in that letter from the
13 agency itself.  Give them a period of say 60 to 90 days at the
14 most to run through their normal processes.  That allows them
15 to connect with Dominion, to connect with secretaries of state,
16 and jurisdictions that have these machines that want to address
17 this, like Louisiana.
18         And then it sets a clock at which point the redacted
19 version of the report or some redacted version of the report
20 would become public.  And it also gives Your Honor an
21 opportunity to spend more time and to parse this together to
22 figure out what that redacted version looks like.
23         Again, we have put -- we have given to the State, I
24 think, November of last year what we think that should look
25 like, what should become public.  But we're happy to work with

1  the State and Your Honor and Dominion and the others to figure
2  that out as well.
3              But that is the proposal we would make is get it to
4  CISA immediately and give them a reasonable period to go
5  through their processes.  And then it becomes public within the
6  next two to three months.
7              THE COURT:  Okay.  Thank you.
8              Did you have --
9              MR. CROSS:  Your Honor, I should be clear.  Sorry.  I
10 should be clear.  I'm speaking for my clients, for the Curling
11 plaintiffs.  I have not had a chance to discuss this with the
12 Coalition plaintiffs.  So I just want to make sure I'm not
13 speaking for all plaintiffs on that proposal.
14             THE COURT:  All right.  Well, let me hear from the
15 Coalition plaintiffs next, and then I'll ask a few questions
16 from defense counsel.
17             Do you have any problem with that proposal?
18             MR. BROWN:  Your Honor, this is Bruce Brown from the
19 Coalition plaintiffs.  We certainly understand the wisdom of
20 going through CISA.  We are concerned and haven't heard any --
21             COURT REPORTER:  I'm sorry, Mr. Brown.  I need you to
22 speak up, please, sir.
23             MR. BROWN:  I'm sorry, Ms. Welch.  Can you hear me
24 better now?
25             COURT REPORTER:  A little better.  Just really try

1  to --
2              MR. BROWN:  Okay.  I have not had a chance to talk
3  about this particular proposal with my client.
4              Our concern -- we do see the wisdom in going through
5  CISA for the reasons that Mr. Cross expressed.  However, our
6  concern would be with how long it will take for CISA to get
7  through their processes and also that there's -- from just this
8  litigation standpoint, there does not seem to be a party,
9  including the Secretary, who is objecting to a more expeditious
10 disclosure of this.
11             THE COURT:  Okay.  Did -- Mr. Cross, did you have an
12 opportunity to talk with counsel for the State regarding this
13 possibility or this option?
14             I know you have relayed it as your preferred way of
15 proceeding before.  I understand that.  So I'm not -- but I
16 just meant right now.
17             MR. CROSS:  Right.  No, Your Honor, we did not
18 have -- unfortunately I was tied up in the Fulton County
19 deposition and then a board meeting today.  So I did not have a
20 chance to take this to the State or Fulton County.
21             THE COURT:  Who is going to be speaking for the
22 State?
23             MR. TYSON:  Your Honor, this is Bryan Tyson.  I guess
24 I'll start off and let Mr. Russo and Mr. Miller jump in as
25 needed.

1    So this is the first time we're hearing of this.  I
2 think that we have some concerns similar to that of the
3 Coalition.  We have talked a lot in this case about the
4 constant need for confidence in the election system and the
5 balance between security and trying to, you know, meet all of
6 those different obligations.
7    Your Honor obviously, over our objection, gave
8 Dr. Halderman access to the equipment.  And then I think it is
9 important for people to realize that the reason why the report
10 is marked attorneys' eyes only is because any result of the
11 analysis of that process of the equipment was going to be
12 marked attorneys' eyes only before we knew what it was going to
13 say.  So it wasn't marked that way particularly for what is in
14 it.
15    That being said, I think we're at a point now where
16 we have similar concerns to that of Mr. Brown.  If it is going
17 to be another two or three months where this is going to drag
18 out, the Secretary is in a position where -- and you have seen
19 his comments obviously -- he has made the call that for voter
20 confidence we need to get this where the people can actually
21 respond to it.
22    And I think that's the key from the Secretary's
23 perspective.  Going through CISA is fine.  I don't think we
24 have a problem with that.  But waiting for two or three months
25 before we are able to work through that process just seems like

1   it is going to be doing further damage to kind of the rumors
2   and innuendos that swirls around a secret report, as it is
3   being called.
4           THE COURT:  Yeah.  And I don't really -- with all
5   deference to the media, I don't -- normally something that is
6   under seal is not just a secret report but in this -- but I
7   understand that that is -- that is the language.
8           So my concern is this:  I mean, I think that that is
9   a reasonable position to say I want -- we don't have any
10  problem with going forward to have CISA look at this but we
11  need it to happen quicker, particularly because we are veering
12  into an election year also or we are in one.
13          But I do have a concern that the State has often
14  said, well, we haven't gone over this with our clients.  And
15  the plaintiff has made clear they didn't have any objection to
16  your going over it with your client.
17          And my -- I think that that is an important thing for
18  them to have actually -- your client to have actually looked at
19  this information and decided also -- I mean, we are having an
20  informed discussion about this.
21          I don't -- and I talked about this at some length
22  when we all talked on -- I think on November 22nd of
23  '21 about -- at that time we also talked about federal election
24  entities could look at it and I said that they would be capable
25  of maintaining the confidentiality of anything in the report.

1  And I said I want to make that clear 100 percent and that
2  also -- we talked about it also in connection with the State
3  looking at it and Dominion looking at it.  And I know Dominion
4  has now looked at this.
5  But -- but -- and I said at that time that it would
6  all be to the greater good.  But it is not necessarily the
7  greater good of the integrity of -- the reliability of the
8  computer system -- of the voting system or any information
9  technology system basically to be -- have a 100-page
10 single-spaced report that -- that others may use as their own
11 guide for hacking, whether the others are in our own country or
12 in other countries.
13 And I just -- I wasn't confident myself at this
14 point -- but I don't consider myself a world-class
15 cybersecurity expert -- that the very slight modifications made
16 that were proposed by -- in the draft sent to me were going to
17 be sufficient.
18 I mean, I obviously did wrestle with this when we had
19 hearings.  And I tried to get -- make sure that the larger
20 story was provided without -- which all the public is entitled
21 to have and there should be maximum transparency in the
22 election process.  And that has always been my focus.
23 But at the same time, I don't -- you know, there are
24 many people who specialize in hacking.  And I just -- my
25 concern is not giving a roadmap to all of this at the same time

```
1    as making sure that every piece of security possible is
2    available for the election system.
3              So there's -- I think having the State look at the
4    material themselves and also basically saying what they think
5    that -- having your judgment and having you in some ways
6    also -- the State as well as the plaintiffs responsible for
7    making real informed decisions.
8              I don't think -- I understand the Secretary's
9    position, which is a very -- I can understand that completely.
10   But it doesn't take into account because he hasn't
11   apparently -- no one has sat down with him apparently to go
12   through the details of what is in the report.  And I'm not
13   saying it is some secret blowup.
14             It would be meaningless to many people.  And it
15   doesn't have to do with any necessarily what current conspiracy
16   theories are or other theories are about the election process.
17             But, you know, I think I need not just a kind of -- I
18   need to have -- really the State take some responsibility for
19   saying what you think would actually expose the system and make
20   the proper balance between your judgment -- your folks'
21   judgment call about that also.
22             And I think one of the ways of doing this is we could
23   have an expedited CISA process and everyone in the State be
24   part of that and Dominion be part of the process.
25             So I don't know how fast CISA can go, and I don't
```

1   know whether that is something that could be dealt with in part
2   by the Secretary as well as anyone else here who has some -- I
3   mean, Dr. Halderman has also the contact with the folks at
4   CISA.
5           But, you know, I think it is -- I can't -- I can
6   order that -- say it is fine to do it, we would like to do
7   this.  But it is going to require some degree of working out --
8   the process out.  And you-all would need to do that.
9           But my primary concern just in terms of my making the
10  call when I look at this is that I want people to understand
11  the general concerns.  And I think that my court order before
12  has said that, what some of the general concerns are, without
13  giving anyone a roadmap to hacking or intruding on the system
14  or manipulating it.
15          MR. CROSS:  Your Honor, this is David Cross.  I'm
16  sorry.
17          THE COURT:  Go ahead.
18          MR. CROSS:  Just two thoughts that might be helpful.
19  One, I do think the most important thing is to get this to CISA
20  right away.  And so we would want permission to be able to do
21  that so they can begin their process.
22          The second thing I would suggest is that we and
23  Dr. Halderman and the Secretary of State's office and whatever
24  election security expert -- I think it is Dr. Gilbert.  I don't
25  know -- but whoever they are relying on as an election security

1  expert for this -- that we have a meet-and-confer and we talk
2  through the report and come to some consensus on what should be
3  made publicly available immediately.
4          For example, it might be that there is an executive
5  overview in the report.  That might be something that could be
6  made available publicly or some version of that when CISA does
7  its work so there is transparency (inaudible).
8          But those two things, I think, could work in
9  parallel.  CISA can begin its work immediately.  And the
10 parties can work together to get the report -- so that the
11 recommendations, Your Honor, are made public.  And we could
12 begin that process this week.
13         THE COURT:  Mr. Tyson, do you have -- does the State
14 have contacts, or has it made any contacts with CISA itself?
15         MR. TYSON:  Your Honor, this is Bryan Tyson.  The
16 State has not received a request from CISA.  But the vendors, I
17 believe, generally do.  So Dominion obviously has CISA as part
18 of their operations -- or not a part of their operations.
19 There is a process that they work with CISA on their equipment.
20 So I think that is the main connection there.
21         I also wanted to make sure you were aware after our
22 hearing on Thursday we got the redacted report to our client.
23 They have had it and reviewed it.  So we're no longer in a
24 position where they have not able to look at it and consider
25 what the report is and all that.  I just wanted to make sure

1  you were aware.  Dominion has reviewed it.  The Secretary's
2  office has reviewed it.  So --
3            THE COURT:  All right.  That's good.
4            Well, why don't we do this.  Why don't the attorneys
5  confer tomorrow morning or after -- directly after this phone
6  call and talk about what they can do in terms of the process
7  and what -- because I don't know how short -- how quickly CISA
8  can function.  And obviously that is something that could be
9  dealt with tomorrow.
10           But somebody needs to be responsible -- you know, we
11 have to have at least two point people.  Because then if you
12 find out it is going to be three, four, five months, then we
13 need to come back to square one.  But if it is shorter and can
14 be done shorter, that would be of great benefit.
15           But I think the notion of your sitting down and
16 thinking about working -- also about an executive summary
17 meanwhile that would be -- so people aren't spreading all sorts
18 of rumors that raise anxieties and other -- other theories that
19 would be useful.
20           MR. TYSON:  Your Honor, this is Bryan Tyson.  I think
21 that is something we can definitely do.
22           One thing we had discussed also with our client was
23 just -- I mean, obviously there are other parts of this
24 proceeding that have been sealed, Dr. Halderman's testimony
25 before the 2020 election.  Obviously his deposition discussing

| | |
|---|---|
| 1 | the report discusses some of those pieces. |
| 2 | So I think we want to try to reach some sort of |
| 3 | global solution here so that there is not things that are |
| 4 | hidden.  Like you said, a roadmap is one thing.  Getting |
| 5 | information to the public where people can respond and we can |
| 6 | have confidence in the system is another. |
| 7 | So I just want to throw that on there too.  We would |
| 8 | like to work through all those pieces.  But we are happy to |
| 9 | meet and confer with the plaintiffs' counsel about that. |
| 10 | THE COURT:  Well, that would be excellent.  Then if I |
| 11 | had to -- if you were at a roadblock on any of that, I would |
| 12 | be -- at that point just say you should come to court and we |
| 13 | can talk about it. |
| 14 | But I think that would be very -- very useful and if |
| 15 | you had a schedule for it too.  But it is -- I just don't think |
| 16 | this just pummeling ahead though right as we -- right this |
| 17 | moment without that sort of structure or strategy is just not |
| 18 | going to be in the public interest. |
| 19 | So I'm hopeful we can get -- move quickly so we |
| 20 | get -- people feel like we've -- that full information has been |
| 21 | provided that is meaningful without compromising the election |
| 22 | system and -- so if you can all -- if counsel could -- anyone |
| 23 | right there has their own firm number so that you can continue |
| 24 | the phone call tonight, are you -- is that something you would |
| 25 | like to do or do you want to wait until tomorrow morning? |

```
 1            MR. CROSS:  Your Honor, this is David Cross.  We
 2   could continue the call tonight on my end.
 3            THE COURT:  Okay.  Well, if somebody -- it sounds
 4   like you are en route somewhere, Mr. Cross.  But if one of your
 5   colleagues could send around a number that you-all could use
 6   for calling in, then I could excuse myself and you could be
 7   able to talk about it among yourselves and then get back to me
 8   about how you want -- how you are planning to proceed.  And
 9   then maybe somebody -- then also have a plan for talking to
10   CISA.
11            MR. CROSS:  Your Honor, we can do that.
12            THE COURT:  Okay.  Thank you very much.
13            If I could get -- I know that -- if you could give me
14   an update -- is an update on Wednesday reasonable?  Can you
15   provide me an update by Wednesday -- a joint update?
16            MR. CROSS:  This is David Cross, Your Honor.  This is
17   David Cross.  I think that works for us.
18            THE COURT:  I mean, if you haven't gotten a response
19   from CISA, that is something else.  But let's shoot for that.
20            MR. TYSON:  This is Bryan Tyson.  We will.  Thank
21   you, Your Honor.
22            THE COURT:  All right.  Thank you very much.
23            Any questions or anything else we need to talk about
24   in this connection?
25            MR. CROSS:  No, Your Honor.
```

```
 1              THE COURT:  All right.  Very good.  Thank you very
 2   much.  And I look forward to seeing what progress can be made
 3   now.
 4              Thank you.  Bye-bye.
 5                   (The proceedings were thereby concluded at 6:19
 6              P.M.)
```

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

    I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 17 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

    In testimony whereof, I hereunto set my hand on this, the 8th day of April, 2022.

_____
SHANNON R. WELCH, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT