IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA CURLING, *et al.*,

      *Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

      *Defendants*.

CIVIL ACTION

FILE NO. 1:17-cv-2989-AT

## STATE DEFENDANTS' NOTICE OF FILING
## RESPONSE TO COURT ORDER AND CASE STATUS UPDATE

In addition to this Court's order on one of the pending discovery disputes, [Doc. 1386], three other recent developments merit this Court's attention. All four issues are addressed in this Notice.

## I.    Number of investigative reports.

In its order on May 27, 2022, the Court directed State Defendants to "identify . . . the number of similar investigative reports initiated or completed by the Secretary of State's Office that relate to election security and operations over the period April 1, 2020 through September 1, 2021." [Doc. 1386, p. 1]. During that period, the Secretary has opened 418 total investigative cases. Of those cases, 81 have completed investigation and have been referred to the Attorney General or relevant district attorney for

prosecution, 108 have completed investigation and are awaiting presentation to the State Election Board for resolution, 31 remain under investigation without a final report, and 198 have been closed.

State Defendants note several issues related to this count of cases. First, this count covers cases that were *opened* during the time period identified in the Court's order. It is possible that other cases may still have been open from prior to that period but were closed. Second, the period covered by the Court's order does not encompass any relevant period of discovery in the *Fair Fight Action* case, so State Defendants do not believe that any of the reports counted in the above paragraph were previously reviewed for production in that case. Third, all investigative cases that involve the enforcement of Title 21 involve the "operation" of elections in some manner and this definition is far broader than election security cases alone. It appears from limited category information from investigators that only a handful (around a dozen) are "similar" to the sample investigative reports, but several of these cases are open and could involve investigative-privilege issues and State Defendants are hesitant to say for certain which of the 418 cases involve voter system security without conducting a complete review of the relevant documents. Further, there may be other cases that encompass election security without being categorized that way by

investigators and items categorized as related to equipment include disability-access issues. Finally, each case with a completed investigation will have at least one "investigative report," one "investigative summary" for presentation to the SEB, and may have other related documents.

## II.    Fulton County Superior Court decision on QR codes.

Yesterday evening, Judge Kimberly Esmond Adams dismissed a case in Fulton County Superior Court claiming that the use of QR codes on printed ballots from Dominion equipment violates state law. The order is attached as Ex. A to this filing. In the order, Judge Adams found:

> The fact that the paper ballots include a QR code which the system uses to tabulate votes does not violate either statute's requirements that paper ballots be produced and that the interpretations of the electors' intent be produced in a readable fashion. These requirements are satisfied by the printed paper ballot.

Ex. A, p. 5. Because this order relates directly to issues in this case, State Defendants want to be sure the Court possesses the most recent information available on these issues.

## III.    Eleventh Circuit argument.

As this Court is aware, the Eleventh Circuit held argument on May 19, 2022 on the two appeals of this Court's preliminary-injunction orders issued before the 2020 general election. A copy of a transcript of that argument is attached as Ex. B for the Court's benefit.

State Defendants note several items that are relevant to this case moving forward:

1. Curling Plaintiffs' counsel agreed that the two orders on appeal were Coalition Plaintiffs' claims and not theirs. Ex. B at 33:13–34:3 (Pollbook Order); Tr. 40:22–42:18 (Scanner Order).

2. Coalition Plaintiffs' counsel noted that they are "agnostic as to the method of voting if the method of voting allows people to vote." *Id*. at 28:19–30:14.

3. Judge Luck was clear that being the "chief election officer" was not enough under *Jacobson* to impose liability on the State for something counties are responsible for carrying out. *Id*. at 30:21–31:14.

## IV.   Plaintiffs' "objection" filing.

Finally, Plaintiffs filed an "objection" on the Friday before Memorial Day that is apparently yet another effort at a motion for contempt without calling it that. [Doc. 1387]. State Defendants will respond within the time permitted for a motion but note in the meantime that the Court specifically requested "is there anything that is in written form or even if it's not in investigative form about Coffee County" so the Court could understand "whether there was anything memorialized at the time that the program files or computers were taken or the server was taken." [Doc. 1374, 53:20–25].

Counsel for State Defendants noted that they "think the standard practice would have been to have an equipment transfer form" but that counsel would need to check with Mr. Barnes' unit at CES, which was then involved in tasks related to the primary election. *Id.* at 56:1–10. As State Defendants explained when filing the document, the only documents located in a search pursuant to the Court's directive (conducted during a trial and during ongoing elections) were those filed by State Defendants. The transfer of equipment is memorialized by the dated acceptance testing report, which reflects the date the Coffee County EMS server was replaced. [Doc. 1377, pp. 3–4]. State Defendants will respond to the remaining accusations, theories, unsupported allegations, and invective in Plaintiffs' "objection" document within the 14 days allotted by the Local Rules.

Respectfully submitted this 1st day of June, 2022.

Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton

Georgia Bar No. 660632
adenton@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Jonathan D. Crumly
Georgia Bar No. 199466
jcrumly@taylorenglish.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

*Counsel for State Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Notice has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

_/s/ Bryan P. Tyson_
Bryan P. Tyson